Thomas R. Curtin
Joseph P. LaSala
George C. Jones
MCELROY, DEUTSCH, MULVANEY
  & CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-2075
(973) 993-8100

*Attorneys for Plaintiff WinView Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WINVIEW INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> DRAFTKINGS INC., a Nevada corporation, <br><br> Defendant. | Civil Action No. 21-13405 <br><br><br> **COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **DEMAND FOR JURY TRIAL** |

### WINVIEW INC.'S COMPLAINT FOR PATENT INFRINGEMENT

Pursuant to Local Civil Rule 10.1, the address of Plaintiff WinView Inc. ("WinView") is 50 Woodside Plaza, Suite 208, Redwood City, California 94061. The address of Defendant DraftKings Inc. ("DrafKings") is 221 River Street, Hoboken, New Jersey 07030.  WinView, by and through its undersigned counsel, complains against Defendant DraftKings and alleges as follows:

## NATURE OF THIS ACTION

1.      This is an action for patent infringement arising under 28 U.S.C. § 1331 and the United States Patent Act, 35 U.S.C. § 100 et seq.  WinView seeks damages and other appropriate relief for Defendant's infringement of the asserted WinView patents by Defendant's Sportsbook and Daily Fantasy Sports offerings and related mobile applications.

## THE PARTIES

2.      Plaintiff WinView is a corporation duly organized and existing under the laws of the State of Delaware.  WinView is located at 50 Woodside Plaza, Suite 208, Redwood City, California 94061.  WinView is a wholly-owned subsidiary of Engine Media Holdings, Inc. (Nasdaq: GAME), a corporation organized and existing under the laws of Ontario, Canada, headquartered at 77 King Street West, Suite 3000, Toronto, Ontario M5K 1G8 Canada.

3.      WinView is a pioneer in interactive television and mobile gaming.  WinView's technologies enable the creation of an environment that makes the sports viewing and gaming experience more fair, engaging and exciting.  Sports fans in New Jersey and across the country can watch sports on television, enter contests and compete against other fans—winning cash or prizes as the action unfolds.  WinView's innovations have resulted in an extensive portfolio of United States patents, including U.S. Patent Nos. 9,878,243 (the '243 Patent) and 10,721,543 (the '543 Patent) (collectively, the "Asserted Patents"). WinView is the owner by assignment of all right, title, and interest to the Asserted Patents.

4.      On information and belief, Defendant DraftKings is a corporation duly organized and existing under the laws of the State of Nevada having executive offices at 222 Berkeley St., Boston, MA 02116 and a regular and established place of business at 221 River Street, Hoboken, New Jersey 07030.

5.     Defendant DraftKings is a digital sports entertainment and gaming company. DraftKings provides users with daily fantasy sports ("Daily Fantasy") and sports betting ("Sportsbook") opportunities, among other offerings.  DraftKings also is involved in the design, development, and licensing of sports betting and casino gaming software for online and retail sportsbook and casino gaming products.  For example, DraftKings offers the DraftKings Sportsbook online at https://sportsbook.draftkings.com and a DraftKings Sportsbook application for mobile devices.    DraftKings also offers Daily Fantasy Sports online at https://www.draftkings.com and a DraftKings Daily Fantasy Sports application for mobile devices.  Defendants have provided and continue to provide websites and related software, products, and services that practice the Asserted Patents without authorization from WinView.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, Title 35 United States Code, including 35 U.S.C. § 1 *et seq*.  This complaint includes claims for patent infringement arising under the patent laws of the United States, including 35 U.S.C. § 271, *et seq.*

7.     This Court has personal jurisdiction over DraftKings because WinView is informed and believes, and on that basis alleges, that DraftKings has availed itself of the legal protections of the State of New Jersey by, among other things, maintaining a physical presence and regular place of business in New Jersey, conducting business in the State of Jersey, and engaging in continuous and systematic activities in the District of New Jersey.  This Court also has personal jurisdiction over DraftKings because DraftKings makes, uses, offers for sale and/or sells products and services in the District of New Jersey and has committed and continues to

commit acts of infringement in the District of New Jersey.  On information and belief, DraftKings derives substantial revenue from the acts of infringement in the District of New Jersey and derives substantial revenue from interstate and international commerce associated with the infringing products.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) and 35 U.S.C. § 1400(b) at least because DraftKings has committed acts of infringement within this judicial district giving rise to this action and has a regular and established place of business in this judicial district, including an office located at 221 River Street, Hoboken, New Jersey 07030.  WinView is informed and believes, and on this basis alleges, that at least the DraftKings' Sportsbook team is emphasized in the Hoboken location.

## FACTUAL BACKGROUND

### A.      The '243 Patent

9.      On January 30, 2018, the United States Patent and Trademark Office ("USPTO") duly and legally issued United States Patent No. 9,878,243 (the "'243 Patent") entitled "Methodology for Equalizing Systemic Latencies in Television Reception in Connection with Games of Skill Played in Connection with Live Television Programming" to inventors David B. Lockton, Mark K. Berner, Mark J. Micheli, and David Lowe.  The '243 Patent has 23 claims. WinView is the owner by assignment of the entire right, title and interest in and to the '243 Patent, including the right to seek damages and any remedies for past, current, and future infringement thereof.  A true and correct copy of the '243 Patent is attached to this Complaint as Exhibit 1.

10.     The '243 Patent claims priority to United States Patent Application No. 11/786,992 filed on April 12, 2007 (now U.S. Patent No. 8,149,530) and United States Provisional Application No. 60/791,793 filed on April 12, 2006.

11.     The inventions claimed in the '243 Patent relate to specific improvements in computer technologies related to distributed gaming and distributed gaming utilizing a mobile device.

12.     Games of skill and chance, such as sports betting or contests played in conjunction with live sporting events, have an intrinsic excitement and entertainment value.  The inventors recognized and solved problems associated with the fact that television signal reception is not synchronized nationwide.  For example, users who wish to participate in a game of skill or chance relating to a sporting event on television may receive their information about the underlying sporting events through different means and at different times.  For example, one person may receive their television content over cable television, another may be watching on satellite television, and another may be receiving content online.  An individual in New Jersey using a satellite dish network may, for example, experience a three-second delay compared to an individual in California using a cable network. Recognizing that these latencies in receipt of broadcast content need to be accommodated in order to maintain user enjoyment and fairness for all participants, the inventors described and claimed technical solutions to these problems.

13.     The claims of the '243 Patent recite new and unconventional methods for conducting games of skill or chance in a distributed environment.  The claims are necessarily rooted in computer technologies and provide technical solutions to overcome the problems associated with participants in games of skill or chance on mobile devices experiencing different latencies in their receipt of television content.

14.     Claim 1 of the '243 Patent recites:

1. A method of equalizing effects of latency differences in a game of skill or chance or other entertainment comprising:

a. receiving an online broadcast of content;

b. synchronizing the game of skill or chance or other entertainment with the online broadcast of content; and

c. presenting the online broadcast of content and synchronized game data.

15.     The '243 Patent is valid and enforceable.

**B.     The '543 Patent**

16.     On July 21, 2020, the USPTO duly and legally issued United States Patent No. 10,721,543 (the "'543 Patent") entitled "Method Of and System For Managing Client Resources and Assets for Activities On Computing Devices" to inventors Tim Huske, Mark J. Micheli, Mark K. Berner, Matt Ford, and David B. Lockton.  The '543 Patent has 141 claims.  WinView is the owner by assignment of the entire right, title and interest in and to the '543 Patent, including the right to seek damages and any remedies for past, current, and future infringement thereof.  A true and correct copy of the '543 Patent is attached to this Complaint as Exhibit 2.

17.     The '543 Patent claims priority to United States Patent Application No. 11/472,241 filed on June 20, 2006 (now U.S. Patent No. 8,738,694) and United States Provisional Application No. 60/692,356 filed on June 20, 2005.

18.     The inventions claimed in the '543 Patent relate to specific improvements in computer technologies related to distributed entertainment services with respect to events or programs occurring in various geographic locations.

19.     The '543 Patent teaches, among other things, the use of an "activity client" installed on a user's device that manages the game data presented to a user based on the geographic location of the device.  For example, different states have different regulations

- 6 -

relating to games of skill or chance.  As set out in the specification, "[w]hen games of skill are offered, each state's laws will define what constitutes a legal game of skill. The same game playable for prizes by a user at one location is not necessarily legal for a user across a state line which might be across the street. It is incumbent upon the entertainment service operator to abide by the laws in each of the jurisdictions where it has users."  Ex. 4 at 5:63-6:2.  Determining the location of the mobile device allows the system to take into account different state laws that limit the games of skill or chance that may be available or lawful in a particular location.  Monitoring the location of the device also allows the service provider to display different information to the user based on their location, including preventing use of the system if a mobile device is present in, or moves to, a location where the activity is not permitted.

20.    The inventors also recognized the need to overcome problems unique to entertainment services in a distributed environment with numerous users and a large amount of content, including the need to economize the resources needed for the large amount of data that may need to be provided to users.  By providing only assets that are not already resident on a mobile web-connected computing device instead of entire data packages, the patented approaches also allow a user's computing device to operate more efficiently. The patented approach also reduces the amount of memory that is required.

21.    Claim 1 of the '543 Patent recites:

1. A method of implementing a consumer service on a mobile web-connected computing device comprising:

loading a set of service related information located on a server related to a geographic location of the mobile web-connected computing device to an activity client, wherein the geographic location of the mobile web-connected computing device determines the set of service related information to be loaded from the server, wherein the set of service related information includes service related information relative to the geographic location of the mobile web-connected computing device, and further wherein as the geographic location of the mobile web-connected computing device changes, different

service related information is presented through the activity client based on the geographic location;

selecting an option from the activity client from a list of available options;

downloading a set of service-specific information related to a selected option from a server to the mobile web-connected computing device; and

executing an application related to the selected option within the activity client on the mobile web-connected computing device.

22.    Claim 9 of the '543 Patent recites:  "The method of claim 1 further comprising identifying a user status including identifying a current geographic location of the mobile web-connected computing device."

23.    The '543 Patent is valid and enforceable.

**C.    DraftKings Sportsbook and Daily Fantasy Sports**

24.    Sports betting is on the rise.  In May 2018, the U.S. Supreme Court struck down as unconstitutional the Professional and Amateur Sports Protection Act of 1992 ("PASPA"). This decision had the effect of lifting federal restrictions on sports betting and allowed states to determine for themselves the legality of sports betting.  After the decision, many states have legalized some form of online sports betting and many others are likely to do so.

25.    DraftKings' main product offerings to consumers include Daily Fantasy Sports and Sportsbook.  Daily Fantasy Sports was DraftKings' sole product offering until 2018; however, since DraftKings launched its Sportsbook (along with iGaming), states including New Jersey that have approved mobile Sportsbook and iGaming have accounted for a rapidly growing proportion of DraftKings' users, which has contributed to DraftKings revenue growth.

26.    DraftKings launched its first mobile sportsbook in New Jersey.  DraftKings has expanded its geographic footprint and currently offers its mobile and/or retail sportsbooks in thirteen states, including Colorado, Illinois, Indiana, Iowa, Michigan, Mississippi (retail only),

New Hampshire, New Jersey, New York (retail only), Pennsylvania, Tennessee, Virginia and West Virginia.  The DraftKings Daily Fantasy Sports offering is available in most states (currently all states except seven: Hawaii, Idaho, Louisiana, Montana, Nevada, New Mexico, and Washington State).  DraftKings intends to expand its consumer offerings and launch its product offerings in new geographies.

27.     The DraftKings Sportsbook may be accessed online at https://sportsbook.draftkings.com and with the DraftKings Sportsbook application for mobile devices.  DraftKings offers a DraftKings Sportsbook "app" for download and installation through the Apple App Store and Google Play Store in certain states.  DraftKings also provides download links for the DraftKings apps on the https://sportsbook.draftkings.com website.

28.     Sports betting is an increasingly popular way to engage consumers in their sports viewing experience and increase their entertainment.  Sports betting involves a user placing a bet by wagering money at some fixed odds.  The matter on which the user bets is often referred to as a "proposition" or "prop".  If the user wins, DraftKings pays out the bet.  DraftKings generates revenue from the difference between the payouts and the settled handle for bets that DraftKings has taken.

29.     The propositions that DraftKings offers are based on particular sporting events that occur during the year.  For example, NFL football, NBA basketball, and MLB baseball games occur during the calendars for their respective seasons.  During the global COVID-19 pandemic in 2020, major professional sports cancelled or rescheduled significant portions of their seasons which in turn impacted the extent of betting propositions that DraftKings offered on its Sportsbook.  The recent resumption of major sports—met with great enthusiasm by the public

generally—has resulted in an increased number of betting propositions for various sports on the DraftKings Sportsbook.

30.     DraftKings Sportsbook offers betting propositions that include traditional bets based on end-of-game outcomes, such as who will win a particular game or whether a team will win by more than a certain number of points.  DraftKings Sportsbook also offers "Live In-Game" betting propositions that are made during games and as the action unfolds.  Live In-Game betting is a significant feature of the DraftKings Sportsbook, designed to increase user engagement and enhance the sports betting experience.  DraftKings has referred to certain Live In-Game betting propositions in the DraftKings Sportsbook mobile application as "Flash Bets."  A depiction of the operation of the DraftKings Sportsbook mobile app is shown in the following screenshot:



31.     DraftKings offers live in-game betting propositions for various sports, such as MLB baseball, NBA basketball, tennis, table tennis, and NFL football.  For example, DraftKings offers "Pitch-by-Pitch" or "Result of Pitch" betting propositions during MLB baseball games.  In these propositions, DraftKings provides odds on whether a particular pitch in the current inning being played will be a Strike/Foul, a Ball/Hit by Pitch, or In-Play.  DraftKings also offers "Result of At Bat" propositions in which DraftKings provides odds for whether a particular batter in the current inning will record a hit or walk (excluding hit by pitch).  The user selects a particular outcome and enters an amount of the wager on the selected outcome.  If the user is in a

jurisdiction where placing bets is permitted, the user may place a bet on the proposition.  A true and accurate depiction of an exemplary operation of the DraftKings Sportsbook mobile app is shown in the following screenshots:



32.     For example, DraftKings offers Live In-Game propositions during NBA basketball games.  In these propositions, DraftKings provides odds whether the next field goal will be a 2-pointer or a 3-pointer. The user selects a particular outcome and enters an amount of the wager on the selected outcome.  If the user is in a jurisdiction where placing bets is

permitted, the user may place a bet on the proposition.   A true and accurate depiction of the operation of the DraftKings Sportsbook mobile app is shown in the following screenshot:



33.    For example, DraftKings offers "Flash Bet" and Live In-Game "Point-by-Point" propositions during tennis matches.   In these propositions, DraftKings provides odds on which player in the match being played will win the next point (or the next game).   The user selects a particular outcome and enters an amount of the wager on the selected outcome.   If the user is in a jurisdiction where placing bets is permitted, the user may place a bet on the proposition.   A true

and accurate depiction of the operation of the DraftKings Sportsbook mobile app is shown in the following screenshots:



34.     As the action unfolds relating to a particular live in-game betting proposition, the DraftKings Sportsbook website and app provide users with updated odds for the betting propositions.  DraftKings also presents the odds and betting propositions synchronized to virtual representations of the sporting event, such as a depiction of a baseball diamond, basketball court or tennis court that depict the action.    The DraftKings Sportsbook also prevents betting propositions when the user is no longer permitted to make a selection on a particular wager.  For

example, DraftKings does not allow a user to place a wager on an outcome where the outcome is already known—otherwise users could easily cheat by betting after they know the result.  When a user is no longer permitted to wager on a particular outcome, the displayed choices for the particular wager are grayed out (or removed from the user interface) and the user is prevented from submitting a selection.

35.     DraftKings' first consumer offering involved Daily Fantasy Sports.  DraftKings offers Daily Fantasy Sports online at https://www.draftkings.com and on the DraftKings Daily Fantasy Sports application for mobile devices.  DraftKings offers a DraftKings Daily Fantasy Sports "app" for download and installation through the Apple App Store and Google Play Store. DraftKings provides download links for these apps at https://www.draftkings.com/mobileapps.

36.     DraftKings provides Daily Fantasy Sports contests users may enter for various sports (including, for example, NFL football, NBA basketball, and MLB baseball, among others), scores the contests, and distributes prizes.  Users can draft a new lineup whenever they want, play in a public contest and against friends in a private league, quickly enter a contest any time before the lineup lock, and win cash prizes weekly that are paid out after the contest ends. A true and accurate depiction of the DraftKings mobile application (in the example, on an Android device) is shown in the following screenshot:



37.     A true and accurate depiction of the operation of the home page of the DraftKings Daily Fantasy website is shown in the following screenshot from www.draftkings.com/lobby#/featured:



38.     Sports betting and Daily Fantasy Sports are permitted in New Jersey but not in every state.  In order to ensure compliance with different state laws and provide users with correct permission information, the DraftKings Sportsbook and Daily Fantasy Sports applications and website are configured to monitor the location of the device being used.  If the device is not in a permitted jurisdiction, DraftKings prevents the user from placing bets on the DraftKings app or website and the user is informed that it appears the user is located in a state that betting on DraftKings is not available.

## FIRST CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 9,878,243)

39.     WinView repeats, realleges, and incorporates herein by reference the allegations of Paragraphs 1 through 38 of its Complaint.

40.     WinView is informed and believes, and on that basis alleges, that DraftKings has infringed and is currently infringing one or more claims of the '243 Patent, in violation of 35 U.S.C. § 271, *et seq*.

41.     DraftKings infringes literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a), by, among other things, making, using, offering to sell, and/or selling within this District and elsewhere in the United States, without authority or license, DraftKings products and services falling within the scope of one or more claims of the '243 Patent, including but not limited to claim 1.

42.     For example, DraftKings provides the DraftKings Sportsbook website and the associated mobile application. The DraftKings Sportsbook may be accessed online at https://sportsbook.draftkings.com and by using the DraftKings Sportsbook app on mobile devices such as a smartphone or tablet.  WinView is informed and believes, and on that basis alleges, that DraftKings utilizes one more servers, with their associated memory and processors, to store, host and run the games of skill or chance or other entertainment that comprise the DraftKings Sportsbook.

43.     The DraftKings Sportsbook website and mobile applications equalize effects of latency differences in a game of skill or chance or other entertainment.

44.     The DraftKings Sportsbook website and mobile applications provide users with the opportunity to play games of skill or chance or enjoy other entertainment.  The Sportsbook provides sports betting propositions and related odds or lines, scores and other content relating to sporting events.   DraftKings refers to the Sportsbook as including "games" offered by DraftKings that customers can play.  https://sportsbook.DraftKings.com/legal/nj-terms-of-use (last accessed July 5, 2021) ("Users will be able to visit the Website and view the games (e.g., sportsbook and casino) offered by DraftKings and available to play and place a wager (the 'Game' or collectively, the 'Games').").

45.     The DraftKings Sportsbook website and mobile applications receive an online broadcast of content, including among other things, available sports, betting propositions, game scores, the status of plays, and statistics.   For certain live sporting events, the DraftKings Sportsbook and mobile application provide a sportscast graphical display of the sporting event. For example, for a tennis match, the DraftKings Sportsbook website and/or mobile application may display a representation of tennis court and a representation of a ball moving back and forth during the action.   The screenshots below depict the operation of the DraftKings Sportsbook website and mobile application with regard to a tennis match and a point-by-point betting proposition:







46.      Similarly, for a baseball game, the DraftKings Sportsbook website and/or mobile application receives an online broadcast including a graphical representation of a baseball diamond, batter, the pitch count, and scoreboard.  The screenshots below depict the operation of the DraftKings Sportsbook mobile application with regard to a baseball game and pitch-by-pitch betting proposition:



47.    WinView is informed and believes, and on that basis alleges, that an online broadcast of content is received when producing betting propositions for the DraftKings Sportsbook on the website and DraftKings Sportsbook mobile application.  For example, WinView is informed and believes that a broadcast of content is received for the sporting events identified on the website and in the mobile application and that this broadcast is received online. For example, WinView is informed and believes, and on that basis alleges, that in producing bets for the Sportsbook, data feeds for the underlying sporting events are received online, such as scores or the resolution of pitches or at bats in a baseball game.

48.     The games of skill or chance and other entertainment on the DraftKings Sportsbook website and mobile application, such as currently available betting propositions, are synchronized with the online broadcast of content.  For example, the currently available betting propositions are synchronized with the sporting event content such that users will not have a material betting advantage.

49.     For example, the DraftKings Sportsbook application synchronizes the betting on the sportsbook app on the user's device with the online broadcast of content.  DraftKings offers "Live In-Game" betting propositions, including "Live Props" and "Flash Bets" that can be made while a sporting event is underway.  In other words, the DraftKings Sportsbook allows users to make wagers while the live sporting event is being played.  DraftKings updates the odds and propositions as the action unfolds and in accordance with what happens in the live sporting event.  DraftKings also removes betting propositions that have been resolved and adds new betting propositions as the sporting event progresses. As one example, for a baseball game in the third inning, the DraftKings Sportsbook website and mobile application may display a betting proposition to allow wagers on the "Result of At Bat" for the second batter in that inning.  When that at-bat has resolved, DraftKings will remove the betting proposition for that batter and offer additional betting propositions for subsequent batters in the inning.

50.     The DraftKings Sportsbook website and mobile applications present the online broadcast of content and synchronized game data.  Users accessing the same page of the DraftKings Sportsbook website or same portion of the mobile application are presented with the same content, including among other things available sports, betting propositions, game scores and statistics.  DraftKings updates the odds and betting propositions in accordance with how the live sporting event is being played out in the online broadcast of content.  DraftKings presents

the online broadcast of content depicting what is happening in the sporting event with the synchronized game data constituting, for example, updated odds and propositions in the Sportsbook application.  The screenshots above for the Live Props and Flash Bets for tennis matches and baseball games are examples of the DraftKings Sportsbook presenting an online broadcast of content and synchronized game data.

51.     WinView is informed and believes, and on that basis alleges, that DraftKings is currently infringing one or more claims of the '243 Patent, in violation of 35 U.S.C. § 271, including at least by actively inducing infringement of the '243 Patent under § 271(b) with knowledge of the '243 Patent or with willful blindness that it is inducing infringement, by, among other activities, knowingly, actively and intentionally, aiding and abetting, assisting, encouraging, instructing and/or guiding others to directly infringe one or more claims of the '243 Patent, including customers and end users of the DraftKings Sportsbook, and others who may perform services on behalf of DraftKings in providing the Sportsbook to DraftKings customers. For example, DraftKings publicly provides the DraftKings Sportsbook application for download on mobile devices, and instruct users on uses of DraftKing's infringing technology.  A relevant webpage may be found at https://sportsbook.DraftKings.com/sportsbook-android-app. DraftKings also induces acts of infringement through its advertising and promotion of the infringing functionality.  A relevant webpage may be found at https://www.prnewswire.com/news-releases/draftkings-launches-flash-bet-for-more-instantaneous-live-wagering-experience-300878122.html.

52.     WinView is informed and believes, and on that basis alleges, that DraftKings also has contributed to infringement of one or more claims of the '243 Patent, including but not limited to claim 1, in violation of 35 U.S.C. § 271(c), at least as of the filing of this Complaint,

with knowledge of the '243 Patent and with knowledge or willful blindness by selling and offering to sell within the United States the DraftKings Sportsbook website and mobile application, without authority, which constitute materials and apparatuses for practicing the claimed invention of one or more claims of the '243 Patent, such materials and apparatuses constituting material parts of the inventions of the '243 Patent and not staple articles or commodities of commerce suitable for substantial noninfringing uses. WinView is informed and believes, and on that basis alleges, that DraftKings has knowledge that the DraftKings Sportsbook website and Sportsbook mobile application constitutes material parts of the inventions of the '243 Patent, are not staple articles or commodities of commerce suitable for substantial noninfringing uses, and are used in an infringing manner as explained above.

53.     WinView is informed and believes, and on this basis alleges, that DraftKings has knowledge of WinView and the '243 Patent. WinView is informed and believes, and on this basis alleges, that DraftKings has such knowledge at least from the filing of this Complaint and WinView communications regarding its intellectual property no later than February 2018 and thereafter.

54.     As a result of DraftKings' infringement of the '243 Patent, WinView has been damaged. WinView is entitled to recover from DraftKings damages sustained as a result of DraftKing's wrongful acts sufficient to compensate WinView for the infringement in an amount subject to proof at trial, and in no event less than a reasonable royalty.

55.     To the extent 35 U.S.C. § 287 is determined to be applicable, on information and belief its requirements have been satisfied with respect to the '243 Patent.

56.     WinView is informed and believes, and on this basis alleges, that in light of DraftKings' knowledge of WinView and the '243 Patent, DraftKings has deliberately infringed

and continues to deliberately infringe in a wanton, malicious, and egregious manner, with reckless disregard for WinView's patent rights.  DraftKings' infringing actions have been and continue to be consciously wrongful.

57.     WinView is informed and believes, and on this basis alleges, that the Court should award increased damages under 35 U.S.C. § 284 for willful and deliberate infringement, and find this to be an exceptional case which warrants an award of attorney's fees to WinView pursuant to 35 U.S.C. § 285.

58.     WinView has suffered and continues to suffer irreparable injury as a direct and proximate result of DraftKings' infringement for which there is no adequate remedy at law. Unless DraftKings is enjoined, WinView will continue to suffer such irreparable injury.

**SECOND CLAIM FOR RELIEF**

**(Infringement of U.S. Patent No. 10,721,543)**

59.     WinView repeats, realleges, and incorporates herein by reference the allegations of Paragraphs 1 through 38 of its Complaint.

60.     WinView is informed and believes, and on that basis alleges, that DraftKings has infringed and is currently infringing one or more claims of the '543 Patent, in violation of 35 U.S.C. § 271, *et seq*.

61.     DraftKings infringes literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a), by, among other things, making, using, offering to sell, and/or selling within this District and elsewhere in the United States, without authority or license, DraftKings products and services falling within the scope of one or more claims of the '543 Patent, including but not limited to claims 1 and 9.

62.   For example, DraftKings hosts and runs the DraftKings Sportsbook website and the associated mobile application. The DraftKings Sportsbook may be accessed online at https://sportsbook.draftkings.com and using the DraftKings Sportsbook app on mobile devices such as a smartphone or tablet.  DraftKings also hosts and runs the DraftKings Daily Fantasy website and associated mobile application. DraftKings Daily Fantasy may be accessed online at https://www.draftkings.com/lobby and using the DraftKings Daily Fantasy app on mobile devices such as a smartphone or tablet.  WinView is informed and believes, and on that basis alleges, that DraftKings utilizes one more servers, with their associated memory and processors, to store, host and run the games of skill or chance that comprise the DraftKings Sportsbook and DraftKings Daily Fantasy.  DraftKings Sportsbook and DraftKings Daily Fantasy practice the method of implementing a consumer service on a mobile web-connected computing device claimed in one or more claims of the '543 patent, literally or under the doctrine of equivalents, including claims 1 and 9.

63.   The DraftKings Sportsbook and DraftKings Daily Fantasy are consumer services. DraftKings provides its Sportsbook and Daily Fantasy products to consumers in order for those consumers to play the games DraftKings provides and/or participate in Daily Fantasy contests. The Sportsbook and Daily Fantasy are among DraftKings' main product offerings to consumers.

64.   In order to access and use the DraftKings Sportsbook and Daily Fantasy products on mobile web-connected devices, such as smartphones or tablets or laptop computers, consumers are required to access the DraftKings website online or download and install the DraftKings Sportsbook and DraftKings Daily Fantasy applications.  As described in the '543 Patent specification, "[t]he present invention utilizes a software application, referred to as an 'Activity Client.' The 'Activity Client' is retained in a user's computing device's memory. A

variety of methodologies are implemented for downloading the 'Activity Client' into memory of the cell phone or other computing device utilized…Upon selecting the company's service from this menu [such as the app store], a data connection is made to either the cellular service provider or the company's server, and the 'Activity Client' is downloaded to the user's cell phone or other computing device…In some embodiments, the downloaded 'Activity Client' resides in the cell phone's compact flash memory."  Ex. 3 at 6:26-54.

65.    DraftKings requires users to register an account with DraftKings before being able to play games and place bets on the DraftKings Sportsbook application.  The screenshot below depicts the operation of the DraftKings Sportsbook app on a mobile device.



66.     Further, DraftKings requires users to register an account with DraftKings before being able to use their Daily Fantasy application.  The screenshot below depicts the operation of the DraftKings Daily Fantasy app on a mobile device.



67.     The DraftKings Sportsbook and Daily Fantasy applications identify the current geographic location of the user's mobile device.  Due to state law, DraftKings must ensure that a user is physically located where online sports betting or Daily Fantasy is legal.  The DraftKings Sportsbook website and mobile application allows users to place bets only if they are in certain states.  *See*  https://sportsbook.draftkings.com/help/sports-betting/where-is-sports-betting-legal. Similarly, the DraftKings Daily Fantasy website and mobile application will allow users to participate in contests for prizes only in jurisdictions where Daily Fantasy is permitted. *See* https://www.draftkings.com/where-is-draftkings-legal.

68.     In order to ensure compliance with different state laws, the DraftKings Sportsbook and Daily Fantasy applications monitor the location of the user's mobile web-connected devices and present different information to the user as the location of the web-connected device changes.   For example, if the user's mobile web-connected device is in a location where mobile sports betting is not permitted, the DraftKings Sportsbook app will not allow the user to bet and will present a notice to the user that the requested service is not available.   The screenshot below is a true and accurate depiction of the operation of the DraftKings Sportsbook application.



69.     If the geographic location of the user's mobile web-connected device is within a state where sports betting is legal (and the user has sufficient funds on deposit), the Sportsbook application will place the requested bets.  If the user's mobile web-connected device leaves an allowed jurisdiction during their session on the DraftKings Sportsbook, the user will no longer be eligible to continue playing on the DraftKings Sportsbook.

5) What happens if I leave allowed jurisdiction in the middle of a game session?

If you leave allowed jurisdiction during your session, you will no longer be eligible to continue playing and your session will be terminated. You will be permitted to play again once you return to a permitted jurisdiction and we are able to verify your location.

https://sportsbook.draftkings.com/help/faq (last accessed July 5, 2021).  Likewise, if a user's mobile web-connected device is in, or changes location to, a state where fantasy contests are not permitted, the DraftKings Daily Fantasy app will present information that the user cannot participate.

70.     DraftKings conditions a user's receipt of any potential benefit of the DraftKings Sportsbook and/or Daily Fantasy offerings on the user selecting an option and paying the requisite wager or entry fee.  For example, in order to participate in any contests or place bets, DraftKings Sportsbook requires users to provide DraftKings with their selections of which proposition(s) they wish to bet on, and DraftKings Daily Fantasy requires users to provide DraftKings with their selected contests and lineup.  DraftKings controls the manner and timing of these user selections and instructs users of the DraftKings Sportsbook and/or DraftKings Daily Fantasy offering how the selections are to be made in order to participate in contests and receive a potential prize payout from DraftKings.

71.     WinView is informed and believes, and on that basis alleges, that DraftKings is currently infringing one or more claims of the '543 Patent, in violation of 35 U.S.C. § 271, including at least by actively inducing infringement of the '543 Patent under § 271(b) with

knowledge of the '543 Patent or with willful blindness that it is inducing infringement, by, among other activities, knowingly, actively and intentionally, aiding and abetting, assisting, encouraging, instructing and/or guiding others to directly infringe one or more claims of the '543 Patent, including customers and end users of the DraftKings Sportsbook and Daily Fantasy applications, and others who may perform services on behalf of DraftKings in providing the DraftKings Sportsbook and Daily Fantasy offering to DraftKings customers.  For example, DraftKings publicly provides the DraftKings Sportsbook and DraftKings Daily Fantasy application for download on mobile devices, and instruct users on uses of DraftKings' infringing technology.

72.     WinView is informed and believes, and on that basis alleges, that DraftKings has contributed to infringement of one or more claims of the '543 Patent in violation of 35 U.S.C. § 271(c), at least as of the filing of this Complaint, with knowledge of the '543 Patent and with knowledge or willful blindness by selling and offering to sell within the United States the DraftKings Sportsbook and Daily Fantasy applications, without authority, which constitute materials and apparatuses for practicing the claimed invention of one or more claims of the '543 Patent, such materials and apparatuses constituting material parts of the inventions of the '543 Patent and not staple articles or commodities of commerce suitable for substantial noninfringing uses.  WinView is informed and believes, and on that basis alleges, that DraftKings has knowledge that the DraftKings Sportsbook website and Sportsbook mobile application, as well as the DraftKings Daily Fantasy website and mobile applications, constitute material parts of the inventions of the '543 Patent, are not staple articles or commodities of commerce suitable for substantial noninfringing use, and are used in an infringing manner as explained above.

73.    WinView is informed and believes, and on this basis alleges, that DraftKings has knowledge of WinView and  the '543 Patent.  WinView is informed and believes, and on this basis alleges, that DraftKings has such knowledge at least from the filing of this Complaint and WinView communications regarding its intellectual property no later than the issuance of the '543 Patent.

74.    As a result of DraftKings' infringement of the '543 Patent, WinView has been damaged.  WinView is entitled to recover from DraftKings damages sustained as a result of DraftKings' wrongful acts sufficient to compensate WinView for the infringement in an amount subject to proof at trial, and in no event less than a reasonable royalty.

75.    To the extent 35 U.S.C. § 287 is determined to be applicable, on information and belief its requirements have been satisfied with respect to the '543 Patent.

76.    WinView is informed and believes, and on this basis alleges, that in light of DraftKings' knowledge of WinView and the '543 Patent, DraftKings has deliberately infringed and continues to deliberately infringe in a wanton, malicious, and egregious manner, with reckless disregard for WinView's patent rights.  DraftKings' infringing actions have been and continue to be consciously wrongful.

77.    WinView is informed and believes, and on this basis alleges, that the Court should award increased damages under 35 U.S.C. § 284 for willful and deliberate infringement, and find this to be an exceptional case which warrants an award of attorney's fees to WinView pursuant to 35 U.S.C. § 285.

78.    WinView has suffered and continues to suffer irreparable injury as a direct and proximate result of DraftKings' infringement for which there is no adequate remedy at law. Unless DraftKings is enjoined, WinView will continue to suffer such irreparable injury.

- 33 -

## PRAYER FOR RELIEF

WHEREFORE, WinView prays for judgment against DraftKings as follows:

A.      That DraftKings has infringed, and unless enjoined will continue to infringe, each of the Asserted Patents;

B.      That DraftKings has willfully infringed each of the Asserted Patents;

C.      That DraftKings pay WinView damages adequate to compensate WinView for DraftKing's infringement of each of the Asserted Patents, together with interest and costs under 35 U.S.C. § 284;

D.      That DraftKings be ordered to pay prejudgment and post-judgment interest on the damages assessed;

E.      That DraftKings pay WinView enhanced damages pursuant to 35 U.S.C. § 284;

F.      That DraftKings be ordered to pay supplemental damages to WinView, including interest, with an accounting, as needed;

G.      That DraftKings be enjoined from infringing the Asserted Patents, or if its infringement is not enjoined, that DraftKings be ordered to pay ongoing royalties to WinView for any post-judgment infringement of the Asserted Patents;

H.      That this is an exceptional case under 35 U.S.C. § 285, and that DraftKings pay WinView's attorneys' fees and costs in this action; and

I.      That WinView be awarded such other and further relief, including equitable relief, as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), WinView hereby demands a trial by jury on all issues triable to a jury.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Plaintiff, by its undersigned counsel, hereby certifies pursuant to Local Civil Rule 11.2 that the matters in controversy are not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

Dated:  July 7, 2021

*/s/ Thomas R. Curtin*
Thomas R. Curtin
Joseph P. LaSala
George C. Jones
MCELROY, DEUTSCH, MULVANEY
 & CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962-2075
Tel: (973) 993-8100
Fax: (973) 425-0161
tcurtin@mdmc-law.com
jlasala@mdmc-law.com
gjones@mdmc-law.com

Morgan Chu
Richard M. Birnholz
Keith A. Orso
Jordan Nafekh
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Tel: (310) 277-1010
Fax: (310) 203-7199
mchu@irell.com
rbirnholz@irell.com
korso@irell.com
jnafekh@irell.com

*Attorneys for Plaintiff WinView Inc.*