## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WINVIEW INC., | Civil Action No. 21-13405 (ZNQ) (DEA) |
| Plaintiff, | |
| v. | |
| DRAFTKINGS INC., a Nevada corporation, DRAFTKINGS INC., a Delaware corporation, and CROWN GAMING INC., a Delaware corporation, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO
## DISMISS SECOND AMENDED COMPLAINT

James E. Cecchi, Esq.
Lindsey H. Taylor, Esq.
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Tel:    (973) 994-1700
Fax:    (973) 994-1744

William F. Lee, Esq.
Joseph J. Mueller, Esq.
Richard Goldenberg, Esq.
Andrew S. Dulberg, Esq.
Stephanie Neely, Esq.
Zachary A. Nemtzow, Esq.
Lucas L. Fortier, Esq.
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel:  (617) 526-6000
Fax:  (617) 526-5000

*Attorneys for Defendants*

## TABLE OF CONTENTS

Page

INTRODUCTION ......................................................................................................................1

LEGAL ARGUMENT...............................................................................................................3

I.      Applicable Legal Standard.............................................................................................3

II.     WinView's Direct Infringement Claims Based On The '730 And '543 Patents Should Be
        Dismissed .......................................................................................................................4

        A.      WinView fails to plead sufficient facts to support a plausible inference that
                DraftKings practices the claims of the '730 patent.................................................5

        B.      WinView fails to plead sufficient facts to support a plausible inference that
                DraftKings practices the claims of the '543 patent...............................................10

III.    WinView's Claims For Willful, Induced, And Contributory Infringement Should Be
        Dismissed As To All Four Patents-In-Suit Because WinView Fails To Plead Facts
        Sufficient To Show That DraftKings Had The Required State Of Mind .........................14

        A.      WinView has not pled sufficient knowledge to allege willful infringement as to
                any of the four Patents-In-Suit...........................................................................15

        B.      WinView has not pled sufficient knowledge or specific intent to allege induced
                infringement as to any of the four Patents-In-Suit...............................................21

        C.      WinView has not pled sufficient knowledge or other sufficient facts to allege
                contributory infringement as to any of the four Patents-In-Suit...........................23

CONCLUSION........................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Adidas Am., Inc. v. Skechers USA, Inc.*,
  2017 WL 2543811 (D. Or. June 12, 2017) ...............................................................19

*Arbmetrics, LLC v. Dexcom Inc.*,
  2019 WL 12473781 (S.D. Cal. Feb. 19, 2019) .........................................................20

*Artemi Ltd. v. Safe-Strap Co.*,
  947 F. Supp. 2d 473 (D.N.J. 2013) ...........................................................................24

*Artrip v. Ball Corp.*,
  735 F. App'x 708 (Fed. Cir. 2018) ..............................................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..........................................................................................2, 3, 12, 24

*Batinkoff v. Church & Dwight Co.*,
  2020 WL 1527957 (D.N.J. Mar. 31, 2020) ...........................................................15, 17

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................................2

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012) ..............................................................................3, 12

*Blue Spike LLC v. Comcast Cable Commc'ns, LLC*,
  2019 WL 4242930 (D. Del. Sept. 6, 2019) ............................................................8, 9, 13

*Bot M8 LLC v. Sony Corp. of Am.*,
  4 F.4th 1342 (Fed. Cir. 2021) ..................................................................................4, 9

*Brit. Telecomms. PLC v. IAC/InteractiveCorp*,
  356 F. Supp. 3d 405 (D. Del. 2019) ...........................................................................25

*Cascades Computer Innovation, LLC v. Samsung Elecs. Co.*,
  77 F. Supp. 3d 756 (N.D. Ill. 2015) ...........................................................................18

*CG Tech. Dev., LLC v. Big Fish Games, Inc.*,
  2016 WL 4521682 (D. Nev. Aug. 29, 2016) ..............................................................17

*Commil USA, LLC v. Cisco Sys., Inc.*,
  575 U.S. 632 (2015) ....................................................................................................23

*DIFF Scale Operation Rsch., LLC v. MaxLinear, Inc.*,
 2020 WL 2220031 (D. Del. May 7, 2020)..........................................................7, 13

*Drone Labs, LLC v. Dedrone Holdings, Inc.*,
 2019 WL 4345955 (N.D. Cal. Sept. 12, 2019) ..................................................9, 13

*DSU Med. Corp. v. JMS Co.*,
 471 F.3d 1293 (Fed. Cir. 2006) (en banc)........................................................15, 21

*Eli Lilly & Co. v. Hospira, Inc.*,
 933 F.3d 1320 (Fed. Cir. 2019)...............................................................................4

*Evolved Wireless, LLC v. Samsung Elecs. Co.*,
 2016 WL 1019667 (D. Del. Mar. 15, 2016) ...........................................................18

*Finjan, Inc. v. Cisco Sys. Inc.*,
 2017 WL 2462423 (N.D. Cal. June 7, 2017) ....................................................16, 18

*High 5 Games, LLC v. Marks*,
 2019 WL 3761114 (D.N.J. Aug. 9, 2019) ..............................................................25

*Hitachi Kokusai Elec. Inc. v. ASM Int'l, N.V.*,
 2018 WL 3537166 (N.D. Cal. July 23, 2018).........................................................24

*Intell. Pixels Ltd. v. Sony Interactive Ent. LLC*,
 2020 WL 7872961 (C.D. Cal. Nov. 20, 2020).........................................................19

*InvenTel Prods., LLC v. Li*,
 406 F. Supp. 3d 396 (D.N.J. 2019) .........................................................................24

*M & C Innovations, LLC v. Igloo Prods. Corp.*,
 2018 WL 4620713 (S.D. Tex. July 31, 2018)..........................................................20

*Marangos v. Swett*,
 341 F. App'x 752 (3d Cir. 2009) ...............................................................................3

*Memory Integrity, LLC v. Intel Corp.*,
 144 F. Supp. 3d 1185 (D. Or. 2015) .......................................................................23

*Mich. Motor Techs. LLC v. Volkswagen Aktiengesellschaft*,
 472 F. Supp. 3d 377 (E.D. Mich. 2020)..................................................................16

*Microsoft Corp. v. DataTern, Inc.*,
 755 F.3d 899 (Fed. Cir. 2014)................................................................................21

*N. Star Innovations, Inc. v. Micron Tech., Inc.*,
 2017 WL 5501489 (D. Del. Nov. 16, 2017) ...................................................7, 9, 13

*NexStep, Inc. v. Comcast Cable Commc'ns, LLC*,
  2019 WL 5626647 (D. Del. Oct. 31, 2019) ...................................................................19

*Nonend Inventions, N.V. v. Apple Inc.*,
  2016 WL 1253740 (E.D. Tex. Mar. 11, 2016) ..............................................................19

*NovaPlast Corp. v. Inplant, LLC*,
  2021 WL 389386 (D.N.J. Feb. 3, 2021) ...........................................................................8

*Otsuka Pharm. Co. v. Zydus Pharms. USA*,
  151 F. Supp. 3d 515 (D.N.J. 2015) .................................................................................22

*Panduit Corp. v. Corning Inc.*,
  2019 WL 189817 (E.D.N.C. Jan. 14, 2019) ...................................................................12

*People.ai, Inc. v. SetSail Techs., Inc.*,
  2021 WL 2333880 (N.D. Cal. June 8, 2021) .............................................................12, 24

*Richmond v. Lumisol Elec. Ltd.*,
  2014 WL 1405159 (D.N.J. Apr. 10, 2014) .....................................................................21

*Slot Speaker Techs., Inc. v. Apple, Inc.*,
  2017 WL 4354999 (N.D. Cal. Sept. 29, 2017) ..............................................................20

*Straight Path IP Grp., Inc. v. Vonage Holdings Corp.*,
  2014 WL 3345618 (D.N.J. July 7, 2014) ..........................................................3, 4, 22, 24

*Takeda Pharms. U.S.A., Inc. v. W.-Ward Pharm. Corp.*,
  785 F.3d 625 (Fed. Cir. 2015) ........................................................................................22

*Uniloc 2017 LLC v. Zenpayroll, Inc.*,
  2021 WL 271800 (D. Del. Jan. 27, 2021) .........................................................................8

*Välinge Innovation AB v. Halstead New Eng. Corp.*,
  2018 WL 2411218 (D. Del. May 29, 2018) ....................................................................17

*Walzer v. Muriel Siebert & Co.*,
  447 F. App'x 377 (3d Cir. 2011) ....................................................................................25

*Ziemba v. Incipio Techs., Inc.*,
  2014 WL 7051782 (D.N.J. Dec. 12, 2014) ..........................................................15, 23, 24

*Zoetis LLC v. Roadrunner Pharmacy, Inc.*,
  2016 WL 755622 (D.N.J. Feb. 25, 2016) .......................................................................22

- iv -

## INTRODUCTION

In its third opportunity to state a plausible claim for patent infringement, WinView fails to meaningfully improve on the deficient allegations it previously asserted.  As before, this remains a patent case with a fundamental mismatch between many of the alleged inventions of the Asserted Patents and the technology that the Defendants, DraftKings Inc., a Nevada corporation ("DraftKings NV"), DraftKings Inc., a Delaware corporation ("DraftKings DE"), and Crown Gaming Inc. ("Crown Gaming") (collectively "DraftKings" or "Defendants"), actually use in the Accused Products.  This mismatch has led to a deficient complaint that fails to allege plausible claims of direct infringement for two of the four Asserted Patents, and fails to sufficiently allege willful, induced, and contributory infringement for all four Asserted Patents.

The Plaintiff asserts a set of patents claiming priority to old applications that were in large part designed to solve problems that were idiosyncratic to the time in which they were filed. WinView alleges that DraftKings infringes four patents:  U.S. Patent No. 9,878,243 ("the '243 patent"), U.S. Patent No. 9,993,730 ("the '730 patent"), U.S. Patent No. 10,721,543 ("the '543 patent"), and U.S. Patent No. 10,806,988 ("the '988 patent) (collectively, the "Asserted Patents" or "Patents-In-Suit").  Although these patents issued in 2018 and 2020, they claim priority to applications that date from June 2005 to April 2006[1]—over eight months before the first iPhone was announced, and over two years before the first Android-based phone was announced.[2]  Not

---

[1]     *See* '243 patent, page 2 (claiming priority to provisional application no. 60/791,793, filed on April 12, 2006); '730 patent, page 2 (same); '543 patent, page 2 (claiming priority to provisional application no. 60/692,356, filed on June 20, 2005); '988 patent, page 2 (claiming priority to provisional application no. 60/757,960, filed on January 10, 2006).

[2]     *See* Press Release, Apple Inc., *Apple Reinvents the Phone with iPhone* (Jan. 9, 2007), https://www.apple.com/newsroom/2007/01/09Apple-Reinvents-the-Phone-with-iPhone/;  Charlie Sorrel, *Official: First Android Phone to Debut on September 23*, WIRED (Sept. 17, 2008), https://www.wired.com/2008/09/official-first/.

surprisingly, these patents purport to solve problems that have largely become obsolete:  problems that arise, for example, from the fact that mobile devices used to have limited memory capacity, or that people generally followed live sports by watching them on television (rather than on a mobile device or tablet).

By contrast, the Accused Products are not old, and do not face the same problems. DraftKings' Sportsbook and Daily Fantasy Sports (the "Accused Products") are implemented in our contemporary technological environment.  DraftKings' Sportsbook did not even launch until 2018.  Second Amended Complaint ("SAC") ¶ 47.  The Accused Products make use of the substantially improved mobile devices and computer technology of the present day.  They simply do not face the same alleged challenges that the Patents-In-Suit were in large part designed to solve, such as limited mobile device memory and synchronizing games with specific television broadcasts.

There is therefore a disconnect between the focus of the purported inventions of the Asserted Patents and the technology of the Accused Products.  As a result, the Second Amended Complaint struggles to map the Accused Products onto the Patents-In-Suit.  This leads to factual allegations that remain conclusory, and assume rather than establish any connection between WinView's purported inventions and DraftKings' actual products.  With respect to the '730 and '543 patents, the complaint's allegations are sufficiently deficient that—even assuming their truth, and drawing every inference in WinView's favor—they fail to meet the plausibility threshold set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Plaintiff's claims with respect to willful, induced, and contributory infringement also fail to meet the standard of plausibility.  Each of these claims requires WinView to plead facts

regarding DraftKings' state of mind with respect to infringement.  Each requires that WinView plead facts showing that DraftKings knew of the Asserted Patents, knew that it was infringing the patents, and/or had a specific intent to infringe the patents.  WinView offers far less, barely even attempting to cure the deficiencies DraftKings identified in moving to dismiss the previous Amended Complaint.

In short, WinView's claims with respect to the '730 and '543 patents, and its claims of willful, induced, and contributory infringement with respect to all four Asserted Patents, should be dismissed with prejudice.

## LEGAL ARGUMENT

### I.     Applicable Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When determining a complaint's sufficiency, "the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party."  *Straight Path IP Grp., Inc. v. Vonage Holdings Corp.*, 2014 WL 3345618, at *2 (D.N.J. July 7, 2014) (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)).

Nevertheless, as the Third Circuit has made clear, *Iqbal*'s "plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully."  *Marangos v. Swett*, 341 F. App'x 752, 755 (3d Cir. 2009) (internal quotation marks omitted).  The plaintiff must do more than "merely plead[] facts that are consistent with a defendant's liability."  *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1332 (Fed. Cir. 2012).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Moreover, "the tenet that a

court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Straight Path IP*, 2014 WL 3345618, at *2 (quoting *Iqbal*, 556 U.S. at 678).

## II.    WinView's Direct Infringement Claims Based On The '730 And '543 Patents Should Be Dismissed

To prove direct infringement of a patent claim, a plaintiff must "prove that the accused product or process contains … ***every limitation*** of the properly construed claim." *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1328 (Fed. Cir. 2019) (emphasis added) (quoting *Seal-Flex, Inc. v. Athletic Track & Ct. Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999)).  Thus, if even a single element of a single claim limitation is missing from an accused product, then that accused product does not infringe the patent claim asserted against it.[3] *See id.*

At the pleading stage, "a plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).  While "[a] plaintiff is not required to plead infringement on an element-by-element basis," "[t]here must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.* at 1352–53.

WinView has failed to meet this standard with respect to the '730 and '543 patents.  For the '730 patent, among other things, WinView fails to allege sufficient facts supporting its assertions that DraftKings users are "grouped into a cohort" and that DraftKings sends a lockout signal "based on an amount of delay," as claim 1 of the '730 patent requires.  '730 patent, 15:15-20.  And for the '543 patent, among other things, WinView has failed to allege facts showing that DraftKings practices the claim limitations regarding "downloading a set of service specific

---

[3]     A "limitation" or "element" is a constituent part of a patent claim.

information" and "executing an application"—two of the four limitations in the body of claim 1 of the '543 patent. '543 patent, 12:37-42.

A.   **WinView fails to plead sufficient facts to support a plausible inference that DraftKings practices the claims of the '730 patent**

WinView fails to allege sufficient facts to show that DraftKings has infringed the '730 patent. Among other things, WinView fails to plead any facts supporting its allegation that DraftKings [1] "group[s]" its users "into a cohort" and [2] sends a lockout signal "based on an amount of delay," as the claims of the '730 patent require.

According to WinView, "DraftKings products and services fall within the scope of one or more claims of the '730 patent, including but not limited to claims 1, 7 and 8." SAC ¶ 89. Claim 1 recites:

A game server comprising:

a. a memory for storing an application for conducting a game of skill or chance, the application configured for:

i. communicating with a plurality of Internet-connected devices *grouped into a cohort*; and

ii. sending a lockout signal at an appropriate time *based on an amount of delay* to prevent users from submitting a response to a game of skill or chance or other entertainment; and

b. a processor for processing the application.

'730 patent, 15:10-20 (emphasis added). Claims 7 and 8 depend from claim 1, and therefore incorporate all of its limitations.

WinView fails to plead any facts to show that DraftKings practices these two key elements of these claims.

***First***, WinView pleads no facts showing that "Internet-connected devices" accessing DraftKings' Sportsbook are "***grouped into a cohort***." All WinView offers is that different

consumers of DraftKings' Sportsbook product are able to access different information at the same time, with some viewing information about "a particular baseball game," while others view information about "a professional tennis tournament."   SAC ¶ 93.   From this unremarkable proposition, WinView then leaps to the following conclusion:   "On information and belief, the Internet-connected devices accessing the same particular content (e.g., a particular sporting event) at a given time are ***grouped into a cohort*** to receive the same live content for the game being bet on (e.g., real-time game information, available bets and updates thereto, and applicable odds and updates thereto)."   *Id.* (emphasis added).   That WinView repeats this same formulation multiple times (*see also id.*, ¶ 93, third sentence) does not enhance the plausibility of the allegation.

WinView thus offers no ***facts*** to show that in DraftKings' Sportsbook product, users are actually "grouped" in some way into a "cohort" based on the information they are accessing. Despite multiple opportunities to revise its pleading, all WinView manages to plead is that different users can access different information when they are on different parts of DraftKings' Sportsbook.   But this does not make it plausible that DraftKings arranges users viewing particular information into a "cohort."   As an analogy, consider two individuals reading the New York Times online:   one is reading a review of the latest show at the Metropolitan Museum of Art, while the second is reading an article discussing recent political developments in Southeast Asia.   There would be no reason to conclude that the New York Times is "grouping" these individuals into separate "cohorts" based on the fact that it is providing them with different information because they are viewing different pages of the website.   Just so here.

***Second***, WinView fails to adequately plead facts to support its allegation that DraftKings sends a lockout signal "***based on an amount of delay***."   While WinView alleges that in certain circumstances "the odds for a particular betting proposition will be grayed out, indicating that users

6

are prevented from submitting a response on that proposition" (SAC ¶ 94), WinView alleges no facts showing that this process is "based on an amount of delay" as the claims require.

In response to DraftKings' previous motion to dismiss on this basis, WinView has attempted to enhance its pleading in two ways. Neither is availing. First, WinView parrots and paraphrases the claim language itself. *Compare* '730 patent, claim 1 (reciting "sending a lockout signal at an appropriate time based on an amount of delay") *with* SAC ¶ 94 ("WinView is informed and believes, and on that basis alleges, that these bets are locked out at an appropriate time based on an amount of broadcast delay, for example."). But pleading infringement by merely reciting the claim language is not sufficient to state a claim. *See DIFF Scale Operation Rsch., LLC v. MaxLinear, Inc.*, 2020 WL 2220031, at *2 (D. Del. May 7, 2020) (dismissing direct infringement claims where plaintiff's allegations merely copied the language of each claim element while adding "on information and belief" without any additional facts), *report & recommendation adopted*, 2020 WL 6867103 (D. Del. Nov. 23, 2020); *N. Star Innovations, Inc. v. Micron Tech., Inc.*, 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017) (similar), *report & recommendation adopted*, 2018 WL 11182741 (D. Del. Jan. 3, 2018).

Second, WinView states: "On information and belief, this lockout signal is sent at a time based on, for example, an amount of broadcast delay, so as to permit users watching MLB games on television, online, or through other means with delays in the broadcast transmission path to enter bets corresponding to what they may be watching." SAC ¶ 94. But again, this does not recite any facts making it plausible that DraftKings sends a lockout signal "based on an amount of delay"—

rather, it just posits a potential **purpose** for sending a lockout signal based on an amount of delay, without providing **any facts** indicating that DraftKings actually does so.[4]

In sum, WinView fails to tether DraftKings' Sportsbook to the "grouped into a cohort" and "based on an amount of delay" limitations of the '730 patent.  WinView has therefore not done enough to state a claim for infringement of this patent.  District courts in this circuit have regularly dismissed claims of patent infringement that failed to allege facts showing that the defendant actually practices the claimed limitations.  *See, e.g.*, *NovaPlast Corp. v. Inplant, LLC*, 2021 WL 389386, at *7 (D.N.J. Feb. 3, 2021) ("Without … facts relating the features of the accused products to the patent claims, there is no *showing* of an entitlement to relief."); *Uniloc 2017 LLC v. Zenpayroll, Inc.*, 2021 WL 271800, at *2–4 (D. Del. Jan. 27, 2021) (recommending dismissal of direct infringement claim where plaintiff "fail[ed] to connect the centralized network management server ('CMS') and target on-demand sever ('TODS') elements of the claim language to the accused Gusto platform"); *Blue Spike LLC v. Comcast Cable Commc'ns, LLC*, 2019 WL 4242930, at *2–7 (D. Del. Sept. 6, 2019) (dismissing direct infringement claim where complaint failed to identify what parts of accused product corresponded to "first LCS domain" and "different LCS domain" limitations), *report & recommendation adopted*, 2019 WL 11027620 (D. Del. Nov. 5,

---

[4]     WinView's failure to provide actual facts supporting its claim of infringement render its claim implausible.  WinView could have conducted a test to gauge whether it is plausible that DraftKings actually "send[s] a lockout signal . . . based on an amount of delay."  For example, users watching a Major League Baseball game via different television, online, or other broadcasts with different delays could have determined if they were locked out of bets at the same time or different times, and whether the different times were based on an amount of broadcast delay from each viewing media. But WinView did not include any such information.  *Cf. Artrip v. Ball Corp.*, 735 F. App'x 708, 715 (Fed. Cir. 2018) (dismissing direct infringement claim where plaintiff failed to identify particular machines that allegedly infringed patents-in-suit despite having access to factory where machines were located).

2019); *N. Star, Inc.*, 2017 WL 5501489, at *2 ("There needs to be *some facts* alleged that articulate *why it is plausible* that the other party's product infringes that patent claim[.]").

Courts have previously dismissed claims of direct infringement that failed to adequately allege that the defendant practices a ***single*** claim limitation for a patent-in-suit.  Most recently, the Federal Circuit in *Bot M8 LLC v. Sony Corp. of America* dismissed an infringement claim where the plaintiff failed to allege "which one or ones" of four different storage components "satisf[ied] the mutual authentication limitation" of a patent in suit.  4 F.4th at 1355.  District courts, including in this circuit, have also previously dismissed infringement claims based on inadequately pled limitations.  *See, e.g.*, *Blue Spike*, 2019 WL 4242930, at *2–7 (dismissing direct infringement claims for several patents-in-suit where complaint failed to adequately allege infringement of at least one of the claim limitations for each of the patents); *Drone Labs, LLC v. Dedrone Holdings, Inc.*, 2019 WL 4345955, at *4 (N.D. Cal. Sept. 12, 2019) (dismissing direct infringement claim where complaint did not adequately allege infringement of the "transponder" claim limitation). Here, WinView has failed to plead facts showing that DraftKings practices at least ***two*** key limitations of the '730 patent, and therefore has failed to adequately allege direct infringement.

This pleading failure is not surprising given the mismatch between the older problems allegedly addressed in the '730 patent and the contemporary accused DraftKings' Sportsbook product.  The '730 patent—which predates modern smartphone technology—focuses on games that "rely on participation by watching an event on a television."  '730 patent, 2:40-41.  The challenge, as the '730 patent describes it, is that these games "have potential latency issues since television signal reception is not synchronized nationwide."  *Id.* at 2:41-42.  The '730 patent allegedly solves this problem in part by grouping users into "cohorts" based on television signal reception path.  *See, e.g., id.* at 4:58-61 ("Each cohort within the set of cohorts is based on a signal

reception path.  The signal reception path is selected from the group consisting of an over the air network, a cable network, and a satellite network."); *see also id.* at 7:6-14; 14:30-33.  The patent then proposes basing the "amount of delay" on the cohorts' television signal delays:

> In one aspect, a method of equalizing effects of latency differences in a game of skill comprises grouping participants into a set of cohorts viewing a telecast delivered by identical transmission and reception systems, determining an amount of delay for each cohort in the set of cohorts and substantially equalizing the set of cohorts through adjustment of the amount of delay.

'730 patent, 3:1-7.  However, because DraftKings' Sportsbook operates in the contemporary smartphone world, its business does not depend on users watching specific live sports broadcasts on television in order for them to place a bet.  DraftKings would thus have little need to group users based on their method of television reception, or to adjust an alleged lockout signal on that basis.  Indeed, WinView has not pled any facts showing that DraftKings has "grouped" users "into a cohort" or sent a lockout signal "based on an amount of delay."  For this reason, WinView's claims based on the '730 patent should be dismissed.

## B. WinView fails to plead sufficient facts to support a plausible inference that DraftKings practices the claims of the '543 patent

WinView's claims based on the '543 patent should also be dismissed, because once again—and despite multiple attempts to do so—WinView has failed to plead sufficient facts to show that DraftKings practices the patent's alleged invention.  In its *First* Amended Complaint, WinView did not even attempt to plead that DraftKings practices two of the four limitations in the body of claim 1 of the '543 patent.  In response to DraftKings' argument that this was plainly insufficient to state a claim, WinView now offers *something* about each of the limitations.  But, among other things, its allegations stop short of plausibly alleging facts showing that DraftKings practices the "downloading" and "executing" limitations of claim 1 of the '543 patent.

WinView alleges that "DraftKings products and services fall within the scope of one or more claims of the '543 patent, including but not limited to claims 1 and 9." SAC ¶ 106. In relevant part, Claim 1 recites:

> A method of implementing a consumer service on a mobile web-connected computing device comprising:
>
> loading a set of service related information located on a server related to a geographic location of the mobile web-connected computing device to an activity client…;
>
> selecting an option from the activity client from a list of available options;
>
> **downloading** a set of service-specific information related to a selected option from a server to the mobile web-connected computing device; and
>
> **executing** an application related to the selected option within the activity client on the mobile web-connected computing device.

'543 patent, 12:19-42 (emphases added). Claim 9 depends from claim 1, and therefore incorporates all of its limitations.

**First**, WinView fails to plead facts showing that the Accused Products "download[] a set of service-specific information related to a selected option from a server to the mobile web-connected computing device." '543 patent, 12:37-39. In an attempt to show that this limitation is practiced, WinView asserts, twice, that "when an option is selected . . . a set of service-specific information is downloaded." SAC ¶ 116. According to WinView, when a Daily Fantasy uses selects a contest, "the lineup options for that contest" are downloaded; when a Sportsbook user selects a sporting event, "the available bets and betting odds for that sporting event" are downloaded. *Id.* But the unelaborated assertion that this is the case does not make it so, and WinView's addition of a screenshot showing how a Daily Fantasy contestant enters a lineup adds nothing. Had it shown, for example, an image that said "PLEASE WAIT…DOWNLOADING,"

that may have supported a plausible allegation of infringement, but instead, it offers no facts to plausibly support the conclusion that DraftKings infringes.

At most, WinView has provided facts that are merely **consistent with** "downloading a set of service-specific information related to a selected option." "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also In re Bill of Lading Transmission*, 681 F.3d at 1332 (same); *People.ai, Inc. v. SetSail Techs., Inc.*, 2021 WL 2333880, at *2 (N.D. Cal. June 8, 2021) (dismissing direct infringement claim where plaintiff presented screenshots and other evidence "merely **consistent** with" practicing the patented method of matching emails to electronic record objects) (emphasis in original); *Panduit Corp. v. Corning Inc.*, 2019 WL 189817, at *4 (E.D.N.C. Jan. 14, 2019) (dismissing direct infringement claim in part because plaintiff alleged only "testing results that are **consistent with** the use of plaintiff's method") (emphasis added).

**Second**, WinView fails to plead facts showing that the Accused Products "execut[e] an application related to the selected option within the activity client on the mobile-web-connected computing device." '543 patent, 12:40-42. WinView tries to show that this limitation is practiced by saying that the Accused Products "execut[e] an application within the activity client" when they "accept a wager placed by the user" or "accept a buy-in and lineup by the user." SAC ¶ 117. At most, WinView has identified the circumstances in which it alleges that DraftKings Daily Fantasy Sports practices "executing an application within the activity client." But WinView fails to explain why or how in such circumstances any DraftKings activity constitutes "executing an application within the activity client." For the second time in consecutive paragraphs, it provides a screenshot that proves nothing whatsoever relating to the limitation at issue. Specifically, it shows what a

Daily Fantasy Sports contestant sees when she is ready to enter a contest; that image does not make it plausible that DraftKings is "executing an application."

In essence, WinView is merely parroting the language of the claims without a meaningful explanation as to how that claim language is met. That is not enough. *See DIFF Scale*, 2020 WL 2220031, at \*2 (dismissing direct infringement claims where "the complaint largely parrots back the language of the respective claim elements and then states that the accused product meets those limitations") (cleaned up); *N. Star*, 2017 WL 5501489, at \*2 ("There needs to be *some facts* alleged that articulate *why it is plausible* that the other party's product infringes that patent claim[.]") (emphasis in original). Having failed to plead facts showing that DraftKings practices at least two claim limitations—in this case, half of the limitations in the body of the claims of the '543 patent— WinView has failed to plead facts making DraftKings' infringement of the '543 patent plausible. *See Drone Labs*, 2019 WL 4345955, at \*4 (dismissing direct infringement claim for failure to adequately allege single claim limitation); *Blue Spike*, 2019 WL 4242930, at \*2–7 (dismissing multiple direct infringement claims for failure to allege at least one claim limitation).

As with the '730 patent, this failure to specify how DraftKings practices the "downloading" and "executing" limitations of the '543 patent is not surprising, given that these limitations are designed in part to address an outdated technical problem related to mobile phone memory. The '543 patent's invention purports to date back to June 20, 2005[5]—a time when mobile device memory was far more limited than it is today. The '543 patent notes the lack of mobile device memory as a problem to be solved:

> Most makes and models of cell phones have significant limitations on the amount of useable memory for storing downloadable application software. Therefore, a subscriber's cell phone should not be expected to hold in the temporary or

---

[5]     The '543 patent claims priority to provisional application no. 60/692,356, which was filed on June 20, 2005. '543 patent, pg. 2.

> permanent memory all of the software capable of running dozens of separate and discreet activity applications which might be offered by such an entertainment service. ***Minimizing and managing the amount of memory required*** to fully enjoy the entertainment service is essential.

'543 patent, 6:16-25 (emphasis added); *see also* SAC ¶ 35 ("The inventors [of the '543 patent] also recognized … the need to economize the resources needed for the large amount of data that may need to be provided to users."). The limitations regarding (1) downloading server-specific information and (2) executing an application after selecting an option were designed in part to help address this problem:

> [T]he present invention ensures that the application in each user's device receives all of the specific assets necessary for that particular genre of activity for a specific scheduled event ***while minimizing capacity*** and latency issues by assuring that only the necessary assets which are not resident on the device for the event are delivered on a timely basis to each cell phone.

'543 patent, 8:64-9:3 (emphasis added); *see also id.* at 10:5-11 (explaining how "the memory of each client is used more efficiently" by "only sending the assets which the client specifically needs for a specific application at a specific time"); SAC ¶ 35 (describing how the '543 patent "allow[s] a user's computing device to operate more efficiently" by "providing only assets that are not already resident on a mobile web-connected computing device"). By contrast, smartphone memory today is hundreds to thousands of times larger than it was in 2006. Thus, it is no surprise that WinView has failed to allege that DraftKings practices the "downloading" and "executing" limitations—they were designed in part to address memory limitations that no longer exist today.

## III. WinView's Claims For Willful, Induced, And Contributory Infringement Should Be Dismissed As To All Four Patents-In-Suit Because WinView Fails To Plead Facts Sufficient To Show That DraftKings Had The Required State Of Mind

In addition to its failure to plead direct infringement of the '730 and '543 patents, WinView has also failed to plead sufficient facts to support claims for willful, induced, and contributory infringement as to all four Patents-In-Suit. Willful, induced, and contributory infringement claims

14

all require the plaintiff to plead a certain state of mind:  willful infringement requires that the defendant knew of the Patents-In-Suit and knew (or should have known) that it infringed those patents; induced infringement requires that the defendant knew of the Patents-In-Suit, knew its actions would induce a third party to perform infringing acts, and possessed a specific intent for the induced acts to infringe the patents; and contributory infringement requires that the defendant knew that the accused products were especially made or especially adapted to infringe the Patents-In-Suit and have no substantial non-infringing use.  *See DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1303–06 (Fed. Cir. 2006) (en banc) (contributory infringement and induced infringement); *Batinkoff v. Church & Dwight Co.*, 2020 WL 1527957, at \*17, \*19 (D.N.J. Mar. 31, 2020) (willful infringement); *Ziemba v. Incipio Techs., Inc.*, 2014 WL 7051782, at \*5–6 (D.N.J. Dec. 12, 2014) (induced infringement and contributory infringement).  Notwithstanding these requirements, WinView has failed to plead facts sufficient to support its allegations that DraftKings possessed the required state of mind with respect to any of the Patents-In-Suit—despite having already amended its complaint twice, and once with the benefit of DraftKings' prior Motion to Dismiss. Accordingly, to the extent WinView pleads willful, induced, and contributory infringement for all four Patents-In-Suit, its claims should be dismissed.

### A.    WinView has not pled sufficient knowledge to allege willful infringement as to any of the four Patents-In-Suit

To state a claim for willful infringement, a plaintiff must plead facts that support two distinct allegations as to knowledge:  first, that the defendant "knew of the patent-in-suit," and second, that the defendant "knew, or should have known, that its conduct amounted to infringement of the patent." *Batinkoff*, 2020 WL 1527957, at \*19 (quoting *Välinge Innovation AB v. Halstead New Eng. Corp.*, 2018 WL 2411218, at \*13 (D. Del. May 29, 2018), *report & recommendation adopted*, 2018 WL 11013901 (D. Del. Nov. 6, 2018)).  Courts have dismissed

15

willfulness claims where there were "no specific factual allegations about [defendant's] subjective intent." *Finjan, Inc. v. Cisco Sys. Inc.*, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017); *see also Mich. Motor Techs. LLC v. Volkswagen Aktiengesellschaft*, 472 F. Supp. 3d 377, 383 (E.D. Mich. 2020) (holding that "[p]rior knowledge of the patent and that the conduct is infringing is a necessary component of a showing of willfulness" and surveying cases concluding the same).

WinView's willfulness claims fall short of this required showing.  With respect to the '243 and '730 patents, WinView asserts that "DraftKings became aware of the [patent] and that its activities concerning the DraftKings Sportsbook infringed the [patent] by January 2019."  SAC ¶¶ 81, 98.  And with respect to the '543 and '988 patents, WinView asserts that DraftKings "became aware" of each of them and that its "activities concerning" the Accused Products infringed them as of the dates that each patent issued.  But all WinView offers in support of its claim of willful infringement is four meager paragraphs.  SAC ¶¶ 63-66.  In one, WinView says that its "publicly available statements and press releases, including on WinView's website … refer to the company's patents" and the general areas WinView claims those patents cover.  SAC ¶ 63.  This says nothing whatsoever about the Asserted Patents, let alone DraftKings' knowledge of those patents.  Next, WinView claims that in January 2018, WinView's Chairman and DraftKings CEO communicated briefly about "a potential relationship" between the two companies, and that WinView's executive chairman "suggested an in person meeting" with DraftKings' CEO.  *Id.* ¶ 64.  WinView does not allege that the suggested meeting ever took place, or that its Chairman told DraftKings anything at all about the Asserted Patents.

WinView's allegations in Paragraph 65 fare no better.  There, WinView alleges that "DraftKings investigated WinView and its business," that "DraftKings specifically requested information regarding WinView's patents," and that WinView "provided DraftKings with

materials identifying the '243 Patent, the '730 Patent," and the applications that later issued as the '543 Patent and '988 Patent.  SAC ¶ 65.  These allegations, however, still fail to plead sufficient facts to allege ***knowledge of infringement***.  As courts in this district and others have held, "there must be some other factual allegations [beyond knowledge of the patent] that go to the accused infringer's subjective intent to infringe."  *Välinge*, 2018 WL 2411218, at \*13; *see also Batinkoff*, 2020 WL 1527957, at \*19 (plaintiff must plead facts plausibly showing defendant "knew, or should have known, that its conduct amounted to infringement of the patent") (quoting *Välinge*, 2018 WL 2411218, at \*13); *CG Tech. Dev., LLC v. Big Fish Games, Inc.*, 2016 WL 4521682, at \*14 (D. Nev. Aug. 29, 2016) (dismissing willfulness claim because "alleging that defendant only knew about the patent is insufficient to constitute willful infringement" without allegations supporting knowledge of infringement).  WinView's conclusory allegation that DraftKings "declined to participate" in further discussions with WinView in "late 2020" (SAC ¶ 66) so that it could "continue its infringement" is not nearly enough.

Complaints that include comparable or even more detailed allegations about pre-suit interactions between the parties are routinely dismissed for failure to state a claim for willful infringement.  For example, in *Batinkoff v. Church & Dwight Co.*, the plaintiffs alleged that the defendant spoke with the plaintiffs about the patent-in-suit and even cited the patent application for the patent-in-suit in a patent application that served as the basis for the accused products.  *See* 2020 WL 1527957, at \*19.  Nevertheless, the court dismissed the plaintiffs' willfulness count, because the plaintiffs "ha[d] not sufficiently plead[ed] facts to support a determination [that the defendant] knew or should have known *how*" its products infringed the asserted patent.  *Id.*  In *Malvern Panalytical Ltd. v. TA Instruments-Waters LLC*, the plaintiff alleged it had sent defendants a notice letter regarding the application for the patents-in-suit and provided several

"highly specific allegations of [defendants'] competitive monitoring" of the plaintiff.  2021 WL 3856145, at *2–3 (D. Del. Aug. 27, 2021).  Those allegations included that the defendants visited and monitored the plaintiff's website "once a month," and that the plaintiff's website "contain[ed] a page listing the company's patents."  *Id.*  The court nonetheless dismissed the willfulness count, holding that the plaintiff had not adequately alleged knowledge of infringement despite adequately alleging knowledge of the patents-in-suit.  *Id.*  And in *Bench Walk Lighting LLC v. LG Innotek Co.*, the court held that a patent notice letter failed to provide knowledge of infringement of any of the ten patents-in-suit because, even though it mentioned most of the patents-in-suit, it did not reference most of the accused products, and it made "no attempt to describe ***how*** [the plaintiff] is said to be infringing the patents."  530 F. Supp. 3d 468, 492 (D. Del. 2021) (cleaned up; emphasis in original).  *See also Finjan, Inc.*, 2017 WL 2462423, at *2 (dismissing claim of willful infringement where plaintiff and defendant had a "two decade" relationship in which, among other things, defendant "attended presentations by [plaintiff] in which [plaintiff] discussed its issued and pending patents and its patented technology").

Moreover, WinView's factual allegations are so threadbare that it has not even pled facts showing that DraftKings knew about the '543 and '988 patents prior to WinView's previous complaints.[6]  WinView seems to be claiming that because it provided DraftKings with documents

---

[6]     WinView barely alleges that DraftKings knew about the '243 and '730 patents.  It claims to have supplied "materials identifying" the '243 and '730 patents, but does not allege what the "materials" were, how the patents were "identified," or whether the "materials" called any special attention to the '243 and '730 patents at all.  SAC ¶ 65.  Courts have found no knowledge of the patents in similar circumstances.  *See, e.g., Finjan, Inc. v.*, 2017 WL 2462423, at *5 ("Knowledge of a patent portfolio generally is not the same thing as knowledge of a specific patent."); *Evolved Wireless, LLC v. Samsung Elecs. Co.*, 2016 WL 1019667, at *3–4 (D. Del. Mar. 15, 2016) (dismissing claim of willful infringement and finding no knowledge of patents-in-suit where plaintiff provided defendant with a notice letter listing eighty-five U.S. and foreign patents), *report & recommendation adopted*, 2016 WL 1381765 (D. Del. Apr. 6, 2016); *Cascades Computer Innovation, LLC v. Samsung Elecs. Co.*, 77 F. Supp. 3d 756, 766 (N.D. Ill. 2015) (finding no

18

that identified the **applications** that led to the '543 and '988 patents, DraftKings had knowledge of the patents—and of its infringement—as soon as those patents issued.  *See* SAC ¶¶ 65, 122, 141.  This is simply not correct.  "'[T]o willfully infringe a patent, the patent must exist, and one must have knowledge of it.  A 'patent pending' notice gives one no knowledge whatsoever. … Filing an application is no guarantee any patent will issue[.]'"  *NexStep, Inc. v. Comcast Cable Commc'ns, LLC,* 2019 WL 5626647, at *3 (D. Del. Oct. 31, 2019), *report & recommendation adopted*, 2019 WL 11663798 (D. Del. Nov. 15, 2019) (quoting *Robocast, Inc. v. Microsoft Corp.*, 21 F. Supp. 3d 320, 334 (D. Del. 2014), quoting *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985)).

Numerous courts have held that notice of a patent application does not lead to willful infringement of the ultimately issued patent.  *See, e.g.*, *Intell. Pixels Ltd. v. Sony Interactive Ent. LLC*, 2020 WL 7872961, at *2-3 (C.D. Cal. Nov. 20, 2020) (holding that allegations that alleged infringer knew of patent application and subsequently monitored that patent application were insufficient to allege pre-suit knowledge of the issued patent because the allegation of monitoring was conclusory); *Adidas Am., Inc. v. Skechers USA, Inc.*, 2017 WL 2543811, at *3-4 (D. Or. June 12, 2017) ("Pleading facts that the infringer merely had knowledge of the patent application is insufficient, without more, plausibly to support an allegation that the infringer had knowledge of the patent-in-suit.") (citations omitted); *Nonend Inventions, N.V. v. Apple Inc.*, 2016 WL 1253740, at *2-3 (E.D. Tex. Mar. 11, 2016) (discussing how knowledge of a patent application alone cannot support a finding of willful infringement), *report & recommendation adopted*, 2016 WL 1244973 (E.D. Tex. Mar. 30, 2016).

---

knowledge of patents-in-suit where notice letter listed thirty-nine patents and emphasized five that were not the patents-in-suit).

Finally, WinView appears to claim that prior complaints filed in this proceeding can provide a basis for alleging willfulness. *See, e.g.*, SAC ¶¶ 81, 122 (alleging DraftKings has known of the '243 and '543 patents and known that its activities allegedly infringed them "since at least July 7, 2021, when WinView served DraftKings NV with the original complaint"); *id.* ¶¶ 98, 141 (alleging DraftKings has known of the '730 and '988 patents and has known that its activities allegedly infringed them "since at least July 28, 2021, when WinView served DraftKings NV with the first amended complaint"). Numerous courts have held, however, that this is not enough to state a willfulness claim. Indeed, allowing the filing of an earlier complaint to provide a basis for alleging willfulness "would force defendants that subjectively believe they are not infringing to choose between halting normal business operations as a cautionary measure or face the possibility of a tripled damages award if found guilty of infringement." *Arbmetrics, LLC v. Dexcom Inc.*, 2019 WL 12473781, at *4 (S.D. Cal. Feb. 19, 2019), *modified on reconsideration*, 2019 WL 12473780 (S.D. Cal. Oct. 7, 2019); *see also Slot Speaker Techs., Inc. v. Apple, Inc.*, 2017 WL 4354999, at *2 (N.D. Cal. Sept. 29, 2017) (dismissing post-filing willfulness claim and rejecting the "broad proposition that a defendant must cease all allegedly infringing conduct once a complaint is filed in order to avoid a willful infringement claim"); *M & C Innovations, LLC v. Igloo Prods. Corp.*, 2018 WL 4620713, at *5 (S.D. Tex. July 31, 2018) (dismissing post-filing willfulness claim where there were "no allegations suggesting that Igloo deliberately re-dedicated itself to infringing after being served with the complaint").[7]

---

[7] By this same logic, DraftKings DE and Crown Gaming should not be held liable for post-filing willfulness claims, as WinView seems to allege they should be. *See* SAC ¶ 81 ("At the very latest, DraftKings DE and Crown Gaming have known of the '730 Patent and that their activities concerning the DraftKings Sportsbook infringed the '730 Patent since at least August 8, 2021, when DraftKings made public SEC filings describing this litigation and the patents asserted."); *id.* ¶¶ 98, 122, 141 (same). These claims should be dismissed as well.

WinView has thus failed to adequately allege knowledge of the Patents-In-Suit and knowledge of infringement, and its claims for willful infringement as to all four Patents-In-Suit should be dismissed.

**B.    WinView has not pled sufficient knowledge or specific intent to allege induced infringement as to any of the four Patents-In-Suit**

To state a claim for induced infringement, a plaintiff must allege facts showing that the defendant knew of the Asserted Patents, knowingly induced a third party to infringe the patents, and had ***specific intent*** to induce infringement of those patents.  *See DSU*, 471 F.3d at 1305; *see also Richmond v. Lumisol Elec. Ltd.*, 2014 WL 1405159, at *3 (D.N.J. Apr. 10, 2014) ("Claims for indirect infringement must contain … allegations that the defendants 'knowingly induced infringement and possessed specific intent to encourage another's infringement.'") (quoting *In re Bill of Lading Transmission*, 681 F.3d at 1339).  The Federal Circuit has made clear that "specific intent" requires not only that the defendant knew of the asserted patent and intended to cause the acts that allegedly produced infringement, but also that the defendant had an ***affirmative intent*** to cause infringement.  *See Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014) ("[T]he patentee must show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement.").

For the third consecutive time, WinView's pleading falls far short of this standard.  The Second Amended Complaint generically concludes that DraftKings induced "customers and end users" to use the Accused Products in an infringing manner.  SAC ¶¶ 79, 96, 120, 139.  It then cites links to webpages for downloading certain DraftKings products, and a link to a news article describing how DraftKings' "Flash Bet will allow customers to place live, in-game wagers quickly between points in a given match" during Wimbledon.  *Id.*  Despite having the benefit of DraftKings' First Motion to Dismiss, which pointed out the deficiencies in these allegations (D.I.

21 at 16-17), WinView did not amend them in its Second Amended Complaint. *Compare* First Amended Complaint (D.I. 7) ("FAC") ¶¶ 63, 80, 100, 119 *with* SAC ¶¶ 79, 96, 120, 139. They remain plainly insufficient.

As discussed above, WinView has failed to sufficiently plead that DraftKings knew of the Patents-In-Suit or, even if it did, knew it was infringing them. *See supra* Section III.A. Moreover, courts, including the Federal Circuit and courts in this district, have consistently held that pleadings such as this—and even pleadings that are more robust—fail to meet the "rigorous" standard of showing specific intent to induce infringement. *Straight Path IP*, 2014 WL 3345618, at *2–3 (dismissing induced infringement claims where plaintiff showed that "Defendants were aware of the Asserted Patents" and "instruct[ed] [customers] how to use the Accused Products," but failed to show that "Defendants ***specifically intended*** for the induced acts to infringe the Asserted Patents"). For example, the Federal Circuit has held that instructions merely describing an allegedly "infringing mode" in vague terms, without more, do not show intent to induce—rather, inducement requires taking "active steps" to encourage direct infringement. *Takeda Pharms. U.S.A., Inc. v. W.-Ward Pharm. Corp.*, 785 F.3d 625, 630–34, 631 n.3 (Fed. Cir. 2015).

This district has held similarly. *See Otsuka Pharm. Co. v. Zydus Pharms. USA*, 151 F. Supp. 3d 515, 520–21 (D.N.J. 2015), *aff'd*, 694 F. App'x 808 (Fed. Cir. 2017) (dismissing induced infringement claims where complaint alleged that defendants' labels would "recommend, suggest, encourage and/or instruct others to use [defendants'] generic products in a manner that infringes," because the complaint contained "no allegations regarding Defendants' specific intent or any specific acts taken to encourage such infringement"); *Zoetis LLC v. Roadrunner Pharmacy, Inc.*, 2016 WL 755622, at *5 (D.N.J. Feb. 25, 2016) (dismissing induced infringement claim as "vague and conclusory" where complaint merely alleged that defendant sold its product "with advertising

or instructions relating to a use that directly infringes" the asserted patent). "'[O]rdinary acts incident to product distribution, such as offering customers technical support or product updates,' will not support inducement liability in themselves." *Memory Integrity, LLC v. Intel Corp.*, 144 F. Supp. 3d 1185, 1193 (D. Or. 2015) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005)). Thus, WinView's claims for induced infringement as to all four Patents-In-Suit should be dismissed as well.

### C.   WinView has not pled sufficient knowledge or other sufficient facts to allege contributory infringement as to any of the four Patents-In-Suit

To state a claim of contributory infringement, a plaintiff must allege facts showing that the defendant (among other things) [1] ***knowingly*** provided components that have no "substantial non-infringing use," and [2] ***knew*** that the asserted products were "especially made or especially adapted" to infringe the patents at issue. 35 U.S.C. § 271(c); *see also Ziemba*, 2014 WL 7051782, at *6 (reciting similar); *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) ("[C]ontributory infringement requires knowledge of the patent in suit and ***knowledge of patent infringement***.") (emphasis added) (citing *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964)).

WinView's allegations regarding DraftKings' knowledge are again insufficient to meet this standard. WinView cites no facts to support its conclusory statement that DraftKings knew that the Accused Products allegedly "constitute material parts of the inventions of the [Asserted Patents], are not staple articles or commodities of commerce suitable for substantial noninfringing use, and are used in an infringing manner." SAC ¶¶ 80, 97, 121, 140. All it offers is its unadorned say-so, which has not become plausible by dint of the fact that WinView has repeated it word-for-word without amendment in each of its three Complaints. *Compare* SAC ¶¶ 80, 97, 121, 140 *with* FAC ¶¶ 64, 81, 101, 120 *and* Compl. (D.I. 1) at ¶¶ 52, 72. "[M]ere speculation on the issue of

intent is not enough to survive a motion to dismiss" claims of contributory infringement.  *Straight Path IP*, 2014 WL 3345618, at \*4; *see also id.* (dismissing contributory infringement claims where "[p]laintiff has not shown that Defendants knew that the Accused Products were especially made or especially adapted to infringe the Asserted Patents") (cleaned up); *Ziemba*, 2014 WL 7051782, at \*6 (dismissing contributory infringement claims where complaint contained "a threadbare recitation of the necessary elements" regarding knowledge but pled no facts to show same); *InvenTel Prods., LLC v. Li*, 406 F. Supp. 3d 396, 404 (D.N.J. 2019) (dismissing contributory infringement claims where complaint contained "no plausible allegation that [defendant] took any action with the requisite knowledge to produce contributory liability").

Furthermore, leaving aside the issue of DraftKings' knowledge, WinView's contributory infringement claims fail for an additional reason:  they recite boilerplate allegations of contributory infringement that do nothing more than state the legal standard.  *See* SAC ¶¶ 80, 97, 121, 140. Allegations that merely "parrot[] the text of Section 271(c)" are "not entitled to the presumption of truth."  *People.ai,* 2021 WL 2333880, at \*6 (dismissing contributory infringement claims that recited legal standard without supporting facts); *see also Artemi Ltd. v. Safe-Strap Co.*, 947 F. Supp. 2d 473, 480–81 (D.N.J. 2013) (dismissing contributory infringement claims where plaintiff did not plead "any facts concerning which 'component' of the Spacemaker [the defendant] has sold or offered to sell within the United States"); *Hitachi Kokusai Elec. Inc. v. ASM Int'l, N.V.*, 2018 WL 3537166, at \*2 (N.D. Cal. July 23, 2018) (dismissing contributory infringement claims because "conclusory allegation does not support an inference that the accused products have 'no substantial non-infringing uses'")*.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a cause of action.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Because WinView has pled no facts, regarding

knowledge or otherwise, to support its conclusory allegations regarding contributory infringement, WinView's claims of contributory infringement as to all four Patents-In-Suit should be dismissed.

## CONCLUSION

DraftKings respectfully requests that the Court dismiss with prejudice WinView's direct infringement claims for the '730 and '543 patents, as well as its claims for willful, induced, and contributory infringement for all four Asserted Patents.[8]

Dated:  December 15, 2021          By:  /s/ James E. Cecchi
                                        James E. Cecchi, Esq.
                                        Lindsey H. Taylor, Esq.
                                        CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY &
                                        AGNELLO, P.C.
                                        5 Becker Farm Road
                                        Roseland, NJ  07068
                                        Tel:    (973) 994-1700
                                        Fax:    (973) 994-1744
                                        Email: jcecchi@carellabyrne.com

                                        William F. Lee, Esq.
                                        Joseph J. Mueller, Esq.
                                        Richard Goldenberg, Esq.
                                        Andrew S. Dulberg, Esq.
                                        Stephanie Neely, Esq.
                                        Zachary A. Nemtzow, Esq.
                                        Lucas L. Fortier, Esq.
                                        Wilmer Cutler Pickering Hale and Dorr LLP
                                        60 State Street
                                        Boston, MA  02109
                                        Tel:  (617) 526-6000
                                        Fax:  (617) 526-5000

---

[8]     DraftKings reserves all rights to move to dismiss WinView's complaint under Rule 12(b)(6) for failing to state a claim on the basis that DraftKings NV is not an operating entity and does not engage in the allegedly infringing conduct.  *See High 5 Games, LLC v. Marks*, 2019 WL 3761114, at *6 (D.N.J. Aug. 9, 2019) ("Generally, a parent corporation is not liable for the acts of its subsidiaries."); *Brit. Telecomms. PLC v. IAC/InteractiveCorp*, 356 F. Supp. 3d 405, 409 (D. Del. 2019) ("A parent company is not liable for the actions of its subsidiary solely because of the parent-subsidiary relationship.") (quoting *Strikeforce Techs., Inc. v. Phonefactor, Inc.*, 2013 WL 6002850, at *3 (D. Del. Nov. 13, 2013)); *see also* Fed. R. Civ. P. 12(h); *Walzer v. Muriel Siebert & Co.*, 447 F. App'x 377, 384 (3d Cir. 2011) (holding that defendants did not waive Rule 12(b)(6) defense by not including it in their initial Rule 12(b)(6) motions).

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2021, I served a copy of the foregoing document

through the CM/ECF system upon all counsel of record.


*DRAFT*_____
James E. Cecchi

27