# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

WINVIEW INC., a Delaware
corporation,

        Plaintiff,

    v.

DRAFTKINGS INC., a Nevada
corporation, DRAFTKINGS INC., a
Delaware corporation, and CROWN
GAMING INC., a Delaware
corporation,

        Defendants.

Civil Action No. 21-13405 (ZNQ) (DEA)

**Motion Returnable: February 7, 2022**

**Oral Argument Requested**

## WINVIEW INC.'S BRIEF IN SUPPORT OF ITS OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Morgan Chu
Richard Birnholz
Keith Orso
Jordan Nafekh
Tate Harshbarger
IRELL & MANELLA LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276
(310) 277-1010

Thomas R. Curtin
Joseph P. LaSala
Kathleen N. Fennelly
MCELROY, DEUTSCH, MULVANEY &
 CARPENTER LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-2075
 (973) 993-8100

*Attorneys for Plaintiff, WinView Inc.*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................... 1

II.   PROCEDURAL BACKGROUND ...................................................................... 2

III.  APPLICABLE LEGAL STANDARDS .............................................................. 4

      A.    A Complaint Is Sufficient When It States A Plausible Claim ............................ 4

      B.    A Patent Plaintiff Need Not Prove Its Case In Its Complaint ............................ 5

      C.    A Patent Plaintiff Need Not Plead Infringement On An Element-
            By-Element Basis ..................................................................................... 6

IV.   ARGUMENT ..................................................................................................... 7

      A.    WinView Adequately Pleads Direct Infringement Of The '730 And
            '543 Patents ............................................................................................ 7

      B.    WinView Adequately Pleads Willful Infringement ........................................ 21

      C.    WinView Adequately Pleads Induced Infringement ...................................... 30

      D.    WinView Adequately Pleads Contributory Infringement ................................ 36

      E.    There Is No Basis For A Dismissal With Prejudice ....................................... 39

V.    CONCLUSION ................................................................................................. 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3Shape A/S v. Align Tech., Inc.*,
  C.A. No. 18-886-LPS-CJB, 2019 WL 1416466 (D. Del. Mar. 29, 2019) ..............................31

*Adidas America, Inc. v. Skechers USA, Inc.*
  2017 WL 2543811 (D. Ore. June 12, 2017) ...........................................................................25

*All Weather Armour, LLC v. Art of Gutter, Inc.*,
  C.A. No. 19-17150, 2020 WL 9720067 (D.N.J. June 23, 2020) ............................................14

*Alvin v. Suzuki*,
  227 F.3d 107 (3d Cir. 2000)...................................................................................................39

*Arbmetrics, LLC v. Dexcom Inc.*,
  C.A. No. 18-cv-00134-JLS-KSC, 2019 WL 12473781 (S.D. Cal. Feb. 19,
  2019) .....................................................................................................................................30

*Artemi Ltd. v. Safe-Strap Co.*,
  947 F. Supp. 2d 473 (D.N.J. 2013) ........................................................................................38

*Artrip v. Ball Corp.*,
  735 F. App'x 708 (Fed. Cir. 2018) ...................................................................................13, 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................................ *passim*

*Batinkoff v. Church & Dwight Co.*,
  C.A. No. 3:18-cv-16388-BRM-LHG, 2020 WL 1527957 (D.N.J. Mar. 31,
  2020) .................................................................................................................................7, 25, 26

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................................ *passim*

*Bench Walk Lighting LLC v. LG Innotek Co.*,
  530 F. Supp. 3d 468 (D. Del. 2021).................................................................................26, 27

*Bench Walk Lighting LLC v. LG Innotek Co.*,
  C.A. No. 20-51-RGA, D.I. 54 (D. Del. Jan. 4, 2021) ...........................................................35

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012)..................................................................................... 5, 6, 31

*Blue Spike LLC v. Comcast Cable Commc'ns, LLC*,
  2019 WL 4242930 (D. Del. Sept. 6, 2019)......................................................................16, 21

**Page(s)**

*Bot M8 LLC v. Sony Corp. of Am.*,
    4 F.4th 1342 (Fed. Cir. 2021) ...................................................................... *passim*

*Celanese Int'l v. Ahui Jinhe Indus. Co., Ltd.*,
    C.A. No. 20-cv-01775, D.I. 81 (D. Del. Dec. 10, 2021)..............................29, 31, 35

*CG Tech. Dev., LLC v. Big Fish Games, Inc.*,
    C.A. No. 2:16–cv–00857–RCJ–VCF, 2016 WL 4521682 (D. Nev. Aug. 29,
    2016) .........................................................................................................................27

*DermaFocus LLC v. Ulthera, Inc.*,
    201 F. Supp. 3d 465 (D. Del. 2016).................................................................5, 22

*DIFF Scale Operation Rsch., LLC v. MaxLinear, Inc.*,
    2020 WL 2220031 (D. Del. May 7, 2020)....................................................15, 21

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
    888 F.3d 1256 (Fed. Cir. 2018)..............................................................................5

*Drone Labs, LLC v. Dedrone Holdings, Inc.*
    C.A. No. 19-cv-01281-EMC, 2019 WL 4345955 (N.D. Cal. Sept. 12, 2019) ...........16, 17, 21

*Eko Brands, LLC v. Adrian Rivera Maynex Enters., Inc.*,
    946 F.3d 1367 (Fed. Cir. 2020).............................................................................27

*Eli Lilly & Co. v. Hospira, Inc.*,
    933 F.3d 1320 (Fed. Cir. 2019)...............................................................................8

*Erickson v. Pardus*,
    551 U.S. 89 (2007).....................................................................................................4

*EyesMatch Ltd. v. Facebook, Inc.*,
    C.A. No. 21-111-RGA-JLH, D.I. 48 (D. Del. Oct. 1, 2021) ..................................37

*Finjan, Inc. v. Cisco Sys. Inc.*,
    C.A. No. 17-cv-00072-BLF, 2017 WL 2462423 (N.D. Cal. June 7, 2017) ...........................27

*Fujitsu Ltd. v. Netgear Inc.*,
    620 F.3d 1321 (Fed. Cir. 2010).............................................................................36

*Hewlett-Packard Co. v. Bausch & Lomb Inc.*,
    909 F.2d 1464 (Fed. Cir. 1990).............................................................................36

*Hitachi Kokusai Elec. Inc. v. ASM Int'l, N.V.*,
    C.A. No. 17-cv-06880-BLF, 2018 WL 3537166 (N.D. Cal. July 23, 2018) ...........................39

**Page(s)**

*Intellectual Pixels Ltd. v. Sony Interactive Entertainment LLC*,
  2020 WL 7872961 (C.D. Cal. Nov. 20, 2020) ......................................................25

*InvenTel Prods., LLC v. Li*,
  406 F. Supp. 3d 396 (D.N.J. 2019) ......................................................................39

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
  C.A. No. 18-452-WCB, 2019 WL 330515 (D. Del. Jan. 25, 2019) ...........................24, 28, 36

*KOM Software Inc. v. NetApp, Inc.*,
  C.A. No. 1:18-cv-00160-RGA, 2018 WL 6167978 (D. Del. Nov. 26, 2018) ........................35

*Kyowa Hakka Bio, Co. v. Ajinomoto Co.*,
  2018 WL 834583 (D. Del. Feb. 12, 2018) ......................................................22, 24

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
  869 F.3d 1372 (Fed. Cir. 2017).........................................................................6, 36

*Malvern Panalytical Ltd. v. TA Instruments-Waters LLC*,
  C.A. No. 19-cv-2157-RGA, 2021 WL 3856145 (D. Del. Aug. 27, 2021) ......................26

*McDermott v. Clondalkin Grp., Inc.*,
  649 F. App'x 263 (3d Cir. 2016) .........................................................................5

*Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005).........................................................................................31

*Michigan Motor Techs. LLC v. Volkswagen Aktiengesellschaft*,
  472 F. Supp. 3d 377 (E.D. Mich. 2020)...............................................................27

*Microsoft Corp. v. DataTern, Inc.*,
  755 F.3d 899 (Fed. Cir. 2014)............................................................................34

*Moskowitz Family LLC v. Globus Med., Inc.*,
  C.A. No. 20-3271, D.I. 102 (E.D. Pa. Mar. 10, 2021)...........................................36

*N. Star Innovations, Inc. v. Micron Tech., Inc.*,
  2017 WL 5501489 (D. Del. Nov. 16, 2017) .....................................................15, 40

*Nalco Co. v. Chem-Mod, LLC*,
  883 F.3d 1337 (Fed. Cir. 2018)....................................................................6, 11, 14

*Nasdaq, Inc. v. IEX Grp., Inc.*,
  C.A. No. 18-3014-BRM-DEA, 2019 WL 102408 (D.N.J. Jan. 4, 2019) ...................... *passim*

**Page(s)**

*Nonend Inventions, N.V. v. Apple Inc.*
2016 WL 1253740 (E.D. Tex. Mar. 11, 2016) .......................................................25

*NovaPlast Corp. v. Inplant, LLC*,
C.A. No. 20-7396 (KM) (JBC), 2021 WL 5770264 (D.N.J. Dec. 6, 2021) ..........15, 22, 27, 28

*Otsuka Pharm. Co. v. Zydus Pharms. USA*,
151 F. Supp. 3d 515 (D.N.J. 2015), *aff'd*, 694 F. App'x 808 (Fed. Cir. 2017) ......................34

*Panduit Corp. v. Corning Inc.*,
C.A. No. 5:18-CV-229-FL, 2019 WL 189817 (E.D.N.C. Jan. 14, 2019).........................19, 20

*People.ai, Inc. v. SetSail Techs., Inc.*,
C.A. No. C 20-09148 WHA, 2021 WL 2333880 (N.D. Cal. June 8, 2021)......................19, 39

*Richmond v. Lumisol Elec. Ltd.*,
C.A. No. 13–1944 (MLC), 2014 WL 1405159 (D.N.J. Apr. 10, 2014) ................................34

*Ricoh Co. v. Quanta Computer Inc.*,
550 F.3d 1325 (Fed. Cir. 2008)................................................................37

*Sabinsa Corp. v. Olive Lifesciences Pvt. Ltd.*,
C.A. No. 14-4739, 2018 WL 11355086 (D.N.J. May 30, 2018) ...................................31, 35

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
14 F.4th 1323 (Fed. Cir. 2021) ................................................................27

*Straight Path IP Grp., Inc. v. Vonage Holdings Corp.*,
C.A. No. 14–502 (JLL)(JAD), 2014 WL 3345618 (D.N.J. July 7, 2014) ..................34, 35, 39

*Telebrands Corp. & Prometheus Brands, LLC v. Everstar Merchandise Co., Ltd.*,
No. 17-2878, 2018 WL 585765 (D.N.J. Jan. 29, 2018)..........................................29

*Uniloc 2017 LLC v. Zenpayroll, Inc.*,
2021 WL 271800 (D. Del. Jan. 27, 2021).....................................................15, 16

*United Servs. Automobile Ass'n. v. PNC Bank N.A.*,
C.A. No. 2:21-cv-00246-JRG, D.I. 61 (E.D. Tex. Jan. 14, 2022) ............................6

*Univ. of Mass. Med. Sch. v. L'Oreal S.A.*,
2018 WL 5919745 (D. Del. Nov. 13, 2018) ..................................................24, 25

*WAG Acquisition, LLC v. Multi-Media, LLC*,
C.A. No. 14–2340 (ES)(JAD), 2015 WL 5310203 (D.N.J. Sept. 10, 2015) ..............30, 31, 35

**Page(s)**

*Walker Digital, LLC v. Facebook, Inc.*,
   852 F. Supp. 2d 559 (D. Del. 2012) ........................................................................35

*Ziemba v. Incipio Techs., Inc.*,
   C.A. No. 13–5590 (JLL), 2014 WL 7051782 (D.N.J. Dec. 12, 2014) ....................39

*Zoetis LLC v. Roadrunning Pharm., Inc.*,
   C.A. No. 15-3193, 2016 WL 755622 (D.N.J. Feb. 25, 2016) ..................................34

**Rules**

Fed. R. Civ. P. 12(b)(6) ...........................................................................................2, 4

Fed. R. Civ. P. 15(a)(2) ..............................................................................................40

## I.     INTRODUCTION

DraftKings' motion to dismiss is a classic overreach.  Throughout its motion, DraftKings makes arguments that are not appropriate for the pleading stage.  Hoping to short-circuit the litigation, DraftKings essentially argues that WinView's detailed complaint should have contained WinView's infringement contentions, claim construction positions, and expert reports.  Well-established principles of notice pleading under *Iqbal* and *Twombly* confirm that WinView's current complaint ("Complaint") contains more than sufficient factual allegations to state patent infringement claims and provide DraftKings with reasonable notice of the basis for those claims.  Because that is all that is required at the pleading stage, DraftKings' motion should be denied.

DraftKings' arguments with respect to two of the four asserted patents highlight how DraftKings is arguing the merits, not the sufficiency of the pleadings.  For example, in contesting the infringement allegations with respect to the '730 patent, DraftKings argues that WinView has not sufficiently alleged that DraftKings' servers store software "configured for communicating with a plurality of Internet-connected devices grouped into a cohort"—despite the allegations in the Complaint that DraftKings' servers are programmed to provide, for example, different information to different groups of mobile application users—because DraftKings contends that the cohort must be grouped in a particular way.  *See* Mot. at 9.  Likewise, for the '543

patent, DraftKings contests the "downloading a set of service-specific information" claim language, Mot. at 11, notwithstanding that the Complaint gives examples of DraftKings downloading lineup options, available betting propositions, and odds for particular sporting events, among other service-specific information.  It is no surprise that DraftKings contends that it does not infringe, but a motion to dismiss is not the vehicle to litigate various merits issues such as claim construction and infringement.

DraftKings' motion to dismiss the willfulness and indirect infringement allegations also misses the mark.  WinView's Complaint detailed the parties' dealings with each other in support of willfulness and indirect infringement. WinView's allegations as to pre-suit and post-suit knowledge are more than sufficient to sustain these claims under Rule 12(b)(6).

## II.    PROCEDURAL BACKGROUND

DraftKings has not fairly characterized the background leading to WinView's Second Amended Complaint.  DraftKings' suggestion that this Complaint is somehow a "third" attempt to address purported pleading deficiencies is another example of DraftKings advancing an incorrect and overzealous argument.  WinView's First Amended Complaint ("FAC") added two patents before DraftKings had responded, and the Complaint added parties at DraftKings' invitation along with more facts.

WinView filed its original complaint on July 7, 2021 to assert patent infringement claims under two patents, U.S. Patent Nos. 9,878,243 (the '243 Patent)

and 10,721,543 (the '543 Patent).  D.I. 1.  Three weeks later, before DraftKings

appeared or responded, WinView filed the FAC.  D.I. 7.  The FAC added claims under

two more patents, U.S. Patent Nos. 9,993,730 (the '730 Patent) and 10,806,988 (the

'988 Patent), but otherwise did not make changes to the previously-filed allegations.

The 52-page FAC alleged in detail how the DraftKings Sportsbook and Daily

Fantasy Sports websites and mobile applications use WinView's patents.  The FAC

also explained how the sports betting landscape changed dramatically in 2018, when

the Supreme Court struck down the Professional and Amateur Sports Protection Act

(PASPA), coinciding with DraftKings' expanding infringement.

Just two days before the deadline to respond to the FAC, DraftKings' counsel

invited WinView to amend the FAC to drop one DraftKings entity, DraftKings Inc. a

Nevada corporation ("DraftKings NV"), and name DraftKings Inc. a Delaware

corporation ("DraftKings DE") and Crown Gaming Inc. ("Crown Gaming") (together

"DraftKings").  In the meantime, DraftKings filed a motion to dismiss.  D.I. 21.

WinView and DraftKings met and conferred and entered into a stipulation

providing that, in lieu of responding to the motion, WinView could file a Second

Amended Complaint (the "Complaint") naming DraftKings DE and Crown Gaming

as parties.  D.I. 25 (Stipulated Consent to File Second Amended Complaint).  Upon

filing the Complaint, DraftKings' motion to dismiss would be deemed withdrawn.  *Id.*

Although the allegations in the original FAC were more than sufficient, to minimize

the burden on the Court and avoid unnecessary motion practice, WinView provided additional allegations, including details regarding WinView's pre-suit communications with DraftKings, such as emails with DraftKings' CEO Jason Robins regarding WinView's "foundational intellectual property" and DraftKings' specific requests for WinView's patent information. *E.g.*, Complaint ¶¶ 63–66.

DraftKings then filed the current motion. WinView respectfully submits the present opposition. This will be the first time the Court is addressing these issues.

## III. APPLICABLE LEGAL STANDARDS

### A. A Complaint Is Sufficient When It States A Plausible Claim

It is well settled that, to survive a motion to dismiss, a complaint need only contain facts that, accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In assessing plausibility, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Id.* at 555; *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" (quoting *Twombly*, 550 U.S. at 555)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "more than

a sheer possibility that a defendant has acted unlawfully," the plausibility standard "is not akin to a 'probability requirement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

### B.  A Patent Plaintiff Need Not Prove Its Case In Its Complaint

As the cases DraftKings cites often repeat, "a plaintiff 'need not "prove its case at the pleading stage."'"  *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021) (quoting *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)); *see also Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (finding a plaintiff must only give the alleged infringer "fair notice" of infringement).

The pleading standard takes into account the imbalance in information as between a plaintiff and defendant, and the fact that the plaintiff will learn information within the defendant's control during discovery.  District courts in the Third Circuit have explained how "[i]n the context of patent litigation, it is logical to presume that a defendant has greater access to and, therefore, more information about its accused method."  *DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 469 (D. Del. 2016) (footnote omitted).  "Given the focus of the above articulated standard of review on reasonable notice of plausible claims under the circumstances, the question a court must address with each case is whether the plaintiff at bar has provided sufficient information to allow the court to determine plausibility and to allow the named defendant to respond to the complaint."  *Id.* (footnotes omitted); *see also McDermott*

11056040

*v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267–68 (3d Cir. 2016) ("This Court has explained that pleading upon information and belief is permissible '[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control'—so long as there are no 'boilerplate and conclusory allegations' and '[p]laintiffs . . . accompany their legal theory with factual allegations that make their theoretically viable claim plausible.'").

### C.    A Patent Plaintiff Need Not Plead Infringement On An Element-By-Element Basis

The Federal Circuit also has explained that "[a] plaintiff is not required to plead infringement on an element-by-element basis." *Bot M8*, 4 F.4th at 1352. "[T]he Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (quoting *In re Bill of Lading*, 681 F.3d at 1335).

"Instead, it is enough that a complaint place the alleged infringer on notice of what activity . . . is being accused of infringement." *Bot M8*, 4 F.4th at 1352 (internal quotations and citations omitted); *see also Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (the complaint merely must "place the alleged infringer 'on notice of what activity . . . is being accused of infringement.'"); *United Servs. Automobile Ass'n. v. PNC Bank N.A.*, C.A. No. 2:21-cv-00246-JRG, D.I. 61 at 2 (E.D. Tex. Jan. 14, 2022).  According to the Federal Circuit, to the extent courts "have adopted a blanket element-by-element pleading standard for patent

infringement, that approach is unsupported and goes beyond the standard the Supreme Court articulated in *Iqbal* and *Twombly*." *Bot M8*, 4 F.4th at 1352.

Courts in this District, including in cases DraftKings cites in its motion, have consistently found that a complaint which provides "reasonable notice of the specific way" a defendant is allegedly infringing the asserted patents is sufficient to overcome a motion to dismiss. *See*, *e.g.*, *Nasdaq, Inc. v. IEX Grp., Inc.*, C.A. No. 18-3014-BRM-DEA, 2019 WL 102408, at *10 (D.N.J. Jan. 4, 2019) (denying motion to dismiss where the complaint was "sufficient to provide IEX with reasonable notice of the specific way it is allegedly infringing on this patent."); *Batinkoff v. Church & Dwight Co.*, C.A. No. 3:18-cv-16388-BRM-LHG, 2020 WL 1527957, at *16 (D.N.J. Mar. 31, 2020) ("denying motion to dismiss where the complaint "provides sufficient notice to [defendants] of the specific ways in which Plaintiffs allege infringement of the '494 patent.").

## IV.   ARGUMENT

### A.   WinView Adequately Pleads Direct Infringement Of The '730 And '543 Patents

The Complaint includes detailed factual allegations explaining DraftKings' infringement of independent claim 1 in each of the '730 and '543 patents. Although "a plaintiff need not prove its case at the pleading stage," *Bot M8*, 4 F.4th at 1352 (inner quotations omitted), DraftKings addresses the issue as if it does. It even emphasizes at the start of its direct infringement discussion what a plaintiff must show

"[t]o **prove** direct infringement."  Mot. at 4 (citing *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320 (Fed. Cir. 2019), a case discussing a motion for summary judgment).  As explained in more detail below, WinView has included factual allegations sufficient to render each of its claims plausible and provide reasonable to notice to DraftKings.

1.   WinView Properly Alleges Infringement Of The '730 Patent

DraftKings' challenges focus on two elements of claim 1 of the '730 patent, namely, the elements reciting a memory for storing an application configured for "communicating with a plurality of Internet-connected devices grouped into a cohort" and "sending a lockout signal at an appropriate time based on an amount of delay." Although WinView "is not required to plead infringement on an element-by-element basis," *Bot M8*, 4 F.4th at 1352, both elements are addressed in the Complaint.

(a)   The Complaint alleges facts from which it is plausible to conclude that DraftKings' servers store an application configured for communicating with a plurality of internet-connected devices grouped into a cohort.

WinView alleges facts plausibly supporting the conclusion that the "application configured for communicating" element is met.  For example, Paragraph 90 of the Complaint alleges that "DraftKings utilizes one or more servers, with their associated memory and processors, to store, host and run the games of skill or chance that comprise the DraftKings Sportsbook."  Paragraph 93 alleges that the "DraftKings Sportsbook game server is capable of providing different information to different groups of users at the same time," and, "[o]n information and belief, DraftKings

provides different and selective information to groups of users grouped into a cohort depending on the content the user device is accessing at a given time."

The Complaint alleges further, for example, that "[o]n information and belief, the Internet-connected devices accessing the same particular content (e.g., a particular sporting event) at a given time are grouped into a cohort to receive the same live content for the game being bet on (e.g., real-time game information, available bets and updates thereto, and applicable odds and updates thereto)." *Id*. For instance, according to the Complaint, "one group of users may view odds and betting propositions for a particular baseball game being played on a given day between the New York Yankees and the Boston Red Sox, whereas at the same time another group of users may view information about a match in a professional tennis tournament, or the various other content available on the Sportsbook." *Id*.

These allegations provide exemplary facts that at least "place [DraftKings] on notice of what activity . . . is being accused of infringement," *Bot M8*, 4 F.4th at 1352, and are sufficient. *See Nasdaq*, 2019 WL 102408 at *9 (denying motion to dismiss because allegations "sufficient to provide [defendant] with reasonable notice of the specific way it is allegedly infringing" the asserted patents).

DraftKings characterizes these allegations as pleading "that different users can access different information when they are on different parts of DraftKings' Sportsbook" and asserts that "this does not make it plausible that DraftKings arranges

users viewing particular information into a 'cohort.'"  Mot. at 6.  DraftKings never

articulates why.  Instead, it simply repeats the same bare conclusion in an "analogy"

involving the New York Times, arguing that "[t]here would be no reason to conclude

that the New York Times is 'grouping' [] individuals" reading different articles "into

separate 'cohorts' based on the fact that it is providing them with different information

because they are viewing different pages of the website."  *Id.*

DraftKings' argument should be rejected for multiple reasons.  First, claim 1 of

the '730 patent is an apparatus claim, not a method claim.  Accordingly, it does not

require DraftKings to "arrange[] users viewing particular information into a cohort;"

nor does it require DraftKings to take the step of "'grouping' these individuals into

separate cohorts."  Mot. at 6.

Second, and more basically, it absolutely is plausible that users who receive

like information from a source that distributes other information as well would be

grouped into a cohort because such a grouping can facilitate delivery of the same

information to such users.  This can be particularly useful when the information is

being updated dynamically (unlike DraftKings' New York Times analogy where users

receive static content), as is the case here, where DraftKings updates live scores and

betting odds for users following a certain sports event.

Third, and most fundamentally for purposes of addressing DraftKings' pleading

motion, to the extent DraftKings is challenging the pleading based on what is or is not

a "cohort" for purposes of the claim, DraftKings' position rests on an unarticulated and premature claim construction argument.  *See* Mot. at 6 (arguing that WinView has not offered facts to show "users are actually 'grouped' in some way into a 'cohort' based on the information they are accessing.").   Arguments relating to claim construction raise a "dispute not suitable for resolution on a motion to dismiss."  *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349 (Fed. Cir. 2018).

> (b)   <u>The Complaint alleges facts from which it is plausible to conclude that DraftKings' servers store an application configured for sending a lockout signal at an appropriate time based on an amount of delay.</u>

WinView alleges facts plausibly supporting the conclusion that the "application configured for sending a lockout signal" element is met.  For example, WinView explained in the Complaint that DraftKings, through its "servers [and] their associated memory," Complaint ¶ 90, "offers 'Live In-Game' propositions, also referred to as 'Live Props' and 'Flash Bets,'" and that "WinView is informed and believes, and on that basis alleges, that based on broadcast delay that users are experiencing in receipt of content from various sources, such as cable or satellite television, DraftKings sends a lockout signal at an appropriate time to prevent users from submitting a response to the live in-game betting proposition."  *Id.* ¶ 94.

WinView further explained that "[f]or other in-game propositions, such as for MLB 'pitch by pitch' or 'result of at bat,' as the sporting event progresses, the odds for a particular betting proposition will be grayed out, indicating that users are prevented

from submitting a response on that proposition," and that, "[o]n information and belief, this lockout signal is sent at a time based on, for example, an amount of broadcast delay, so as to permit users watching MLB games on television, online, or through other means with delays in the broadcast transmission path to enter bets corresponding to what they may be watching." *Id*. These allegations were followed by screenshots, which themselves provide further facts and provide notice to DraftKings of specific functionality that WinView alleges infringes. *Id*.

These allegations, which do not simply "parrot[] and paraphrase[] the claim language itself," Mot. at 7, provide exemplary facts that easily "place [DraftKings] on notice of what activity . . . is being accused of infringement." *Bot M8*, 4 F.4th at 1352.

DraftKings argues the allegations "just posit[] a potential ***purpose*** for sending a lockout signal based on an amount of delay, without providing ***any facts*** indicating that DraftKings actually does so." Mot. at 8. But as can be seen from the allegations themselves, they posit far more than ***just*** a purpose for sending a lockout signal based on an amount of delay. They posit that such a lockout signal actually is sent, as observed, for example, in the "graying out" of betting odds on the DraftKings website and in the DraftKings app during a live event. *See, e.g*, Complaint ¶ 94. In any event, the allegation of a purpose for the same plausibly supports the conclusion that the "application configured for sending a lockout signal" element is satisfied.

DraftKings' suggestion that WinView should have included even more details in the Complaint lacks merit, given the pleading standard.  It also is impractical, given that DraftKings has not yet produced its source code and internal documents—documents and materials under its control.  *See Nasdaq*, 2019 WL 102408, at *12 ("To the extent IEX argues the Complaint does not specify the precise methods IEX use in its infringing device, at this stage of the litigation, all Nasdaq has access to is [] public statements, which it used to fashion the Complaint.  The specifics of how IEX's purportedly infringing device works is something to be establish through discovery.").

DraftKings argues WinView "could have conducted a test" to generate facts for further allegations.  *See* Mot. at 8 n.4.  But there is no legal requirement to conduct—let alone plead the results of—any such testing, and pleading additional facts is unnecessary when, as here, the facts already pleaded plausibly support infringement.  Requiring testing would be akin to demanding an expert report at the outset of a case—before discovery or any other proceedings—and that the plaintiff include the content of such a report in an initial pleading.

DraftKings cites *Artrip v. Ball Corp.*, 735 F. App'x 708 (Fed. Cir. 2018), but that case in no way imposes any testing requirement.  There, the plaintiff failed to identify particular products that allegedly infringed its patents, despite having access to the defendants' products.  *Id.* at 714–15.  This has no bearing here, and *Artrip* in no way stands for the proposition that a plaintiff must—or even should—run tests

proving its infringement case at the pleading stage.  Quite the opposite, *Artrip* recognizes that a complaint is sufficient so long as it "put[s] a defendant 'on notice as to what he must defend.'"  *Id.* at 715.

DraftKings' "testing" argument also should be rejected because it is premised on a disputed claim construction position—namely, DraftKings' position that sending a lockout signal based on an amount of delay requires tailoring each lockout signal to the delay experienced by each recipient of the lockout.  The Federal Circuit has explained that claim construction arguments are improper in a motion to dismiss, noting that the "purpose of a motion to dismiss is to ***test the sufficiency of the complaint, not to decide the merits***":

> Defendants' objections . . . read like classic *Markman* arguments.
> Defendants first take issue with Nalco's allegation that "coal combustion
> flue gas" is "the gas that is created during the combustion of coal." *Id.* at
> 15.  But Defendants' arguments boil down to objections to Nalco's
> proposed claim construction for "flue gas," a dispute not suitable for
> resolution on a motion to dismiss.

*Nalco*, 883 F.3d at 1349–50 (emphasis added); *see also*, *e.g.*, *All Weather Armour, LLC v. Art of Gutter, Inc.*, C.A. No. 19-17150, 2020 WL 9720067, at *3 (D.N.J. June 23, 2020) ("Resolving this dispute involves patent claim construction . . . which is an analysis 'not suitable for resolution on a motion to dismiss.'").  The question at this stage is not, as between WinView's position and DraftKings' position, which position is ***more*** plausible; the inquiry is simply whether WinView has alleged enough facts to plausibly suggest infringement.

(c)  DraftKings relies upon inapposite cases.

This is not a case involving a bare-bones complaint or allegations that merely recite the claim language.  As such, it is not comparable to the cases DraftKings cites. In *DIFF Scale Operation Rsch., LLC v. MaxLinear, Inc.*, there were no factual allegations, and the ***entirety*** of the allegations in question were "[o]n information and belief, the [accused products] comprise [claim limitation]," as reflected in a table in the opinion.  C.A. No. 19-2109-LPS-CJB, 2020 WL 2220031, *2 (D. Del. May 7, 2020), *report & recommendation adopted*, 2020 WL 6867103 (D. Del. Nov. 23, 2020).  Similarly, in *North Star Innovations, Inc. v. Micron Tech., Inc.*, the allegations in question were nothing more than "[t]he [accused product] includes [claim limitation]."  C.A. No. 17-506-LPS-CJB, 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017), *report & recommendation adopted*, 2018 WL 11182741 (D. Del. Jan. 3, 2018). And in *NovaPlast Corp. v. Inplant, LLC*, the complaint in question contained only a few lines and did not include ***any*** factual allegations related to the limitations of the claims.  C.A. No. 20-7396 (KM) (JBC), 2021 WL 389386 (D.N.J. Feb. 3, 2021).

Likewise in *Uniloc 2017 LLC v. Zenpayroll, Inc.*, 2021 WL 271800 (D. Del. Jan. 27, 2021), the complaint in question did not include ***any*** factual allegations relating to certain claim elements, but instead simply asserted that the elements were met without explaining how or why.  The court observed that "the SAC alleges that '[t]he Gusto web applications are distributed to Gusto end users/customers through

content delivery networks ('CDNs') that include a [CMS] and a [TODS],'" but emphasized that "this allegation is conclusory and lacks any plausible facts supporting such a conclusion." *Id*. at *3. Here, WinView gives concrete examples for each claim element including facts that render the allegations plausible.

In *Blue Spike LLC v. Comcast Cable Commc'ns, LLC*, the Plaintiff **failed to include any factual allegations, as opposed to bare conclusions,** relating to certain claim elements and failed to identify where in the complaint they may have appeared when challenged. C.A. No. 19-159-LPS-CJB, 2019 WL 4242930, at *4 (D. Del. Sept. 6, 2019) (agreeing with defendant that "the Complaint 'nowhere even identifies anything as the supposed "different LCS domain" or the supposed "first LCS domain" in the accused system'"), *report & recommendation adopted*, 2019 WL 11027620 (D. Del. Nov. 5, 2019). *Blue Spike* is inapposite, as DraftKings does not (and could not) argue that WinView failed to allege certain claim elements are met.

Similarly, in *Drone Labs, LLC v. Dedrone Holdings, Inc.*, the plaintiff did not include allegations for a "transponder" limitation. C.A. No. 19-cv-01281-EMC, 2019 WL 4345955 (N.D. Cal. Sept. 12, 2019). The court noted the plaintiff's opposition "cited to paragraphs 42–44 in the SAC; however, nowhere in these paragraphs is there a reference to the accused products receiving anything from a transponder signal from the drone." *Id*. at *4. With respect to other limitations, the court in *Drone Labs*

actually recognized that the defendant was improperly demanding infringement-contention-like specificity, much as DraftKings does here.  *Id.*

Finally, in *Bot M8*, which DraftKings repeatedly cites, the Federal Circuit ***upheld*** allegations similar to WinView's.  The Federal Circuit observed "the [district] court sua sponte directed Bot M8 to file an amended complaint specifying 'every element of every claim that you say is infringed and/or explain why it can't be done.'" *Bot M8*, 4 F.4th at 1348.  Reversing dismissal of infringement claims involving two patents, the Federal Circuit stated: "We disagree with the district court's approach and reiterate that a plaintiff 'need not "prove its case at the pleading stage."'"  *Id.* at 1352.  Although the Federal Circuit affirmed dismissal of other claims, those are easily distinguishable from the infringement claims here.  For some of the claims, the plaintiff in *Bot M8* pleaded "too much rather than too little" and actually alleged facts that ***disproved*** infringement.  *Id.* at 1354.  As for the other claims, the court dismissed the allegations because plaintiff "never sa[id] which [components] satisfy [a particular] limitation."  *Id.* at 1355.  Neither of these holdings is applicable here.

2.  <u>WinView Properly Alleged Infringement Of The '543 Patent</u>

For claim 1 of the '543 patent, DraftKings challenges limitations reciting "downloading a set of service-specific information" and "executing an application related to the selected option."  The Complaint specifically addresses both elements, alleging facts plausibly supporting the conclusion that both are satisfied.

(a)    The Complaint alleges facts from which it is plausible to conclude the "downloading" limitation is met.

The Complaint alleges "the DraftKings Sportsbook and [] Daily Fantasy offerings include selecting an option from [an] activity client from a list of available options."  Complaint ¶ 115.  The Complaint alleges that "when an option is selected, such as which contest is to be entered in DraftKings Daily Fantasy, a set of service-specific information is downloaded to the mobile web-connected computing device such as the lineup options for that contest." *Id.* ¶ 116.  The Complaint goes on to allege "[a]s a further example, when an option is selected, such as which sporting event the user wishes to view the available bets for in the DraftKings Sportsbook, a set of service-specific information is downloaded to the mobile web-connected computing device such as the available bets and betting odds for that sporting event." *Id.*  The Complaint also includes screenshots providing further factual allegations. *Id.*

DraftKings expressly acknowledges that "[a]ccording to WinView, when a Daily Fantasy use[r] selects a contest, 'the lineup options for that contest' are downloaded; when a Sportsbook user selects a sporting event, 'the available bets and betting odds for that sporting event' are downloaded."  Mot. at 11.  DraftKings argues that these specific allegations of downloading particularly-identified sets of service-specific information are insufficient, however, because "the unelaborated assertion that this is the case does not make it so." *Id.*  In other words, DraftKings' criticism is that WinView has not ***proven*** that what it alleges is actually so.  This argument falls

flat in a 12(b)(6) motion given that "a plaintiff need not prove its case at the pleading stage," as noted above. *Bot M8*, 4 F.4th at 1352. Contrary to DraftKings' suggestion, WinView did not need to include in the Complaint a screenshot saying "PLEASE WAIT…DOWNLOADING," Mot. at 11, as WinView sufficiently alleged that the downloading limitation is satisfied. Complaint ¶ 116.

The Complaint pleads facts demonstrating that particular sets of service-specific related information are downloaded, not merely facts that are *consistent with* downloading such information, as DraftKings contends while citing *People.ai, Inc. v. SetSail Techs., Inc.*, C.A. No. C 20-09148 WHA, 2021 WL 2333880 (N.D. Cal. June 8, 2021). In *People.ai*, the District Judge required the plaintiff to "explain how or why an accused product infringes every element of every asserted claim or explain why that cannot be shown at this stage." *Id.* at *3. But in the *Bot M8* case decided shortly thereafter, the Federal Circuit reversed the same District Court because it was improper to require the plaintiff to "explain in [the] complaint every element of every claim that you say is infringed and/or explain why it can't be done." 4 F.4th at 1352.

DraftKings also cites *Panduit Corp. v. Corning Inc.*, C.A. No. 5:18-CV-229-FL, 2019 WL 189817 (E.D.N.C. Jan. 14, 2019) but that case does not favor DraftKings either. In *Panduit*, the plaintiff failed to allege any activity infringed certain elements. The court found "plaintiff has not identified the specific product, service, or activity that has allegedly performed the claimed method, only the product

on which the claimed method has allegedly been performed, has not explained how defendant has used plaintiff's method, nor offered exhibits or any other sufficient factual matter in support of plaintiff's claims." *Id*. at *5. WinView has done significantly more than the plaintiff in *Panduit* by plausibly alleging in the Complaint that each claim element is infringed.

WinView's Complaint directs DraftKings to infringing functionality and provides reasonable notice of WinView's allegations. That is sufficient. *See*, *e.g.*, *Nasdaq*, 2019 WL 102408, at *10 (denying motion to dismiss where the complaint was "sufficient to provide IEX with reasonable notice of the specific way it is allegedly infringing on this patent.").

(b)   The Complaint alleges facts from which it is plausible to conclude that DraftKings practices the "executing" step.

In admitting that "WinView has identified the circumstances in which it alleges that DraftKings Daily Fantasy Sports practices 'executing an application within the activity client'" (e.g., the application DraftKings executes to "accept a wager placed by the user," or "accept a buy-in and lineup by the user," of the DraftKings website or mobile app), Mot. at 12, DraftKings expressly demands that WinView explain "why or how [the identified] DraftKings activity constitutes 'executing an application within the activity client.'" *Id.* No such explanation is required in a complaint.

DraftKings cannot demand the equivalent of expert reports at the pleading stage. And to the extent DraftKings is taking the position that the software it executes

to accept wagers, buy-ins, and lineups could not be an "application," or that its website and mobile app cannot comprise an "activity client," DraftKings is again prematurely seeking to address claim construction in a motion to dismiss.  The allegations relating to the "executing" step undoubtedly "place[s] [DraftKings] on notice of what activity . . . is being accused of infringement." *Bot M8*, 4 F.4th at 1352.

DraftKings again incorrectly argues that "WinView is merely parroting the language of the claims," relying on *DIFF Scale*, *North Star*, *Drone Labs*, and *Blue Spike*.  But the allegations in the Complaint belie that assertion.  *See* Complaint ¶ 117.  Accordingly, such cases are inapposite here for the same reasons discussed above.

\*   \*   \*

DraftKings' opinion as to how the '730 and '543 Patent claims allegedly "address an outdated technical problem" or other issues of claim construction are unrelated to the sufficiency of WinView's pleading.  The relevant analysis for this motion is not whether infringement is or is not ***more*** plausible; the relevant analysis is whether WinView has alleged enough facts to suggest infringement is plausible, providing DraftKings reasonable notice.  *Nasdaq*, 2019 WL 102408 at \*10.  It has.

## B.   WinView Adequately Pleads Willful Infringement

Courts in this District have explained that to sustain an allegation of willful infringement a plaintiff need only "allege facts plausibly showing that as of the time of the claim's filing, the accused infringer: (1) knew of the [asserted patent]; (2) after

acquiring that knowledge, [] infringed the [asserted patent]; and (3) in doing so, []

knew, or should have known, that its conduct amounted to infringement of the

[asserted patent]." *NovaPlast Corp. v. Inplant, LLC*, C.A. No. 20-7396 (KM) (JBC),

2021 WL 5770264, at *9 (D.N.J. Dec. 6, 2021) (denying defendant's motion to

dismiss willfulness allegations and stating "NovaPlast only needs to allege that

Defendants were on notice of potential infringement of the '213 Patent and continued

to infringe the patent.").

In other words, "where a complaint permits an inference that the defendant was

on notice of the potential infringement and still continued its infringement, the

plaintiff has pled a plausible claim of willful infringement." *Kyowa Hakka Bio, Co.

v. Ajinomoto Co.*, 2018 WL 834583, at *13 (D. Del. Feb. 12, 2018) (denying motion

to dismiss willfulness allegations and noting that "broader allegations of willfulness

without a specific showing of egregiousness are sufficient to withstand a motion to

dismiss"); *DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 473 (D. Del. 2016)

("Under the less rigid standard announced in *Halo* . . . general allegations of willful

infringement [are sufficient] to withstand the motion to dismiss.").

WinView's Complaint does not merely contain conclusory references to willful

infringement. Rather, the Complaint contains multiple paragraphs setting out factual

allegations permitting an inference that DraftKings was on notice of the alleged

infringement and continued infringing. For example, the Complaint explains how

WinView is no stranger to DraftKings, and alleges DraftKings had several business discussions with WinView about its intellectual property, including with DraftKings' CEO and co-founder Jason Robins, in January 2018, early 2019, and late 2020. Complaint ¶¶ 63–66.  During these conversations, the parties discussed WinView's "foundational intellectual property," which covers the "synchronization of the second-screen with TV broadcasts and commercials and the optimum methods of monetizing sports-based games of skill, among other types of programming content."  *Id.*

As "DraftKings investigated WinView and its business as part of these discussions. . . . DraftKings specifically requested information regarding WinView's patents."  *Id.*  "In response to DraftKings' request, WinView provided DraftKings with materials identifying the '243 and '730 patents," as well as applications that later issued as the '543 and '988 patents.  *Id.*   After WinView provided DraftKings with the materials regarding WinView's patents in late 2020, and after the '543 and '988 Patents issued, "WinView again pursued discussions with DraftKings regarding its intellectual property and a relationship between the companies."  *Id.* ¶¶ 66, 122, 141. Further details regarding DraftKings' knowledge—matters within DraftKings' possession—will be developed during the case.

1.   WinView Adequately Pleads Pre-Suit Knowledge of the Asserted Patents and Infringement

DraftKings admits that the Complaint alleges pre-suit knowledge of the '243 and '730 Patents as of no later than January 2019, as well as knowledge of the

applications that led to the '543 and '988 Patents, and the patents themselves as of their issuance.  *See* Mot. at 16–17.

WinView also plausibly alleges DraftKings' pre-suit knowledge of infringement.  Complaint ¶¶ 63–66, 81, 98, 122, 141.  For example, WinView's allegations that DraftKings investigated WinView and its intellectual property—and that DraftKings specifically requested information regarding WinView's patents—"are more than the formulaic recitation found to be insufficient under *Twombly* and *Iqbal* and sufficiently permit a plausible inference of subjective willfulness." *Kyowa Hakka Bio, Co.*, 2018 WL 834583, at *13.  This is especially true where direct evidence of such knowledge is uniquely within DraftKings' control.  *IOENGINE, LLC v. PayPal Holdings, Inc.*, C.A. No. 18-452-WCB, 2019 WL 330515, at *8 (D. Del. Jan. 25, 2019) ("The facts bearing on willfulness are likely to be, in large measure, in the possession of the defendant and available to the plaintiff only through discovery.").

DraftKings incorrectly argues that knowledge of at least the applications leading to the '543 and '988 patents is insufficient.  In making this argument, DraftKings ignores that courts in the Third Circuit have denied motions to dismiss where knowledge of patents was based in part on knowledge of the applications from which they issued.  *See Univ. of Mass. Med. Sch. v. L'Oreal S.A.*, 2018 WL 5919745, at *8–9 (D. Del. Nov. 13, 2018) (finding that plaintiff had sufficiently pleaded willful infringement where it alleged that the defendant knew of the patent application and

had engaged in business discussions regarding the plaintiff's intellectual property),
*report and recommendation adopted*, 2019 WL 2151701 (D. Del. May 17, 2019).

Moreover, DraftKings' cases regarding knowledge of patent applications are
distinguishable.  In *Intellectual Pixels Ltd. v. Sony Interactive Entertainment LLC*, the
court found that the plaintiff's allegations regarding ***monitoring*** were insufficient.
C.A. No. SACV 20-1422 JVS (KESx), 2020 WL 7872961, at *3 (C.D. Cal. Nov. 20,
2020).  Here, WinView alleges that DraftKings specifically requested WinView's
patents, that WinView provided materials identifying the asserted patents and their
applications to DraftKings, and that WinView again pursued discussions regarding its
intellectual property with DraftKings after the patents issued.  Complaint ¶¶ 65–66.

DraftKings cites *Adidas America, Inc. v. Skechers USA, Inc.* and *Nonend
Inventions, N.V. v. Apple Inc.*, but in those cases, the plaintiffs did "not actually allege
that Defendant acquired knowledge of the issuance of the patents-in-suit."  2017 WL
2543811, at *4 (D. Ore. June 12, 2017); 2016 WL 1253740, at *1 (E.D. Tex. Mar. 11,
2016).  Unlike those cases, WinView specifically alleged knowledge of the '543 and
'988 Patents as of their issuance, Complaint ¶¶ 122, 141, and pleaded additional facts
about DraftKings' specific requests for patent information and business discussions
regarding WinView's intellectual property.  *Id.* ¶¶ 65–66.

DraftKings also relies on other cases that are inapplicable.  In *Batinkoff v.
Church & Dwight Co.*, C.A. No. 3:18-cv-16388-BRM-LHG, 2020 WL 1527957

(D.N.J. Mar. 31, 2020), the plaintiffs sued a company as well as an individual for patent infringement.  The individual, Mr. Kress, moved to dismiss the claim of willful infringement (and the company did not).  The plaintiff argued that conversations with executives at one of the companies was sufficient to allege Mr. Kress's knowledge of infringement.  *Id.*  Though the court found that the plaintiffs' complaint "provides sufficient notice to [the two companies] of the specific ways in which Plaintiffs allege infringement of the [asserted] patent," *id.* at 16, the court later found that "[t]here is not, however, in the pleadings or in Plaintiffs' exhibits any evidence Plaintiffs provided notice to Kress[.]"  *Id.* at *19.[1]

*Malvern Panalytical Ltd. v. TA Instruments-Waters LLC*, C.A. No. 19-cv-2157-RGA, 2021 WL 3856145 (D. Del. Aug. 27, 2021) involved allegations of general competitive monitoring, which were held insufficient to allege pre-suit knowledge of infringement.  *Id.* at *3.  Here, the case involves direct interactions regarding the asserted patents and their applications, not general monitoring.  And in *Bench Walk*

---

[1] The court in *Batinkoff* also appears to have applied a heightened standard of knowledge for willful infringement.  In denying Mr. Kress's motion to dismiss claims for ***indirect infringement***, the court found that "Plaintiffs have alleged circumstantial evidence to support a determination Kress 'knew or should have known' sales of the [accused product] would infringe the [asserted patent]."  *Id.* at *18.  However, addressing ***willfulness***, the court stated that the plaintiffs "have not sufficiently plead facts to support a determination Kress knew or should have known *how* it is that products . . . infringed[.]"  *Id.* at 19 (emphasis original).  DraftKings identified no Federal Circuit case endorsing an elevated "how it infringes" standard.

*Lighting LLC v. LG Innotek Co.*, 530 F. Supp. 3d 468 (D. Del. 2021), the plaintiff failed to plead pre-suit knowledge because "Defendants raised the issue of insufficiency of the Notice Letter's contents to provide pre-suit knowledge in their motion and Plaintiff did not respond, [and] it is considered to have conceded the issue." *Id.* at 478.

DraftKings also cites cases that applied an incorrect "egregiousness" standard.[2] *Eko Brands, LLC v. Adrian Rivera Maynex Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020) ("Under *Halo*, the concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement."); *see also SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1329–30 (Fed. Cir. 2021) ("To eliminate the confusion created by our reference to the language "wanton, malicious, and bad-faith" in *Halo,* we clarify that it was not our intent to create a heightened requirement for willful infringement."). As the District Court recently explained in *NovaPlast*, "courts in this District have

---

**[2]** *See* Mot. at 16–18 (relying upon *Finjan, Inc. v. Cisco Sys. Inc.*, C.A. No. 17-cv-00072-BLF, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017) (dismissal is "warranted because the FAC does not contain sufficient factual allegations to make it plausible that [the defendant] engaged in "egregious" conduct"); *Michigan Motor Techs. LLC v. Volkswagen Aktiengesellschaft*, 472 F. Supp. 3d 377, 384–85 (E.D. Mich. 2020) ("The plaintiff never alleged facts that could support a conclusion that the defendants' conduct rose to the level of egregiousness"); *CG Tech. Dev., LLC v. Big Fish Games, Inc.*, C.A. No. 2:16–cv–00857–RCJ–VCF, 2016 WL 4521682, at *14 (D. Nev. Aug. 29, 2016) ("Plaintiffs fail to state a claim for willful infringement because they fail to allege any facts suggesting that Defendant's conduct is 'egregious'")).

held that a showing of 'egregiousness,' as such, is not necessary at the pleading stage."
*NovaPlast*, 2021 WL 5770264, at *10.

DraftKings seeks to close the book on the willfulness record as of the
Complaint and require that WinView prove its willfulness case based solely on
allegations in the Complaint before any discovery has occurred.  But many of "[t]he
facts bearing on willfulness are likely to be, in large measure, in the possession of the
defendant and available to the plaintiff only through discovery."  *IOENGINE, LLC*,
2019 WL 330515, at *8 (denying motion to dismiss willfulness allegations).
Nevertheless, the Complaint alleges facts supporting a plausible inference of willful
infringement based on pre-suit dealings between the parties.

    2.    <u>Willfulness Also Is Properly Based On DraftKings' Post-Suit
    Knowledge of the Asserted Patents and Infringement</u>

DraftKings' knowledge of the patents and its infringement from the complaints
filed in the case provide an independent ground to deny DraftKings' motion.

On July 7, 2021, WinView filed its original complaint against DraftKings NV
asserting infringement of the '243 and '730 Patents.  D.I. 1.  On July 28, 2021,
WinView filed the FAC adding infringement allegations of the '543 and '988 Patents.
D.I. 7.  WinView filed its current Complaint against DraftKings NV, DraftKings DE,
and Crown Gaming on November 15, 2021.  As stated in the current Complaint, on
"August 8, 2021, [] DraftKings made public SEC filings describing this litigation and
the patents asserted," confirming that DraftKings and its subsidiaries, including

DraftKings DE and Crown Gaming, knew of the Asserted Patents and their infringement at least as of that time.  Complaint ¶¶ 122, 141.

The majority rule in the Third Circuit is that knowledge based on the filing of a complaint is enough to sustain allegations of willfulness.  *See, e.g.*, *Telebrands Corp. & Prometheus Brands, LLC v. Everstar Merch. Co., Ltd.*, C.A. No. 17–2878 (JLL) (JAD), 2018 WL 585765, at *8 (D.N.J. Jan. 29, 2018) (observing that "Plaintiffs allege that Defendants have had notice of the [asserted] Patent since their receipt of the Complaint in this matter, and yet still created and sold the allegedly infringing 2017 Products," and finding that "these allegations, taken as true, are sufficient to establish a plausible entitlement to enhanced damages under the standards that the Supreme Court discussed in *Halo Elecs., Inc.*" (citations omitted)); *Celanese Int'l v. Ahui Jinhe Indus. Co., Ltd.*, C.A. No. 20-cv-01775, D.I. 81 at 13–14 (D. Del. Dec. 10, 2021) ("The majority of decisions in this district have held that knowledge obtained from the filing of the complaint is sufficient to state a claim for inducement that is limited to post-filing conduct.").  DraftKings cites no cases from the Third Circuit requiring that willfulness be based only on pre-filing knowledge.

DraftKings states that "allowing the filing of an earlier complaint to provide a basis for alleging willfulness 'would force defendants that subjectively believe they are not infringing to choose between halting normal business operations as a cautionary measure or face the possibility of a tripled damages award if found guilty

11056040

of infringement.'"  Mot. at 20 (quoting *Arbmetrics, LLC v. Dexcom Inc.*, C.A. No. 18-cv-00134-JLS-KSC, 2019 WL 12473781, at *4 (S.D. Cal. Feb. 19, 2019)).  However, DraftKings makes no attempt to distinguish how receipt of a complaint is any different in this regard from receipt of a pre-suit notice letter, which requires potential defendants to make precisely the same choice: continue business as usual or stop allegedly infringing behavior.  Surely DraftKings does not for that reason contend that sending a pre-suit notice letter cannot establish grounds for pleading willful infringement either.

WinView alleges that DraftKings was on notice of the potential infringement of the patents-in-suit and continued to infringe.  Because that is all that is required at this stage, DraftKings' motion should be denied.

### C.    WinView Adequately Pleads Induced Infringement

Induced infringement requires direct infringement, knowledge of the patent and the infringement, and specific intent.  *WAG Acquisition, LLC v. Multi-Media, LLC*, C.A. No. 14–2340 (ES)(JAD), 2015 WL 5310203, at *8 (D.N.J. Sept. 10, 2015) (denying motion to dismiss induced infringement claims).  With respect to knowledge of the patents and the infringement, DraftKings relies on the same arguments that it relies on for willfulness.  Mot. at 22.  For the reasons stated in Section IV.B, WinView has sufficiently pleaded pre-suit knowledge of the patents and infringement.

Specific intent may be alleged by showing "'active steps . . . taken to encourage direct infringement,' such as advertising an infringing use or instructing how to engage in an infringing use, shows an affirmative intent that the product be used to infringe.'" *Sabinsa Corp. v. Olive Lifesciences Pvt. Ltd.*, C.A. No. 14-4739 (JBS/KMW), 2018 WL 11355086, at *3 (D.N.J. May 30, 2018) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005)) (denying motion to dismiss induced infringement claims).

"This does not mean, however, that [the plaintiff] must prove its case at the pleading stage." *WAG Acquisition*, 2015 WL 5310203, at *8 (quoting *In re Bill of Lading*, 681 F.3d at 1339. "For induced infringement claims, 'specific intent may be inferred based on surrounding circumstances, "taken collectively and in context," even where alternative inferences could be drawn.'" *Celanese Int'l*, C.A. No. 20-cv-01775, D.I. 81 at 16 (quoting *3Shape A/S v. Align Tech., Inc.*, C.A. No. 18-886-LPS-CJB, 2019 WL 1416466, at *2 (D. Del. Mar. 29, 2019) (quoting *In re Bill of Lading*, 681 F.3d at 1340)).

WinView alleges that DraftKings takes active steps to encourage direct infringement, including by only allowing users to use the infringing products (DraftKings Sportsbook and Daily Fantasy) in an infringing manner. To participate in DraftKings' offerings, users must use the accused DraftKings products. Complaint

¶¶ 49, 58.  This includes requiring users to perform certain steps and to agree to terms of use in accordance with the infringing methods.  *Id.* ¶¶ 72, 79, 91, 96, 111, 120, 139.

WinView further alleges that "DraftKings also induces acts of infringement through its advertising and promotion of the infringing functionality," including links to a DraftKings press release advertising its "Flash Bets" infringing feature.  *Id.* ¶¶ 79, 96.  The Complaint includes numerous screenshots showing that users may only use the accused features in an infringing manner.  *Id.* ¶¶ 73, 74, 94, 109, 110, 113, 116, 117, 132, 135, 137.  Examples of other supporting allegations include:

- For the '243 Patent, the Complaint alleges that when the user uses the DraftKings Sportsbook, the betting and online broadcast of content are synchronized.  *Id.* ¶ 77.

- For the '730 Patent, "[t]he DraftKings Sportsbook also prevents betting propositions when the user is no longer permitted to make a selection on a particular wager," including by greying out or removing choices from the user interface "to level the playing field, increase user engagement, and prevent participants from obtaining information that could give them a material advantage in their betting on the proposition, including for example locking out bets at an appropriate time based on an amount of delay that users may experience depending on the manner in which they receive broadcast content over various transmission methods."  *Id.* ¶¶ 57, 94.

- For the '543 Patent, "[i]n order to ensure compliance with different state laws and provide users with correct permission information, the DraftKings Sportsbook and Daily Fantasy Sports applications and website are configured to monitor the location of the device being used.  If the device is not in a permitted jurisdiction, DraftKings prevents the user from placing bets on the DraftKings app or website and the user is informed that it appears the user is located in a state that betting on DraftKings is not available." *Id.* ¶¶ 62, 110–115.  "If users do not follow these precise actions" the DraftKings' "services are not available." *Id.* ¶ 115.

- For the '988 Patent, "DraftKings recommends contests for users to join and provides functionality for users to enter their lineups quickly in multiple contests" and "provides a 'Bulk Enter' feature that allows for the entry of the selected lineup in multiple, simultaneous contests." *Id.* ¶ 60.

Not only has DraftKings taken active steps to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, WinView alleges that DraftKings provides terms of service, instructions, and an online environment for the Sportsbook and Daily Fantasy products that demands users use the products only in an infringing manner.  These steps do not just describe an allegedly "infringing mode," as DraftKings suggests. *See* Mot. at 22–23.

The cases DraftKings cites are unavailing.  Like the user guides and instruction manuals in *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 905 (Fed. Cir. 2014), DraftKings' terms of service and in-app and in-site instructions "provide[] its customers with the necessary components to infringe the [asserted patents.]"  *Id.* at 905, 904 (requiring an "affirmative ***act***," not affirmative ***intent***, as DraftKings claims, Mot. at 21).  In other cases DraftKings cites, the complaints contained only conclusory statements of specific intent, unlike WinView's paragraphs describing advertising, terms of services, and website functionality directing users in an infringing manner. *See Otsuka Pharm. Co. v. Zydus Pharms. USA*, 151 F. Supp. 3d 515, 520–21 (D.N.J. 2015), *aff'd*, 694 F. App'x 808 (Fed. Cir. 2017); *Zoetis LLC v. Roadrunning Pharm., Inc.*, C.A. No. 15-3193, 2016 WL 755622, at *4–5 (D.N.J. Feb. 25, 2016) (where plaintiff fails to distinguish between induced and contributory infringement in complaint, merely alleging that the defendant sold products is not enough to plead induced infringement); *Richmond v. Lumisol Elec. Ltd.*, C.A. No. 13–1944 (MLC), 2014 WL 1405159, at *3 (D.N.J. Apr. 10, 2014) (inducement allegations merely "lumped in with his direct infringement allegations stating that Defendants 'and/or have induced' and 'and/or knowingly induce'").

Finally, unlike in *Straight Path IP Grp., Inc. v. Vonage Holdings Corp.*, C.A. No. 14–502 (JLL)(JAD), 2014 WL 3345618 (D.N.J. July 7, 2014), where the plaintiff included generalized, contradictory statements about induced infringement and

knowledge, *id.* at *2–3, WinView alleges that the terms of use, design of the products, and specific advertisements, not only instruct users how to infringe, but that they direct usage of the DraftKings products only in a way that infringes. *See Sabinsa Corp.*, 2018 WL 11355086, at *3 ("supply[ing] customers with infringing products with the knowledge that its customers' actions constitute direct infringement . . . . supports an inference . . . [of] specific intent"); *WAG Acquisition, LLC*, 2015 WL 5310203, at *9 (allegations that defendants know and intend users use infringing products "plausibly gives rise to the conclusion that Defendants induced infringement of [the] patents").

Additionally, "[p]re-suit knowledge is not required to plead induced infringement," and a plaintiff like WinView "sufficiently alleges [defendants'] knowledge via service of the [complaint]." *KOM Software Inc. v. NetApp, Inc.*, C.A. No. 1:18-cv-00160-RGA, 2018 WL 6167978, at *2 (D. Del. Nov. 26, 2018) (quoting *Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 565 (D. Del. 2012)); *Celanese Int'l*, C.A. No. 20-cv-01775, D.I. 81 at 13–14 ("The majority of decisions in this district have held that knowledge obtained from the filing of the complaint is sufficient to state a claim for inducement that is limited to post-filing conduct."); *Bench Walk Lighting LLC v. LG Innotek Co.*, C.A. No. 20-51-RGA, D.I. 54 at 6 (D. Del. Jan. 4, 2021) ("As for induced infringement, the service of Bench Walk's original complaint can serve as notice. . . ." and where an additional defendant was added, "notice to one entity can be imputed to the other defendants").

Indeed, allegations of post-suit induced infringement "are sufficient to satisfy the knowledge requirement for contributory infringement, as well as the specific intent requirement for induced infringement." *IOENGINE, LLC*, 2019 WL 330515, at *4 (denying motion to dismiss induced and willful infringement). By virtue of filing its FAC, WinView sufficiently pleads post-suit induced infringement.

### D.   WinView Adequately Pleads Contributory Infringement

"To establish contributory infringement, the patent owner must show . . . 1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010). "[C]ontributory infringement requires 'only proof of a defendant's *knowledge*, not *intent*, that his activity cause infringement.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1381 (Fed. Cir. 2017) (quoting *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990)).

With respect to the requisite knowledge, DraftKings relies on the same arguments that it relies on for willfulness. Mot. at 22. For the reasons stated in Section IV.B, WinView has sufficiently pleaded pre-suit knowledge.

"A simple allegation that the product at issue is not suitable for substantial non-infringing use is generally sufficient to satisfy the pleading requirements of *Twombly* and *Iqbal*." *Moskowitz Family LLC v. Globus Med., Inc.*, C.A. No. 20-3271, D.I. 102

- 36 -

at 7–8 (E.D. Pa. Mar. 10, 2021) (denying motion to dismiss contributory infringement claim).  With respect to pleading no substantial noninfringing uses, "the Complaint does not need to "plead with specificity something that does not exist" in order to state a claim for contributory infringement." *EyesMatch Ltd. v. Facebook, Inc.*, C.A. No. 21-111-RGA-JLH, D.I. 48 at 8 (D. Del. Oct. 1, 2021), *report & recommendation adopted*, D.I. 50 (denying motion to dismiss post-suit contributory infringement claims); *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1338 (Fed. Cir. 2008) ("When a manufacturer includes in its product a component that can *only* infringe, the inference that infringement is intended is unavoidable.").  Accordingly, DraftKings' complaint that WinView offers only "unadorned say-so" to plead contributory infringement, Mot. at 23, even if true, would be unavailing.

WinView alleges, on a patent-by-patent basis, that the accused products constitute material parts of the inventions and that there are no substantial noninfringing uses.  Complaint ¶¶ 57, 60, 77–78, 80, 94, 97, 112, 121, 140.  Regarding the '243 Patent, WinView describes how, within the DraftKings Sportsbook, the application synchronizes bets with an online broadcast of content, enabling "Live In-Game betting propositions"; how the Sportsbook presents synchronized online broadcasts of content and game data; that there are no substantial noninfringing features; and that the components of the product are material parts of the invention. *Id.* ¶¶ 77–80.

As for the '730 patent, the Complaint alleges that lockouts are central to the inventions, that the lockout signals enable Live In-Game betting propositions, that there are no substantial noninfringing features, and that the components of the product are material parts of the invention. *Id.* ¶¶ 57, 94 (lockouts "level the playing field, increase user engagement, and prevent participants from obtaining information that could give them a material advantage").

Regarding the '543 Patent, the Complaint alleges why the geolocation features must be implemented in the Sportsbook and Daily Fantasy products, that there are no substantial noninfringing features, and that the components of the product are material parts of the invention. *Id.* ¶¶ 112, 121 ("Due to state law, DraftKings must ensure that a user is physically located where online sports betting or Daily Fantasy is legal.").

And for the '988 Patent, the Complaint describes how a Daily Fantasy feature allows users to enter lineups in multiple contents, that there are no substantial noninfringing features, and that the components of the product are material parts of the invention. *Id.* ¶¶ 60, 140 ("To increase user participation, and corresponding Daily Fantasy Sports revenue, DraftKings recommends contests for users to join and provides functionality for users to enter their lineups quickly in multiple contests.").

DraftKings also relies on cases involving distinguishable facts and allegations. For example, in *Artemi Ltd. v. Safe-Strap Co.*, 947 F. Supp. 2d 473, 480–81 (D.N.J. 2013), the court found that no component was sufficiently accused, but WinView

identifies the specific components of the Sportsbook and Daily Fantasy products that are material parts of the inventions and do not have substantial noninfringing uses.  In fact, nothing in the Complaint suggests that the accused features of the DraftKings Sportsbook and Daily Fantasy have anything other than infringing uses.  Defendants' other cases are similarly inapplicable.[3]  DraftKings asks this Court to squint at a single paragraph within each count of patent infringement, but WinView's extensive allegations throughout the Complaint adequately plead contributory infringement.

### E.     There Is No Basis For A Dismissal With Prejudice

While there are numerous reasons for the Court to deny DraftKings' motion, even if there were some area where the Court were inclined to grant it, dismissal with prejudice as DraftKings proposes, would not be appropriate.  This is another example of DraftKings overreaching.  Under Third Circuit precedent, dismissal with prejudice is a "severe and disfavored remedy."  *Alvin v. Suzuki*, 227 F.3d 107, 122 (3d Cir. 2000).  Indeed, the cases DraftKings cites recognize that "dismissal with prejudice is

---

[3] In *People.ai, Inc. v. Setsail Techs., Inc.*, C.A. No. C 20-09148 WHA, 2021 WL 2333880, at *6 (N.D. Cal. June 8, 2021) and *InvenTel Prods., LLC v. Li*, 406 F. Supp. 3d 396, 404 (D.N.J. 2019), the allegations concerned a failure to allege knowledge, which as shown above, WinView sufficiently pleads.  In *Hitachi Kokusai Elec. Inc. v. ASM Int'l, N.V.*, C.A. No. 17-cv-06880-BLF, 2018 WL 3537166, at *2 (N.D. Cal. July 23, 2018), *Ziemba v. Incipio Techs., Inc.*, C.A. No. 13–5590 (JLL), 2014 WL 7051782 (D.N.J. Dec. 12, 2014), and *Straight Path IP Grp., Inc.*, 2014 WL 3345618, at *4, the allegations merely tracked the standard for contributory infringement without tying to the specific products.

'rarely' a proper sanction."  *See, e.g.*, *N. Star Innovations*, 2017 WL 5501489, at *3 (granting motion to dismiss without prejudice as the dismissal was "the first time that a court has found Plaintiff's claims deficient and put it on notice as to why this was so").  There is no basis to dismiss the Complaint, let alone dismiss it with prejudice.

DraftKings tries to paint a picture that there have been multiple amendments but that ignores the procedural history and the absence of any Court rulings regarding the pleadings.  If the court determines DraftKings' motion should be granted in any respect, leave to amend should be afforded, as is typical.  *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

## V.   CONCLUSION

WinView's Complaint provides sufficient factual allegations at an appropriate level of detail for this stage of the proceedings.  WinView respectfully requests that the Court deny DraftKings' motion in its entirety.

Dated: January 24, 2022        By:     */s/ Thomas R. Curtin*

Thomas R. Curtin
Joseph P. LaSala
Kathleen N. Fennelly
MCELROY, DEUTSCH,
MULVANEY
 & CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962-2075
Tel: (973) 993-8100
Fax: (973) 425-0161
tcurtin@mdmc-law.com
jlasala@mdmc-law.com
kfennelly@mdmc-law.com

Morgan Chu
Richard M. Birnholz
Keith A. Orso
Jordan Nafekh
Tate Harshbarger
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Tel: (310) 277-1010
Fax: (310) 203-7199
mchu@irell.com
rbirnholz@irell.com
korso@irell.com
jnafekh@irell.com
tharshbarger@irell.com

*Attorneys for Plaintiff WinView Inc*