<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WINVIEW INC., <br><br>        Plaintiff, <br><br>    v. <br><br> DRAFTKINGS INC., *et al.*, <br><br>        Defendants. | Civil Action No. 21-13405 (GC) (JTQ) <br><br> <u>**OPINION**</u> |

<u>**CASTNER, District Judge**</u>

     **THIS MATTER** comes before the Court upon Defendants DraftKings Inc. and Crown Gaming Inc.'s (collectively, DraftKings) Motion to Dismiss Plaintiff WinView Inc.'s Second Amended Complaint (SAC) for patent infringement pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6). (ECF No. 70.) WinView opposed (ECF No. 73), and DraftKings replied (ECF No. 74). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, the Motion to Dismiss is **GRANTED**.

**I.    <u>BACKGROUND</u>[1]**

     This case arises from DraftKings' alleged infringement of WinView's patents: U.S. Patent Nos. 9,878,243 (the '243 patent); 10,721,543 (the '543 patent); 9,993,730 (the '730 patent); and 10,806,988 (the '988 patent). The only patents at issue in DraftKings' Motion are the '543 patent

---

[1]     On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

and the '988 patent.

WinView is a corporation that is involved in "interactive television and mobile gaming." (ECF No. 26 ¶ 3.)  WinView's "technologies enable the creation of an environment that makes the sports viewing and gaming experience more fair, engaging, and exciting."  (*Id.*)  DraftKings "is a digital sports entertainment and gaming company" that "provides users with daily fantasy sports . . . and sports betting . . . opportunities, among other offerings" and is also "involved in the design, development, and licensing of sports betting and casino gaming software for online and retail sportsbook and casino gaming products."[2]  (*Id.* ¶ 4.)

### A.  '543 patent

The '543 patent entitled "Method of and System for Managing Client Resources and Assets for Activities on Computing Devices" was issued on July 21, 2020.  (*Id.* ¶ 31.)  The SAC asserts that the "inventions claimed in the '543 patent relate to specific improvements in computer technologies related to distributed entertainment services with respect to events or programs occurring in various geographic locations."  (*Id.* ¶ 33.)  "The '543 [p]atent teaches . . . the use of an 'activity client' installed on a user's device that manages the game data presented to a user based on the geographic location of the device" which in turn "allows the system to take into account different state laws that limit [gambling games] that may be available or lawful in a particular location."  (*Id.* ¶ 34.)

The SAC specifically, addresses claims 1 and 9 of the '543 patent.  Claim 1 provides the following:

---

[2]    The SAC alleges that Crown Gaming Inc. "operate[s] and do[es] business under the name[] 'DraftKings.'"  (ECF No. 26 ¶ 9.)

1. A method of implementing a consumer service on a mobile web-connected computing device comprising:

> loading a set of service related information located on a server related to a geographic location of the mobile web-connected computing device to an activity client, wherein the geographic location of the mobile web-connected computing device determines the set of service related information to be loaded from the server, wherein the set of service related information includes service related information relative to the geographic location of the mobile web-connected computing device, and further wherein as the geographic location of the mobile web-connected computing device changes, different service related information is presented through the activity client based on the geographic location;
>
> selecting an option from the activity client from a list of available options;
>
> downloading a set of service-specific information related to a selected option from a server to the mobile web-connected computing device; and
>
> executing an application related to the selected option within the activity client on the mobile web-connected computing device.

[(*Id.* ¶ 36.)]

As to claim 9, it states: "The method of claim 1 further comprising identifying a user status including identifying a current geographic location of the mobile web-connected computing device." (*Id.* ¶ 37.)

## B. '988 patent

The '988 patent entitled "Method of and System for Conducting Multiple Contests of Skill with a Single Performance" was issued on October 20, 2020. (*Id.* ¶ 39.) The SAC asserts that the "[t]he inventions claimed in the '988 patent relate to specific improvements in computer technologies related to distributed gaming and distributed gaming utilizing a mobile device." (*Id.*

3

¶ 41.)  "The claims of the '988 [p]atent recite new and unconventional solutions for efficiently and easily conducting multiple contests of skill or chance in a distributed environment simultaneously and in real time" and the claims "are necessarily rooted in computer technologies and provide solutions for enabling the entry of an individual in separate competitions, with separate prizes based on their single performance . . . where the pool of entrants is different for each competition." (*Id.* ¶ 43.)  The claims further allow "a plurality of users to participate in multiple competitions with separate competitors and prizes while utilizing a single performance of the participant, such as the same selections for the competition."  (*Id.*)

Specifically, claim 1 provides the following:

> 1. A server device for conducting simultaneous multiple contests of skill or chance corresponding to one or more events comprising:
>
> > a. a storage mechanism; and
> >
> > b. an application for interacting with the storage mechanism to allow a plurality of users to simultaneously and in real time compete in the multiple contests of skill or chance, the application further for:
> >
> > > i. receiving each of the plurality of user's input including event selections related to the one or more events and in which of the multiple contests of skill or chance the selections are to be applied, wherein the same event selections are separately and simultaneously applied to each of the selected multiple contests of skill or chance, wherein the event selections enable simultaneously participating with a plurality of the multiple contests of skill or chance;
> > >
> > > ii. storing results and standings for each of the multiple contests of skill or chance based on the event selections, wherein the standings are based on the results; and
> > >
> > > iii. transmitting the multiple and separate standings to each client device in real time.

[(*Id.* ¶ 44.)]

## C. DraftKings Sportsbook and Daily Fantasy Sports

"DraftKings' main product offerings to consumers include Daily Fantasy Sports and Sportsbook." (*Id.* ¶ 47.) The DraftKings Sportsbook, which can be accessed online or through a mobile application, involves "propositions . . . based on particular sporting events that occur during the year."[3] (*Id.* ¶¶ 49, 51.) DraftKings Sportsbook "offers betting propositions that include traditional bets based on end-of-game outcomes, such as who will win a particular game or whether a team will win by more than a certain number of points." (*Id.* ¶ 52.) The product also "offers 'Live In-Game' betting propositions that are made during games and as the action unfolds. Live In-Game betting is a significant feature of the DraftKings Sportsbook, designed to increase user engagement and enhance the sports betting experience." (*Id.*) DraftKings "has referred to certain Live In-Game betting propositions in the DraftKings Sportsbook mobile application as 'Flash Bets.'" (*Id.*)

Flash Bets users "select[] a particular outcome and enter[] an amount of the wager on the selected outcome. If the user is in a jurisdiction where placing bets is permitted, the user may place a bet on the proposition." (*Id.* ¶¶ 53-55.) The SAC asserts that "[a]s the action unfolds relating to a particular live in-game betting proposition, the DraftKings Sportsbook website and app provide users with updated odds for the betting propositions" and "presents the odds and betting propositions synchronized to virtual representations of the sporting event." (*Id.* ¶ 57.) The DraftKings Sportsbook also "prevents betting propositions when the user is no longer permitted to

---

[3]    "Sports betting involves a user placing a bet by wagering money at some fixed odds. The matter on which the user bets is often referred to as a 'proposition' or 'prop'. If the user wins, DraftKings pays out the bet. DraftKings generates revenue from the difference between the payouts and the settled handle for bets that DraftKings has taken." (ECF No. 26 ¶ 50.)

make a selection on a particular wager" and "sends signals to lock out bets at an appropriate time to level the playing field, increase user engagement, and prevent participants from obtaining information that could give them a material advantage in their betting on the proposition." (*Id.*)

As to DraftKings Daily Fantasy Sports, which similarly can be accessed online or through a mobile application, the platform "provides . . . contests users may enter for various sports . . ., scores the contests, and distributes prizes." (*Id.* ¶¶ 58-59.)  To increase user participation and corresponding revenue, DraftKings "recommends contests for users to join and provides functionality for users to enter their lineups quickly in multiple contests." (*Id.* ¶ 60.)  DraftKings also provides "a 'Bulk Enter' feature that allows for the entry of the selected lineup in multiple, simultaneous contests." (*Id.*)

The SAC explains that "[s]ports betting and Daily Fantasy Sports are permitted in New Jersey but not in every state." (*Id.* ¶ 62.)  In an effort to "ensure compliance with different state laws and provide users with correct permission information, the DraftKings Sportsbook and Daily Fantasy Sports applications and website are configured to monitor the location of the device being used." (*Id.*)  In a scenario when "the device is not in a permitted jurisdiction, DraftKings prevents the user from placing bets on the DraftKings app or website and the user is informed that it appears the user is located in a state that betting on DraftKings is not available." (*Id.*)

## II.    PROCEDURAL HISTORY

At least as early as May 2016, WinView "issued publicly available statements and press releases, including on [its] website, that refer to the company's patents" and stated that "its 'portfolio of [] foundational patents . . . covers the synchronization of the second-screen with TV broadcasts and commercials and the optimum methods of monetizing sports-based games of skill, among other types of programming content.'" (*Id.* ¶ 63.)  The SAC alleges that DraftKings was

familiar with, and had knowledge of, WinView and its patents before July 2021, when this case was filed.  (*Id.* ¶ 64.)  This is so because, as alleged in the SAC, "Tom Rogers, the executive chairman of WinView communicated with Jason Robins, chief executive officer and co-founder of DraftKings, about a potential relationship between" the two companies and "expressed a desire to bring him up to speed on the company's progress and discuss possible opportunities for WinView and DraftKings to work together."  (*Id.*)

Further, at least as early as January 2019, "WinView and DraftKings engaged in discussions regarding WinView's foundational intellectual property for playing along with live sports, including games of skill and sports gambling in the United States."  (*Id.* ¶ 65.)  Additionally, "DraftKings investigated WinView and its business as part of these discussions, including being provided with access, and accessing, detailed information regarding WinView.  During these discussions, DraftKings specifically requested information regarding WinView's patents."  (*Id.*)  "In response to DraftKings' request, WinView provided DraftKings with materials identifying the '243 patent, the '730 patent, U.S. Patent Application No. 16/216,885 (which later issued as the '543 patent), and U.S. Patent Application No. 16/221,307 (which later issued as the '988 patent)."  (*Id.*)

Subsequently, "[i]n late 2020, WinView again pursued discussions with DraftKings regarding its intellectual property and a relationship between the companies.  DraftKings declined to participate in such discussions."  (*Id.* ¶ 66.)

On July 7, 2021, WinView sued DraftKings for patent infringement of the '243 patent and the '543 patent.  (ECF No. 1.)  On July 28, 2021, prior to DraftKings entering an appearance, WinView filed a first amended complaint, asserting infringement of all four patents: the '243 patent, the '543 patent, the '730 patent, and the '988 patent.  (ECF No. 7.)  DraftKings moved to

dismiss the FAC.  (ECF No. 21.)  Subsequently, the parties stipulated to WinView filing a second amended complaint.  (ECF No. 25.)  WinView filed the SAC on November 15, 2021, asserting infringement, 35 U.S.C. § 271 *et seq.*, of all four patents.[4]  (ECF No. 26.)

After WinView filed the SAC, DraftKings, along with FanDuel, Inc.,[5] petitioned for *inter partes* review (IPR) before the Patent Trial and Appeal Board (PTAB) regarding specific claims of the '243 patent, the '543 patent, and the '730 patent.  (*See* ECF No. 40; *see also* ECF No. 70-1 at 10.[6])  The '988 patent, along with some claims of the other three patents, were not subject to IPR.  (*See* ECF No. 61.)  Following notice of the challenges before the PTAB, the Court stayed this case "pending the final resolution of all . . . IPR petitions."  (ECF No. 46.)

In January 2024, the PTAB issued written decisions regarding the '243 patent, the '543 patent, and the '730 patent, and invalidated all challenged claims under these patents.  (ECF No. 61.)  *See DraftKings Inc. v. WinView Inc.*, I.P.R. No. 2022-01351, 2024 WL 329626, at *1 (P.T.A.B. Jan. 29, 2024) (finding that as to the '243 patent, DraftKings "demonstrated by a preponderance of the evidence that claims 1, 3, 4, and 6 are unpatentable"); *FanDuel, Inc. v. WinView Inc.*, I.P.R. No. 2022-01306, 2024 WL 330616, at *1 (P.T.A.B. Jan. 29, 2024) (finding that as to the '730 patent, FanDuel demonstrated "by a preponderance of the evidence, that claims 1, 4, 7, 28-31, 49, 57, 68, and 81 . . . are unpatentable"); *FanDuel, Inc. v. WinView Inc.*, I.P.R. No. 2022-01307, 2024 WL 330163, at *1 (P.T.A.B. Jan. 29, 2024) (finding that as to the '543 patent,

---

[4]    The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a).

[5]    WinView has sued FanDuel for infringement in a separate action.  *See* First Amended Complaint, *WinView Inc. v. FanDuel, Inc.*, Civ. No. 21-13807 (D.N.J. July 28, 2021).

[6]    Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

FanDuel "demonstrated by a preponderance of the evidence that all challenged claims[, 1, 2, 9, 14-16, 20, 21, 23, 24, 26, 27, 31-33, 40, 41, 43, and 49,] are unpatentable"). WinView filed notices of appeal of PTAB's final decisions but then voluntarily dismissed those appeals. (ECF No. 61; *see* ECF No. 71 at 7.)

Following a status conference, (*see* ECF No. 71), WinView informed the Court that it would be dismissing its patent infringement claims related to the '243 patent and the '730 patent. (ECF No. 66 & 67.) In accordance with a stipulation filed on December 16, 2024, the Court dismissed WinView's claims based on the '243 patent and the '730 patent with prejudice. (ECF No. 68.) DraftKings subsequently filed this Motion, seeking to dismiss WinView's claims for patent infringement in relation to the '543 patent and the '988 patent. (ECF No. 70.)

## III.    **LEGAL STANDARD**

"Generally, district courts adjudicating patent cases apply the substantive law of the Federal Circuit." *NovaPlast Corp. v. Inplant, LLC*, Civ. No. 20-7396, 2021 WL 5770264, at *4 (D.N.J. Dec. 6, 2021) (quoting *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012)). However, "[t]he standard governing [the] grant or denial of a Rule 12(b)(6) motion[] . . . 'is a purely procedural question not pertaining to patent law,' to which this court, and the Federal Circuit on review, applies the rule of the regional circuit." *Id.* (quoting *C&F Packing Co. v. IBP, Inc.*, 224 F.3d 1296, 1306 (Fed. Cir. 2000)). Therefore, the Court will apply Rule 12(b)(6) precedent from the United States Court of Appeals for the Third Circuit for purposes of deciding this Motion.

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is

plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Dir. of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

In the context of patent infringement, while "[a] plaintiff is not required to plead infringement on an element-by-element basis," a plaintiff "cannot assert a plausible claim . . . by reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352-53 (Fed. Cir. 2021).[7] Rather, "[t]here must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.* at 1353. Moreover, while "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . it [is also true] that [s]pecific facts

---

[7]       "Although the Federal Circuit decided *Bot M8* under the laws of the Ninth Circuit, the Third Circuit's pleading standards are not materially different," and therefore *Bot M8* supplies welcome guidance regarding pleading requirements for patent infringement cases at the motion to dismiss stage. *Lexington Luminance LLC v. Bulbrite Indus., Inc.*, Civ. No. 22-3787, 2023 WL 143911, at *3 n.6 (D.N.J. Jan. 10, 2023) (citing *NovaPlast Corp.*, 2021 WL 5770264, at *6).

are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (cleaned up).  Importantly, "[t]he level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device."[8]  *Id.*

## IV.  <u>DISCUSSION</u>

The SAC asserts direct infringement, willful infringement, induced infringement, and contributory infringement of the '543 patent and the '988 patent.  (*See* ECF No. 26 at 42-62.) DraftKings challenges all four causes of action.  The Court addresses each challenge in turn.

### A.  **Direct Patent Infringement**

DraftKings argues that the Court "should dismiss WinView's claim for direct infringement of the '543 patent because claims 1 and 9 of the '543 patent, the only asserted claims, have been invalidated by the PTAB."  (ECF No. 70-1 at 13.)  DraftKings also argues that the pleading standard does not permit "the Court to guess at the possibility that other unidentified claims could provide a basis for an infringement claim, and [that] it is not DraftKings' burden . . . to prove that it does not infringe unidentified, unasserted claims."  (ECF No. 74 at 8.)  DraftKings further asserts that WinView has failed to plead sufficient facts to show direct infringement.  (ECF No. 70-1 at 13-18.)

In response, WinView asserts that DraftKings "misstate[s] the record" and fails to

---

[8]     For example, in the context of a "'simple technology,' a plaintiff may plausibly plead [infringement] by providing the asserted patents, identifying the accused products 'by name and by attaching photos of the product packaging,' and alleging that the accused products meet 'each and every element of at least one claim . . . either literally or equivalently.'" *ALD Social, LLC v. Verkada, Inc.*, 654 F. Supp. 3d 972, 978 (N.D. Ca. 2023) (quoting *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018)).

acknowledge that the SAC alleges "infringement of 'one or more claims of the '543 patent, including *but not limited* to claims 1 and 9.'" (ECF No. 73 at 16) (emphasis in original). WinView further argues that it has pled sufficient facts to show direct infringement, such as the "downloading" and "executing" components of claim 1. (*Id.* at 17-24.)

The Court agrees with DraftKings and finds that the SAC fails to sufficiently assert a claim for direct infringement of the '543 patent. Claims for direct infringement are governed by 35 U.S.C. § 271(a), which states: "Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." "To prove direct infringement, [a plaintiff] 'must either point to specific instances of direct infringement or show that the [accused product] necessarily infringes the patent in suit.'" *NovaPlast Corp.*, 2021 WL 5770264, at *5-6 (quoting *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007)). Accordingly, a plaintiff "must identify [a] [d]efendant['s] products which allegedly infringe the [patent at issue], describe the alleged infringement, and 'relate factual assertions to the pertinent claims' of the [patent at issue]." *Id.* (quoting *Robern, Inc. v. Glasscrafters, Inc.*, 206 F. Supp. 3d 1005, 1011 (D.N.J. 2016)).

Here, the Court finds that WinView has identified DraftKings' products (Sportsbook and Daily Fantasy Sports) but has not sufficiently described the alleged infringement or related factual assertions to the pertinent claims of the '543 patent. The relevant allegations pertaining to the '543 patent span twenty-three paragraphs of the SAC. (ECF No. 26 ¶¶ 104-127.) Within those paragraphs, WinView makes reference to only claims 1 and 9. (*Id.* ¶¶ 106-07.) No other references to specific claims are made in the SAC in relation to the '543 patent. (*See id.* ¶¶ 104-05, 108-127.) The allegations related to the '543 patent, more or less, describe DraftKings' products and merely

12

provide an overview explanation of the operation of the accused products, in general terms, but there are no allegations that make the connection as to how the accused product infringes any other pertinent claims of the '543 patent. While it is of course true that WinView need not prove its case at the pleading stage, without more specific allegations of infringement, the Court cannot find that the SAC places DraftKings on notice of "what activity . . . is being accused of infringement." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (citation modified).

WinView argues that the SAC does not limit the allegations to claims 1 and 9, and therefore has pled sufficient facts at this stage. In support of its argument, WinView cites *Telebrands Corporation v. Ragner Technology Corporation*, Civ. No. 15-3163, 2016 WL 11654380, at *1 (D.N.J. Aug. 25, 2016). In *Telebrands*, the plaintiff moved to dismiss the defendant's counterclaim for patent infringement because the counterclaim did not "identify any patent claims alleged to be infringed, but rather merely state[d] that one or more claims of the '076 patent [were] infringed." *Id.* (cleaned up). As a result, the plaintiff asserted that the defendants could not have "stated a plausible claim for patent infringement because they failed to identify any claims of the '076 patent alleged to be infringed." *Id.* at *3. The court declined the "invitation to hold that a patentee must identify patent claims to state a plausible claim for relief in a patent infringement action." *Id.* at *4. The court in *Telebrands* reasoned that an independent review of the defendant's counterclaim allegations revealed the following: (1) "allegations that describe[d] the accused products"; (2) "the functionalities of those products that allegedly infringe[d] the '076 patent"; (3) "that the accused products [met the] claims of the '076 patent"; and (4) and that the defendant's "products practice[d] one or more claims of the '076 patent and compete[d] with [the plaintiff's] products." *Id.* at *5. The court held that these allegations permit the court to "reasonably infer at this stage that [the plaintiff's] products practice one or more claims of the '076 patent." *Id.*

But *Telebrands* is readily distinguishable from this case. First, as already outlined, the allegations of direct infringement appear to relate solely to claims 1 and 9 of the '543 patent. (*See, e.g.*, ECF No. 26 ¶¶ 115-119.) This is problematic because the PTAB determined that claims 1 and 9 of the '543 patent are unpatentable.[9] *See FanDuel*, 2024 WL 330163, at *1; *see also Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*, 412 F.3d 1284, 1291 (Fed. Cir. 2005) (noting that "there can be no . . . infringement of invalid patent claims"); *Bristol-Myers Squibb Co. v. Merck & Co., Inc.*, Civ. No. 15-560, 2016 WL 1072841, at *1 n.1 (D. Del. Mar. 17, 2016) ("A patent infringement claim that asserts infringement of claims that are invalid fails to state a claim on which relief can be granted."); *see also Arunachalam v. United States*, Civ. No. 16-358, 2020 WL 5412752, at *13 (Fed. Cir. Sept. 9, 2020) (noting that a plaintiff will be unable to "maintain a claim for patent infringement absent . . . enforceable patent claims").

Second, even accepting *Telebrands*' pronouncement that a patentee need not identify the precise claims at issue in the complaint, the Court cannot make the inference that the allegations not specifically referencing claims 1 and 9 sufficiently plead infringement of the '543 patent. This is so because those allegations appear to merely describe the accused products but fail to allege

---

[9]     "[T]he decisions of the Patent and Trademark Office, and the members of the Board, represent the 'considered judgment of an expert agency.'" *SynQor, Inc. v. Vicor Corp.*, 988 F.3d 1341, 1351 (Fed. Cir. 2021) (quoting *Microsoft Corp. v. i4i Ltd.*, 564 U.S. 91, 112 (2011)). As a result, "[d]istrict courts generally give deference to PTAB *inter partes* review decisions based on the PTAB's specialized patent knowledge and expertise." *TMC Fuel Injection Sys., LLC v. Ford Motor Co.*, Civ. No. 12-4971, 2016 WL 7155793, at *3 (E.D. Pa. Apr. 20, 2016), *aff'd sub nom.*, 682 F. App'x 895 (Fed. Cir. 2017). Moreover, if a party fails to appeal or voluntarily dismiss an appeal of IPR, the PTAB's decision invalidating claims of a patent "is final and may not be collaterally attacked through a separate litigation." *Arunachalam v. Int'l Bus. Machs. Corp.*, 759 F. App'x 927, 933 (Fed. Cir. 2019). The parties do not dispute the PTAB's decision finding that numerous claims of the '543 patent are unpatentable. Given the deference owed to the PTAB's decision regarding numerous claims of the '543 patent and the parties' apparent agreement as to those findings, the Court defers to the PTAB's findings as to the '543 patent.

that the accused products meet the claims of the '543 patent or that the accused products practice one or more claims of the'543 patent and compete with WinView's products. *Cf. Telebrands*, 2016 WL 11654380, at \*5. Indeed, even though the counterclaim in *Telebrands* failed to identify any claims of the patent at issue, the Court was nonetheless able to determine that the allegations not only described the accused products, but described "the functionalities of those products that allegedly infringe[d]" the patent at issue. *Id.* Unlike in *Telebrands*, the Court cannot make that leap based on the allegations in the SAC.

Finally, the Court notes that *Telebrands* was decided prior to the Federal Circuit's decision in *Bot M8*. There, the court made clear that "[t]he level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *See Bot* M8, 4 F.4th at 1353. In light of *Bot M8*, the Court finds that WinView has failed to provide adequate notice to DraftKings. This is particularly so here, where infringement is directed at more sophisticated or complex patented technology with over 100 claim limitations, as opposed to simple technology with few claim limitations. *Cf. Disc Disease*, 888 F.3d at 1260 (reversing district court decision dismissing complaint for failure to state a claim in a "case [that] involve[d] simple [patented] technology" with only four claim limitations in total). Moreover, a complaint that centers its infringement allegations around claims that have been deemed unpatentable and fails to provide an additional description of how the accused products infringe the claimed invention cannot provide the required "fair notice" to a defendant of alleged infringement.[10]

---

[10]    The Court also rejects WinView's argument that "[u]nder the Local Patent Rules of this District, . . . plaintiffs . . . do not elect the claims they are asserting in their complaints," but rather "will disclose WinView's elected claims when it provides its Rule 3.1 disclosure, 14 days after the

Therefore, WinView's claim for direct infringement as to the '543 patent is dismissed.[11]

## B. Willful Patent Infringement

DraftKings argues that the Court should dismiss WinView's claim for willful infringement because the SAC fails to sufficiently plead knowledge of the '988 patent and/or knowledge of infringement.[12]  (ECF No. 70-1 at 20-22; ECF No. 74 at 10.)  The Court agrees.

To sustain an allegation of willful infringement, WinView must allege facts plausibly showing that "as of the time of the claim's filing, [DraftKings]: (1) knew of the ['988 patent]; (2) after acquiring that knowledge, it infringed the ['988 patent]; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the ['988 patent]."  *NovaPlast Corp.*,

---

initial Scheduling Conference" in accordance with Local Patent Rule 3.1.  (ECF No. 73 at 16-17.)  While WinView is correct that it is required to provide detailed information regarding alleged claims being infringed upon after the initial scheduling conference, the Local Patent Rules do not relinquish WinView from its obligation to allege facts in accordance with the Rule 12(b)(6).  *See Data Distrib. Tech., LLC v. BRER Affiliates, Inc.*, Civ. No. 12-4878, 2014 WL 4162765, at *6 (D.N.J. Aug. 19, 2014) ("The Local Patent Rules do not supersede the Federal Rules of Civil Procedure.");  *Tyco Fire Products LP v. Victaulic Co.*, 777 F. Supp. 2d 893, 895 (E.D. Pa. 2011) (noting "that relying on local patent rules to alter the pleading standard is not consistent with the national rules");  *Footbalance Sys. Inc. v. Zero Gravity Inside, Inc.*, Civ. No. 15-1058, 2017 WL 3877720, at *3 (S.D. Ca. Sept. 5, 2017) (noting that "these Patent Local Rules cannot supplant the Supreme Court's directives in *Twombly/Iqbal*, which clarified the pleading standards under the Federal Rules of Civil Procedure").  Therefore, the Court finds WinView's argument incompatible with Rule 12(b)(6), as well as the Federal Circuit's decision in *Bot M8*, which requires fair notice to the alleged infringer of what the claim is and the grounds upon which it rests.  4 F.4th at 1353.

[11]    DraftKings does not challenge WinView's cause of action for direct infringement as it relates to the '988 patent.  (*See* ECF Nos. 70 & 74.)  Therefore, WinView's direct infringement claim as it relates to the '988 patent shall proceed.

[12]    Because WinView fails to sufficiently plead direct infringement as to the '543 patent, its claim for willful infringement necessarily fails.  *See Adnexus Inc. v. Meta Platforms, Inc.*, Civ. No. 23-152, 2024 WL 409738, at *5 (W.D. Tex. Feb. 2, 2024) ("[T]here can be no willful infringement absent direct infringement.").  Therefore, the Court dismisses WinView's claim for willful infringement as to the '543 patent.  *Id.*; *see Illumina, Inc. v. Life Tech. Corp.*, Civ. No. 11-3022, 2016 WL 11783399, at *7 (S.D. Ca. Sept. 22, 2016) (dismissing claim for willful infringement without prejudice because the plaintiff could not state a claim for direct infringement or indirect infringement).

2021 WL 5770264, at *9 (quoting *Batinkoff v. Church & Dwight Co.*, Civ. No. 18-16388, 2020 WL 1527957, at *19 (D.N.J. Mar. 31, 2020)).  "[W]here a complaint permits an inference that the defendant was on notice of the potential infringement and still continued its infringement, the plaintiff has pled a plausible claim of willful infringement."  *Nasdaq, Inc. v. IEX Grp., Inc.*, Civ. No. 18-3014, 2019 WL 102408, at *14 (D.N.J. Jan. 4, 2019) (quoting *Kyowa Hakka Bio, Co. v. Ajinomoto Co.*, Civ. No. 17-313, 2018 WL 834583, at *13 (D. Del. Feb. 12, 2018)).

The SAC alleges that the '988 patent was issued on October 20, 2020, and that "DraftKings became aware of the '988 patent and that its activities concerning the DraftKings Daily Fantasy offerings infringed the '988 patent no later than upon its issuance on October 20, 2020."  (ECF No. 26 ¶¶ 39, 141.)  The SAC further asserts that in January 2019, DraftKings requested information regarding WinView's patents and that WinView provided DraftKings U.S. Patent Application No. 16/221,307 (which later issued as the '988 patent).  (*Id.* ¶ 65.)  These allegations fail to support a claim for willful infringement of the '988 patent because these allegations pre-date the issuance of the '988 patent.  Indeed, there are no allegations of any potential infringement after October 2020.[13]  As the Federal Circuit has clearly articulated, "[i]t is obvious that a party cannot be held liable for 'infringement', and thus not for 'willful' infringement, of a nonexistent patent, i.e., no damages are payable on products manufactured and sold before the patent issued."  *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990).[14]

---

[13]    The SAC alleges that "[i]n late 2020, WinView again pursued discussions with DraftKings regarding its intellectual property and a relationship between the companies," but "DraftKings declined to participate in such discussions."  (ECF No. 26 ¶ 66.)  This assertion is too vague for the Court to draw a reasonable inference that DraftKings was knowingly infringing the '988 patent as the phrase "late 2020" could refer to a timeframe prior to the issuance of the '988 patent.

[14]    As courts in the Third Circuit have recognized, the principle outlined in *Gustafson* "does not answer the question [of] whether evidence of pre-issuance conduct, such as copying of the plaintiff's products, is admissible to show post-issuance willfulness."  *Sonos, Inc. v. D&M*

WinView asserts, however, that "knowledge of at least the applications leading to the . . . '988 [p]atent[] is []sufficient as the starting point for a claim for willful infringement" (*i.e.*, pre-issuance conduct and pre-suit knowledge) and, as support, points to *University of Massachusetts Medical School v. L'Oréal S.A.*, Civ. No. 17-868, 2018 WL 5919745, at *8-9 (D. Del. Nov. 13, 2018), *report and recommendation adopted*, 2019 WL 2151701, at *2 (D. Del. May 17, 2019). (ECF No. 73 at 28.)   There, the court found that the plaintiff had stated a claim for willful infringement because (1) L'Oréal referenced the patent at issue in its own provisional patent application in 2002, and (2) a L'Oréal agent contacted one of the co-inventors in the fall of 2003 to discuss the patents-in-suit and obtain a license to the patented technology.  *Id.* at *9.  The court found that it was "plausible to infer that by continuing to use and sell the [a]ccused [p]roducts after learning of and requesting a license to the patents-in-suit, L'Oréal intentionally or knowingly infringed the patents-in-suit."  *Id.*

But here, even assuming for purposes of this Motion that the SAC provides enough detail to prove DraftKings' knowledge of the patents-in-suit, the SAC does not provide sufficient allegations for the Court to infer DraftKings' knowledge of infringement.  Rather, other than allegations about DraftKings requesting information from WinView about the patent applications, the SAC provides threadbare assertions about discussions between DraftKings and WinView, which offer insufficient information to infer that DraftKings knew its products were infringing upon the '988 patent.  (*See* ECF Nos. 63-66 (describing in vague terms alleged communications

---

*Holdings, Inc.*, Civ. No. 14-1330, 2017 WL 5633204, at *3 (D. Del. Nov. 21, 2017); *see Minn. Min. and Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1581 (Fed. Cir. 1992) ("[A]lthough willfulness is generally based on conduct that occurred after a patent issued, pre-patent conduct may also be used to support a finding of willfulness.").

between WinView and DraftKings about a potential relationship between the two companies and WinView providing the '988 patent application to DraftKings).)

Unlike the allegations in *L'Oréal*, where it was clear that the defendant knew or should have known its products would be infringing (*i.e.*, based on (1) L'Oréal listing the patent holder's patent in L'Oréal's own patent application and (2) talks between L'Oréal and the patent holder about licensing the patent at issue), the allegations in the SAC do not provide the necessary level of information for this Court to infer DraftKings' knowledge of infringement. *See Batinkoff*, 2020 WL 1527957, at *19 (dismissing claim for willful infringement because even though the email exchange between the plaintiff and the defendant "inform[ed] [the defendant] of [the plaintiff's] patent and [sought] to discuss strategic opportunities," the email did not inform the defendant that the plaintiff's patent was being infringed upon); *CG Tech. Dev., LLC v. William Hill U.S. Holdco, Inc.*, 404 F. Supp. 3d 842, 851-52 (D. Del. 2019) (dismissing willful infringement claim because the plaintiff failed to sufficiently plead knowledge of pre-suit infringement despite the defendant's "intimate[] involve[ment] in developing [the plaintiff's] patent portfolio and [being] the named inventor on multiple mobile gaming patents assigned to [the] [p]laintiff's affiliates"). Therefore, the Court rejects WinView's argument that the SAC sufficiently alleges facts to establish pre-issuance or pre-suit knowledge of infringement.[15]

Furthermore, the Court rejects WinView's argument that knowledge can be established based on the filing of the complaint and subsequent amendments to the initial complaint. (ECF No. 73 at 34-35.) While it appears that courts are split on the issue of whether knowledge can be

---

[15]    By way of example only, in the context of pre-suit knowledge of infringement, a plaintiff may commonly overcome a motion to dismiss through references to cease-and-desist letters. *See, e.g.*, *NovaPlast Corp.*, 2021 WL 5770264, at *10.

established based on the filing of a complaint, *see Extang Corporation v. Truck Accessories Group, LLC*, Civ. No. 19-923, 2022 WL 607868, at *2 n.1 (D. Del. Feb. 18, 2022), this Court joins other district courts throughout the country that have determined that "the complaint itself cannot be the source of the knowledge required to sustain claims of induced infringement and willfulness-based enhanced damages." *ZapFraud Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 250 (D. Del. 2021); *E-Vision Optics, LLC v. Luxottica Grp. S.p.A.*, Civ. No. 23-02013, 2024 WL 3468839, at *3-4 (C.D. Ca. June 11, 2024) (same); *VLSI Tech. LLC v. Intel Corp.*, 706 F. Supp. 3d 953 (N.D Ca. 2023) (same); *Cleveland Medical Devices Inc. v. ResMed Inc.*, 696 F. Supp. 3d 4, 13-14 (D. Del. 2023) (same); *Security First Innovations, LLC v. Google LLC*, Civ. No. 23-97, 2023 WL 7726389, at *9-10 (E.D. Va. Nov. 15, 2023) (same); *Arbmetrics, LLC v. Dexcom Inc.*, Civ. No. 18-00134, 2019 WL 12473781, at *4 (S.D. Ca. Feb. 19, 2019), *modified on reconsideration*, 2019 WL 12473780 (S.D. Ca. Oct. 7, 2019) (same).[16]

"The purpose of a complaint is to obtain relief from an existing claim and not to create a claim." *ZapFraud*, 528 F. Supp. 3d at 251; *E-Vision Optics*, 2024 WL 3468839, at *3. This is especially so in the context of enhanced damages because "[t]he purpose of enhanced damages is to punish and deter bad actors from egregious conduct, not to provide a financial incentive for opportunistic plaintiffs to spring suits for patent infringement on innocent actors who have no knowledge of the existence of the asserted patents." *ZapFraud*, 528 F. Supp. 3d at 251-52; *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103-04 (2016) (noting that "[t]he sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton,

---

[16]    The parties do not cite to, nor is the Court aware of any Supreme Court or Federal Circuit cases addressing this issue. *See ZapFraud*, 528 F. Supp. 3d at 250 (noting that "[n]either the Federal Circuit nor the Supreme Court has addressed the issue" of whether post-suit knowledge is sufficient for willful or induced patent infringement claims).

malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate"); *see Gustafson*, 897 F.2d at 511 ("In our patent system, patent applications are secret, and patentees are authorized to sue 'innocent' manufacturers immediately after their patents issue and without warning. To hold such patentees entitled to increased damages or attorney fees on the ground of willful infringement, however, would be to reward use of the patent system as a form of ambush."). Importantly, "because a complaint and infringement contentions are a necessary part of patent litigation, a finding that they alone satisfy post-suit notice would invite claims of willful infringement and indirect infringement into literally every patent suit." *VLSI Tech.*, 706 F. Supp. 3d at 996.

Because WinView has not alleged sufficient facts to show pre-suit knowledge of infringement, its claim for willful infringement based solely on post-suit knowledge cannot stand. *See GoTV Streaming, LLC v. Netflix, Inc.*, Civ. No. 22-07556, 2023 WL 2627016, at *3 (C.D. Ca. Feb. 16, 2023) ("It seems beyond the pale to expect every patent defendant to cease all allegedly infringing conduct once a complaint is filed to force them to avoid enhanced damages for willful infringement. . . . If [a] [p]laintiff were permitted to bring an amended complaint for induced infringement, [a] [d]efendant would be forced to cease all allegedly infringing conduct once a complaint is filed to avoid such claims in the future. And without any allegation of pre-suit knowledge of the patent, [a] [p]laintiff's complaint [would] serve as a vehicle to create an induced infringement claim that was unavailable at the time of the complaint.") (citation modified).[17] Therefore, WinView's claim for willful infringement is dismissed.

---

[17]    The Court also does not find that the totality of WinView's allegations give rise to sufficient knowledge. *See VLSI Tech.*, 706 F. Supp. 3d at 991 ("There is no per se rule under which district courts evaluate willfulness contentions; rather, the factfinder must look to the totality of the circumstances presented in the case.").

**C. Indirect Patent Infringement**

There are two types of indirect patent infringement:  induced and contributory.  *See InvenTel Products, LLC v. Li*, 406 F. Supp. 3d 396, 404 (D.N.J. 2019).  DraftKings asserts that WinView's claims for induced and contributory infringement as to the '543 patent and the '988 patent should be dismissed.[18]  The Court agrees.

Pursuant to 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  "Inducement requires a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent."  *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) (citing *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006)).  Inducement also requires a showing of direct infringement.  *Aventis Pharm., Inc. v. Barr Lab'y, Inc.*, 411 F. Supp. 2d 490, 515 (D.N.J. 2006).  Regarding intent, the Federal Circuit has recognized, "[i]ntent can be shown by circumstantial evidence, but the mere knowledge of possible infringement will not suffice."  *Vita-Mix Corp.*, 581 F.3d at 1328.

Contributory infringement is governed by 35 U.S.C. § 271(c).  "Stated simply, '[a] party is liable for contributory infringement if that party sells, or offers to sell, a material or apparatus for use in practicing a patented process.'"  *BTG Int'l Ltd. v. Amneal Pharm. LLC*, 352 F. Supp. 3d 352, 399 (D.N.J. 2018) (quoting *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 850-51 (Fed. Cir. 2010)).  In order to establish contributory infringement, "a patent owner must prove the

---

[18]    "It is axiomatic that '[t]here can be no inducement or contributory infringement without an underlying act of direct infringement.'"  *In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012) (quoting *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004)).  Because the Court has dismissed WinView's claim for direct infringement as to the '543 patent, the Court also dismisses WinView's claims for induced and contributory infringement as related to the '543 patent.

following: '1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention.'" *Id.* (quoting *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010)).

Both induced and contributory infringement require knowledge of the patent and knowledge of infringement, just like willful infringement. *See Dynamic Data Techs. v. Google LLC*, Civ. No. 19-1529, 2020 WL 1285852, at *1 n.1 (D. Del. Mar. 18, 2020), *report and recommendation adopted sub nom.*, *Dynamic Data Techs., LLC v. Google LLC*, Civ. No. 19-1529, 2020 WL 3103786 (D. Del. June 11, 2020) ("Claims for induced and willful patent infringement each require that the infringer had knowledge of the patent and knowledge of its infringement."); *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) ("[C]ontributory infringement requires knowledge of the patent in suit and knowledge of patent infringement."); *ZapFraud*, 528 F. Supp. 3d at 249. Because, as already discussed, WinView has failed to allege sufficient facts for the Court to infer DraftKings' knowledge of infringement of the '988 patent prior to the filing of the complaint, and because this court similarly joins other courts that have held that the filing of a complaint is insufficient to prove knowledge for purposes of induced and contributory infringement claims, WinView's claims for induced and contributory infringement are dismissed. *See ZapFraud*, 528 F. Supp. 3d at 250-52 ("[T]he operative complaint in a lawsuit fails to state a claim for indirect patent infringement where the defendant's alleged knowledge of the asserted patents is based solely on the content of that complaint or a prior version of the complaint filed in the same lawsuit."); *Orlando Commc'ns LLC v. LG Elec., Inc.*, Civ. No. 14-1017, 2015 WL 1246500, at *8-10 (M.D. Fla. Mar. 16, 2015).

## D. Dismissal Without Prejudice

DraftKings argues that it is entitled to dismissal "with prejudice" because WinView "has attempted to state a claim three times, most recently with the benefit of DraftKings' first motion to dismiss" and that "[t]here is no reason to give WinView a fourth bite at the apple." (ECF No. 74 at 16.) "The law of this Circuit is that an initial dismissal, like this one, is presumptively without prejudice, and [the Court] see[s] no reason to depart from that rule." *Jensen v. Genesis Lab'y*, Civ. No. 20-15121, 2025 WL 615480, at *16 (D.N.J. Feb. 26, 2025) (quoting *United States ex rel. Perri v. Novartis Pharm. Corp.*, Civ. No. 15-6547, 2019 WL 6880006, at *18 (D.N.J. Feb. 21, 2019)). Therefore, the Court's dismissal of the SAC is without prejudice.

## V. **CONCLUSION**

For the reasons stated above, and for other good cause shown, DraftKings' Motion to Dismiss (ECF No. 70) is **GRANTED**. WinView shall have thirty (30) days to file an amended complaint in accordance with Local Rule 15.1(b), to the extent WinView can cure the deficiencies cited herein. Failure to file an amended complaint within that time will render the dismissal final. *See Mann v. A.O. Smith Corp.*, Civ. No. 21-2361, 2023 WL 2344225, at *2 (3d Cir. Mar. 3, 2023) ("A district court's dismissal without prejudice for failure to state a claim is converted into a dismissal with prejudice if plaintiff 'declar[es] his intention to stand on his complaint' by failing to timely amend it. . . ."); *Hoffman v. Nordic Nats., Inc.*, 837 F.3d 272, 279 (3d Cir. 2016) ("When that 30-day period expired, the District Court's decision became final.") An appropriate Order follows.

Dated: July  10 , 2025

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE