<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WINVIEW IP HOLDINGS, LLC,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>DRAFTKINGS INC., *et al.*,<br><br>　　　　　　　Defendants. | Civil Action No. 21-13405 (GC) (JTQ)<br><br>**<u>OPINION</u>** |

<u>**CASTNER, District Judge**</u>

**THIS MATTER** comes before the Court upon Defendants DraftKings Inc. and Crown Gaming Inc.'s (collectively, DraftKings) Motion to Dismiss Plaintiff WinView IP Holdings, LLC's Third Amended Complaint (TAC) for patent infringement pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6).  (ECF No. 109.)  WinView opposed (ECF No. 119) and DraftKings replied (ECF No. 121).  The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other good cause shown, DraftKings' Motion is **GRANTED in part** and **DENIED in part**.

**I.　　<u>BACKGROUND</u>**[1]

The Court assumes the parties' familiarity with the underlying facts, which are set forth in greater detail in the Court's prior Opinion addressing DraftKings' Motion to Dismiss Plaintiff's

---

[1]　　On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

Second Amended Complaint (SAC).  (ECF No. 79.)  The Court outlines only the factual background necessary to resolve the instant Motion.[2]

WinView is a limited liability company involved in "mobile gaming and interactive television" whose "technologies enable the creation of an online and mobile environment that enhances the sports viewing and gaming experience[.]"  (ECF No. 84 ¶¶ 3, 5.)  DraftKings "is a digital sports entertainment and gaming company" that "provides users with daily fantasy sports, online sports betting, and casino-style gambling offerings" and "is also involved in the design, development, and licensing of sports betting and casino gaming software for online and retail sportsbook and casino gaming products."  (*Id.* ¶ 7.)  The premise of this action is DraftKings' alleged infringement of WinView's patents: U.S. Patents Nos. 10,721,543 (the '543 patent) and 10,806,988 (the '988 patent).[3]  (*See id.* ¶¶ 1-2, 6.)  The TAC asserts that these patents "introduce transformative advancements in distributed gaming and mobile technology, including real-time bookmaking, geographic integration, specific solutions to manage simultaneous contest participation, and mechanisms to ensure fairness and compliance with state laws."  (*Id.* ¶ 28.)

The TAC asserts infringement of exemplary claim 118 of the '543 patent, a different claim than that asserted in the SAC.[4]  (*Compare* ECF No. 84 ¶ 131 (asserting claim 118), *with* ECF No.

---

[2]      The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

[3]      WinView previously also alleged infringement of U.S. Patent Nos. 9,878,243 (the '243 patent) and 9,930,730 (the '730 patent), but those claims have been dismissed.  (ECF No. 68.)

[4]      The claim pertinent to the alleged infringement of the '988 patent also differs from the one at issue in the SAC, but DraftKings does not move to dismiss WinView's direct infringement claim for this patent.  (*Compare* ECF No. 84 ¶ 179 (asserting exemplary claim 64 of the '988 patent), *with* ECF No. 79 at 3-4 (noting that the SAC asserted claim 1 of the '988).)  The '988 patent identifies "[a] method and system for conducting multiple competitions of skill for a single performance[.]"  (ECF No. 84-1 at 25 ('988 patent abstract).)  Claim 64 of the '988 patent details "[a] method programmed in a memory of a device" where (1) the device generates a list of multiple contests to join, (2) those contests or skill or chance are presented to users, (3) users input information including event selections and which contest a user would like to engage in, and (4)

79 at 2-3 (noting that the SAC asserted claims 1 and 9).)[5]  The '543 patent details a "method of and system for enabling a distributed entertainment system over a computing device" where "the entertainment system is directly correlated to live events or televised programs[.]"  (ECF No. 84-1 at 1.)  Claim 118 of the '543 patent provides the following:

> A method implemented on a server device comprising:
>
>> sending a set of service related information related to a location of the mobile Internet-connected computing device to an activity client, wherein the location determines the set of service related information to be loaded;
>>
>> receiving a selection of a service from the activity client to be utilized by a user;
>>
>> sending a set of service-specific information related to the service to the mobile Internet-connected computing device including:
>>
>>> sending a list of assets to the mobile Internet-connected computing device;
>>>
>>> comparing the list of assets with a first set of assets;
>>>
>>> sending only a second set of assets within the list of assets that are not already resident on the mobile Internet-connected computing device, wherein the second set of assets are grouped into a set of necessary assets and a set of preferred assets; and
>>
>> executing an application related to the service within the activity client on the mobile Internet-connected computing device.

(ECF No. 84-1 at 20-21; ECF No. 84 ¶ 131.)

---

results and standings are stored based on user event selections, and (5) standings are transmitted to users.  (*Id.* at 42, 18:14-33.)

[5]     Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

The TAC alleges that five of DraftKings' products infringe upon WinView's patents: DraftKings Sportsbook and Casino, DraftKings Casino, DK Horse, Daily Fantasy, and Pick6 (the Accused Products). (*Id.* ¶ 44.) DraftKings Casino, DK Horse, and Pick6 are described for the first time in the TAC. The TAC alleges that DraftKings Casino offers "a full suite of games available in brick-and-mortar casinos, such as blackjack, roulette, baccarat, and slot machines," (*id.* ¶ 69), DK Horse offers betting on horse races with the same functionality as DraftKings Sportsbook and Casino, (*id.* ¶ 62), and Pick6 "is an online gaming platform that allows users to participate in peer-to-peer fantasy sports games where participants create a lineup of 2 to 6 athletes from a single sport and predict whether each athlete will outperform their statistical projections," (*id.* ¶ 82).

The method detailed in claim 118 of the '543 patent outlines communication of information to a web product user. The method comprises (1) sending service-related information to a user, where the information sent is based on the geographic location of the user, (2) receiving a selection of service from the user, (3) sending service-related information specific to the user's selection to the user's device, including (a) an initial list of assets, (b) comparing that list with a "first set" of assets, and (c) sending to the user an additional "second set of assets" that were not already sent to the user's device, grouped into sets of "necessary" and "preferred" assets, and (4) executing an application related to the service selected. (ECF No. 84-1 at 20-21.) The TAC asserts that DraftKings performs this method on a server device that interacts with users on DraftKings' app or website. (ECF No. 84 ¶ 133.) The TAC asserts that the Accused Products use this method to operate, alleging: (1) DraftKings sends service-related information, determined by user location, to user devices, (2) users select service, (3) based on the user selection, DraftKings sends back information related to the selected service including (a) a list of current live gaming events and promotions, (b) continuous communications to the user's device throughout the selected service,

comparing additional lists of assets to the existing list of assets on the user's device, (c) additional sets of assets not previously received by the consumer, and (4) DraftKings executes these services on its applications and the user's internet-connected devices. (*Id.* ¶¶ 135, 139, 141, 142-148.)

Previously, DraftKings sought to dismiss WinView's claims in the SAC for patent infringement in relation to the '543 patent and the '988 patent. (*See* ECF No. 70.) The Court determined that, when viewing the allegations in the light most favorable to Plaintiff, the SAC failed to state claims for direct infringement of the '543 patent, willful infringement of the '543 and '988 patents, and induced and contributory infringement as to the '543 and '988 patents, and dismissed these claims without prejudice. (ECF No. 79 at 12, 16, 22.) The Court found that WinView's claim for direct infringement of the '988 patent should proceed. (*Id.* at 16 n.11.) The Court permitted WinView to file an amended complaint in accordance with Local Rule 15.1, (*id.* at 24), which WinView filed on August 11, 2025 (ECF No. 84). On September 26, 2025, DraftKings filed the instant Motion to Dismiss. (ECF No. 109.)

## II.   **LEGAL STANDARD**

"Generally, district courts adjudicating patent cases apply the substantive law of the Federal Circuit." *NovaPlast Corp. v. Inplant, LLC*, Civ. No. 20-7396, 2021 WL 5770264, at *4 (D.N.J. Dec. 6, 2021) (quoting *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012)). However, "[t]he standard governing [the] grant or denial of a Rule 12(b)(6) motion[] . . . 'is a purely procedural question not pertaining to patent law,' to which this court, and the Federal Circuit on review, applies the rule of the regional circuit." *Id.* (quoting *C&F Packing Co. v. IBP, Inc.*, 224 F.3d 1296, 1306 (Fed. Cir. 2000)). Therefore, the Court will apply Rule 12(b)(6) precedent from the United States Court of Appeals for the Third Circuit for purposes of deciding this Motion.

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether

the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Dir. of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "'A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (internal quotations omitted) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim[.]" *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

In the context of patent infringement, while "[a] plaintiff is not required to plead infringement on an element-by-element basis," a plaintiff "cannot assert a plausible claim . . . by reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352-53 (Fed. Cir. 2021). Rather, "[t]here must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.* at 1353. Moreover, while "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . it [is also true] that [s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (cleaned up). Importantly, "[t]he level of detail required in any given case will vary depending upon a number of factors, including the complexity of the

6

technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Id.*

## III.    DISCUSSION

The TAC asserts direct infringement, willful infringement, induced infringement and contributory infringement for the '543 and '988 patents. (*See* ECF No. 84 ¶¶ 123-211.) DraftKings moves to dismiss all claims relating to the '543 patent and all willful infringement, induced and contributory infringement claims for the '988 patent. (ECF No. 109 at 2.) The Court addresses each challenge in turn.

### A.    Direct Infringement of the '543 Patent

The Court finds that the TAC plausibly pleads a claim for direct infringement of the '543 patent. "To prove direct infringement, [a plaintiff] 'must either point to specific instances of direct infringement or show that the [accused product] necessarily infringes the patent in suit.'" *NovaPlast Corp.*, 2021 WL 5770264, at *5 (quoting *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007)). Accordingly, a plaintiff "must identify [a] [d]efendant['s] products which allegedly infringe the [patent asserted], describe the alleged infringement, and 'relate factual assertions to the pertinent claims' of the [asserted patent]." *Id.* (quoting *Robern, Inc. v. Glasscrafters, Inc.*, 206 F. Supp. 3d 1005, 1011 (D.N.J. 2016)).

DraftKings argues that the Court should at least dismiss "WinView's allegation of patent infringement against DraftKings Pick6, DraftKings Casino, and DK Horse, which the [TAC] accuses for the first time" because WinView omits allegations necessary to state a claim of infringement of the '543 patent for these products. (ECF No. 109-1 at 15-16, 20-25.) In the alternative, DraftKings argues more broadly that WinView's direct infringement claim for the '543 patent should be dismissed in its entirety. (*Id.* at 15-20.) DraftKings argues that WinView has not cured the deficiencies that led to the prior dismissal and that despite asserting a different claim of

7

the '543 patent, WinView does not adequately plead facts supporting that DraftKings' Accused Products perform an element necessary to that claim, namely that when a second set of assets is sent to a user device, those "assets are grouped into a set of necessary assets and a set of preferred assets," which DraftKings refers to as the "grouping limitation." (*Id.* at 15 (quoting '543 patent).)

In response, WinView argues that it "was not required to provide additional discussions of Pick6, DraftKings Casino, and DK Horse because there is no requirement that a complaint discuss every accused product with respect to every limitation in order to state a patent infringement claim." (ECF No. 119 at 14.) WinView argues that the TAC states a plausible claim that DraftKings infringes the '543 patent "by providing detailed factual allegations identifying DraftKings' infringing products and describing on an element-by-element basis how they meet the limitations of exemplary [c]laim 118." (*Id.* at 10.)

The Court will address each of DraftKings' arguments in turn.

### 1. Infringement Allegations Against DraftKings Casino, DK Horse and Pick6 Products

DraftKings argues that the infringement allegations as to three of the Accused Products—DraftKings Casino, DK Horse and Pick6—should be stricken as they impermissibly expand this case. (ECF No. 109-1 at 20-25.) DraftKings also argues that WinView's allegations with respect to these three Accused Products should be dismissed for failure to state a claim. (*Id.* at 21.) WinView responds that the TAC does not impermissibly expand the scope of this case as there is no requirement to detail every infringing product in the complaint, and that the TAC plausibly alleges that these Accused Products infringe the '543 patent. (ECF No. 119 at 12-14, 15-16.) The Court finds that WinView has plausibly pled infringement of the '543 patent by these three Accused Products.

As is relevant here, the Court previously dismissed WinView's claim for direct infringement of the '543 patent (ECF No. 80 ¶ 2) because the SAC "center[ed] its infringement allegations around claims that have been deemed unpatentable *and* fail[ed] to provide an additional description of how the accused products infringe the claimed invention" (ECF No. 79 at 15 (emphasis added)). The TAC alleges direct infringement of exemplary claim 118 of the '543 patent, a claim that has not been deemed unpatentable. It also details the alleged infringement of claim 118 by reference to and descriptions of the workings of DraftKings' Accused Products. (*See* ECF No. 84 ¶¶ 123-155.) DraftKings cites no persuasive authority in support of its contention that it is impermissible to assert a new claim of an allegedly infringed-upon patent and corresponding products by way of an amended complaint.[6] (*See* ECF No 109-1 at 20-21.)

DraftKings also argues that the TAC does not allege sufficient facts as to the Accused Products to provide fair notice of infringement. (ECF No. 109-1 at 15-20.) Courts have found that "providing 'specific examples of at least one product [the defendant] manufactures or sells that contains mechanisms or processes performing the identified functions, and specific examples of the class of products which also contain' the identified functions" sufficiently provided notice to satisfy the pleading requirements under Rule 12(b)(6). *Promos Techs., Inc. v. Samsung Elecs. Co.*, Civ. No. 18-307, 2018 WL 5630585, at *3 (D. Del. Oct. 31, 2018) (quoting *Philips v. ASUSTeK Computer Inc*, Civ. No. 15-1125, 2016 WL 6246763, at *4 (D. Del. Oct. 25, 2016)). WinView has plausibly alleged that the five Accused Products it identifies in its TAC—including

---

[6]     The only case DraftKings cites in support of this proposition is *In re Synchronoss Techs., Inc. Sec. Litig.*, Civ. No. 17-7173, 2021 WL 1712394, at *10, n.4 (D.N.J. Apr. 30, 2021). (ECF No. 109-1 at 21.) *Synchronoss* is inapposite. First, it does not concern patent infringement. Second, even though the court there noted that permitting the plaintiff to re-allege some allegations "was not intended to be carte blanche for [the p]laintiff to incorporate new claims," the court still considered the new claim the plaintiff asserted. *Id.* at *10 n.4. This Court will do the same.

the three products DraftKings disputes—are part of a "class" and that all the Accused Products directly infringe claim 118 of the '543 patent.

The TAC describes all five Accused Products and their functionalities that allegedly infringe the '543 patent. *See Telebrands Corp. v. Ragner Tech. Corp.*, Civ. No. 15-3163, 2016 WL 11654380, at *5 (D.N.J. Aug. 25, 2016) (finding pleading standard satisfied where pleading included "allegations that describe the accused products" and "the functionalities of those products that allegedly infringe the [] patent, that the accused products meet claims of the [] patent, and that [defendant's] products practice one or more claims of the [] patent"). WinView describes the five Accused Products in detail, (*see* ECF No. 84 ¶¶ 53-60 (DraftKings Sportsbook and Casino); *id.* ¶¶ 61-66 (DK Horse); *id.* ¶¶ 67-72 (DraftKings Casino); *id.* ¶¶ 73-81 (DraftKings Daily Fantasy); *id.* ¶¶ 82-84 (DraftKings Pick6)), and alleges that all five Accused Products infringe upon the '543 patent (*id.* ¶ 124). Contrary to what DraftKings argues (*see* ECF No. 121 at 7), WinView alleges more commonalities than simply that the Accused Products are "gambling products." The TAC alleges that all the Accused Products share certain characteristics: they all operate through servers communicating with user devices, continuously monitor the location of those devices to ensure compliance with state laws, and are hosted on cloud-based platforms like Amazon Web Services. (ECF No. 84 ¶¶ 50-52, 93-94.) The TAC also alleges that "[t]he Accused Products are all integrated, allowing customers to use the same user accounts and cash deposits across the Accused Products and to seamlessly switch between them." (*Id.* ¶ 88.) In addition, the TAC explicitly alleges that "for purposes of infringement, the relevant functionality in DK Horse and DraftKings Sportsbook and Casino is the same" and "service-related information provided [to a user by DraftKings' software] may also include DraftKings' different sports offerings and product

10

offerings, such as DraftKings Casino, DraftKings Sportsbook and Casino, Daily Fantasy, and Pick6, with links to the various services a user may select[.]" (*Id.* ¶¶ 62, 140.)

After describing the Accused Products and their commonalities, the TAC then describes in more detail the allegedly infringing functionality of these products. (*Id.* ¶¶ 131-150.) The TAC alleges that like the method detailed in claim 118, DraftKings performs the method on a server that interacts with the app or website for the Accused Product being used by a consumer. (*Id.* ¶ 133.) DraftKings sends service-related information, determined by the user location, to user devices. (*Id.* ¶ 135.) Using DraftKings Sportsbook as an example, the TAC alleges that DraftKings determines the geographic location of user devices and then offers different content between states based on their respective laws governing sports betting. (*Id.* ¶ 136.) The user then selects a service, and that information is sent back to DraftKings. (*Id.* ¶ 139.) DraftKings then sends back information related to the selected service, including a list of assets. (*Id.* ¶ 141.) DraftKings then continuously compares and sends additional lists of assets to users' devices as they use the selected service, comparing the potential assets with those already on a user's device so that it is only sending lists with new assets. (*Id.* ¶ 142.) Using sports betting as an example, the TAC alleges that during a live gaming event that a consumer had selected to bet on, DraftKings would continuously send assets to a user's device relating to statistics and betting information. (*See id.* ¶¶ 142-148.)

While describing DraftKings Sportsbook specifically, the TAC also pleads facts explaining how this functionality works for the other Accused Products as well.[7] (*Id.* ¶ 136 (describing how

---

[7]    Regarding the DraftKings Casino product specifically, DraftKings argues that the TAC distinguishes between this product (an "iGaming" product) and the other four Accused Products, which are sports betting products and as such, "WinView's allegations regarding sport[s] betting cannot state a claim for infringement by DraftKings Casino, which the [TAC] itself acknowledges does not involve sports betting." (ECF No. 109-1 at 23-24.) DraftKings' argument does not

DraftKings Sportsbook uses location data shared from users' devices to its servers to inform what service-related information DraftKings is sending to a user's device); *id.* ¶ 137 (describing how that same location data is used by DraftKings Casino).)  Accepting all factual allegations in the TAC as true and construing the TAC in the light most favorable to WinView, the Court finds that WinView has alleged facts sufficient to provide DraftKings fair notice of the alleged infringement regarding the DraftKings Casino, DK Horse and Pick6 Products.  The TAC parallels the pleadings of other exemplary products which have been found sufficient to satisfy Rule 12(b)(6).  *See, e.g.*, *Promos*, 2018 WL 5630585, at *3 ("The identified product is a specific example of the class of products . . . which [p]laintiff alleges also contain the identified functions. . . . Therefore, [p]laintiff's identification of infringing products and methods is sufficient under Rule 12(b)(6)."); *Philips*, 2016 WL 6246763, at *4 (finding it sufficient that the plaintiff "provides specific details of at least one of the method and device claims allegedly infringed under each patent-in-suit, specific examples of at least one product [defendant] manufactures or sells that contains mechanisms or processes performing the identified functions, and specific examples of the class of products which also contain these Accused Functionalities.") (citations omitted).

---

account for the functionalities alleged to be shared between all Accused Products, such as their integration, server operation, location monitoring and cloud hosting.  (ECF No. 84 ¶¶ 50-52, 88, 93-94.)  Additionally, like the other four Accused Products, the TAC alleges that DraftKings Casino is based on live events, which all the methods described in the '543 patent engage with.  (ECF No. 84-1 at 2 (abstract for '543 patent, specifying that the present invention "implement[s] a distributed entertainment system wherein the entertainment system is directly correlated to live events or televised programs"); ECF No. 84 ¶ 69 ("Most of the games [on DraftKings Casino] are based on streamed computer simulations and others offered with live dealers."); *id.* ¶¶ 56-58 (alleging DraftKings Sportsbook and Casino offers live in-game betting); *id.* ¶ 64 ("DK Horse allows users to bet on horseracing and live stream the races."); *id.* ¶ 74 ("DraftKings Daily Fantasy allows users to create fantasy sports lineups for various professional leagues . . . [e]ach of these sports has contests where users select lineups to compete based on athletes' real-world performance."); *id.* ¶ 82 (Pick6 "allows users to participate in peer-to-peer fantasy sports games where participants create a lineup of 2 to 6 athletes from a single sport and predict whether each athlete will outperform their statistical projections").)

### 2.    *Infringement Allegations Regarding Claim 118 of the '543 Patent*

In the alternative, DraftKings argues that total dismissal of this claim is warranted because WinView has failed to provide fair notice of its infringement claim with respect to the '543 patent. (ECF No. 109-1 at 16-20.)    Specifically, DraftKings argues that WinView fails to allege infringement of claim 118 by failing to plead a limitation in that claim.    (*Id.* at 17; ECF No. 84 ¶ 131 (an element of the claim requiring "sending only a second set of assets within the list of assets that are not already resident on the mobile Internet-connected computing device, wherein the second set of assets are grouped into a set of necessary assets and a set of preferred assets," termed the "grouping limitation")  DraftKings argues that WinView does not allege any of the Accused Products send a second users a set of assets grouped into sets of necessary and preferred assets and thus does not fulfill its obligation to provide DraftKings with fair notice of how the Accused Products plausibly infringe the '543 patent. (*See* ECF No. 109-1 at 16-20.)

"A plaintiff is not required to plead infringement on an element-by-element basis. . . . Instead, it is enough 'that a complaint place the alleged infringer on notice of what activity . . . is being accused of infringement.'"    *Bot M8*, 4 F.4th at 1352 (internal citations and quotations omitted) (quoting *Lifetime Indus., Inc. v. Trim-Lok, Inc*., 869 F.3d 1372, 1379 (Fed. Cir. 2017)). The Court dismissed WinView's SAC because WinView identified the Accused Products but did "not sufficiently describe[] the alleged infringement or related factual assertions to the pertinent claims of the '543 patent. . . . [T]here [we]re no allegations that make the connection as to how the accused product infringes any other pertinent claims of the '543 patent." (ECF No. 79 at 12-13.) The Court finds that the TAC does not suffer from the same deficiency.

Relevant to the grouping limitation, the TAC alleges that "DraftKings continuously communicates with customers' devices that are running the '543 Accused Products in order to provide information" and "DraftKings send[s] lists of assets to users' devices which can be

13

compared to the existing list of assets on the device or subsequent lists that are generated on the device, as shown in the screenshot below." (ECF No. 84 ¶ 142.) Additionally, the TAC specifies that "[i]n the course of providing these updates, DraftKings sends only assets that are not already resident on the customer's device." (*Id.* ¶ 147.) The TAC alleges that this second list of assets can include "real-time game statistics and betting information" including "updates with game statistics, such as score, batting information, inning information, and betting information" or "updated moneyline odds, and pitch results odds[.]" (*Id.* ¶¶ 142, 145, 148.) Although the TAC does not specify which assets are necessary or preferred, WinView argues that "[s]ending both necessary and preferred data satisfies the [g]rouping [l]imitation, which is more than sufficient at the pleading stage to state a claim." (ECF No. 119 at 11.) The Court agrees, and finds that the TAC provides DraftKings fair notice of the functionality of its products alleged infringement of claim 118 of the '543 patent.

It is undisputed that the grouping limitation is material to claim 118 of the '543 patent. (*See* ECF No. 121 at 6.) While the level of detail required in a pleading varies depending on the complexity of the patented technology and the materiality of any given element, this does not disturb the overarching rule that "[a] plaintiff is not required to plead infringement on an element-by-element basis." *Bot M8*, 4 F.4th at 1352; *see also Phonometrics, Inc. v. Hosp. Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000) ("The Rule 12(b)(6) pleading requirements for a complaint of infringement cannot be extended to require a plaintiff to specifically include each element of the claims of the asserted patent."). "[I]n matters involving complex technology, the plaintiff 'must show *how* the defendant plausibly infringes by alleging some facts connecting the allegedly infringing product to the claim elements.' To satisfy this standard, '[t]here needs to be something set out beyond a legal conclusion—*i.e.*, some facts alleged that shows why it is plausible that the

14

products infringe[.]'" *Biotech v. Amgen, Inc.*, Civ. No. 22-35, 2024 WL 1299930, at *3 (D. Del. Mar. 27, 2024) (emphasis in original) (first quoting *Bos. Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 489 (D. Del. 2019); then quoting *DIFF Scale Operation Rsch., LLC v. MaxLinear, Inc.*, Civ. No. 19-2109, 2020 WL 2220031, at *2 (D. Del. May 7, 2020), *report and recommendation adopted*, 2020 WL 6867103 (D. Del. Nov. 23, 2020)).

DraftKings cites case law where motions to dismiss rose and fell based on whether the complaint specifically addressed patent claim elements, arguing that these cases dictate that DraftKings' Motion must be granted due to WinView's failure to allege every single claim element. (ECF No. 109-1 at 20 (citing *Miller Indus. Towing Equip. Inc. v. NRC Indus.*, 582 F. Supp. 3d 199, 204 (D.N.J. 2022) (denying motion to dismiss because "the Complaint sufficiently sets forth how the accused product infringed on every element of at least one claim in each of the plaintiff's patents") (quotation omitted); *Uniloc 2017 LLC v. Zenpayroll, Inc.*, Civ. No. 19-1075, 2021 WL 271800, at *4 (D. Del. Jan. 27, 2021) (recommending a grant of dismissal because the complaint "fails to plausibly allege facts that the accused [infringing product] includes [elements of the asserted patent claim] beyond the bare recitation that the alleged [infringing product] comprises [the specified elements of the claim]"); *NovaPlast Corp.*, 2021 WL 389386, at *8 (granting motion to dismiss because complaint "fails to allege factually that each and every element of at least one claim is met").)  But these cases are distinguishable.  *NovaPlast* and *Miller* rely on the Federal Circuit's decision in *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256 (Fed. Cir. 2018). *See NovaPlast*, 2021 WL 389386, at *7-8 (quoting *Disc Disease*); *Miller*, 582 F. Supp. at 204-05 (first quoting *Batinkoff v. Church & Dwight Co.*, 2020 WL 1527957, at *15 (D.N.J. Mar. 31, 2020) (quoting *Disc Disease*); then quoting *NovaPlast Corp.*, 2021 WL 389386 at *7).  In *Disc Disease*, the Federal Circuit held that in the context of a case involving a "simple technology" with only

15

four independent claims, a plaintiff plausibly pled infringement when it specifically identified the accused products, and "alleged that the accused products me[t] 'each and every element of at least one claim[.]'" 888 F.3d at 1260. As alleged, the technology here is not so simple, the '543 patent includes over 100 claims. (*See* ECF No. 79 at 15.) And in *Uniloc*, the court disclaimed that "'the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met,' and a patent infringement plaintiff need not 'prove its case at the pleading stage'" but recommended dismissal because the complaint only included conclusory allegations and lacked allegations connecting the allegedly infringing product to the claim elements. *See* 2021 WL 271800, at \*3-4 (quoting *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018)). Here, by contrast, WinView has provided detailed allegations of how the Accused Products function and communicate service-related information to users' devices, directly infringing upon the method outlined in claim 118.

Courts have found dismissal unwarranted where a complaint "connects elements from the [allegedly infringed patent] to elements of [the defendant's] accused product . . . [because] the complaint puts [the defendant] on notice as to what activity is being accused and how that activity infringes the [] Patent." *Biotech*, 2024 WL 1299930, at \*4[8]; *see also Woodstream Corp. v. Bird*

---

[8] DraftKings attempts to distinguish *Biotech* by arguing that in *Biotech*, "[the defendant] did not argue that the missing limitation was a material functionality, or that the complaint itself touted the materiality of that missing limitation, as here." (ECF No. 109-1 at 19.) However, "[b]oth [the Federal Circuit] and the Supreme Court have made clear that all elements of a patent claim are material, with no single part of a claim being more important or 'essential' than another." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 988 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996); *see also ArcelorMittal Atlantique et Lorraine v. AK Steel Corp.*, 908 F.3d 1267, 1276 (Fed. Cir. 2018) ("It is well established that '[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention.'") (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997)); *Two-Way Media Ltd v. Comcast Cable Commc'ns, LLC*, Civ. No. 14-1006, 2015 WL 2345432, at \*4 (D. Del. May 13, 2015) (holding when considering a motion to dismiss that "[e]ach element contained in a patent claim [of a method patent] is deemed material to defining the scope of the patented invention") (second alteration in

16

*Buddy, Inc.*, Civ. No. 24-01236, 2025 WL 2432506, at *4 (D. Del. Aug. 22, 2025) ("Even under the materiality consideration espoused in *Bot M8*, plaintiffs' complaint presented 'a higher level of detail in pleading infringement.' . . . [p]laintiffs did much more than 'nakedly alleg[e] that the accused product practices the claimed invention's point of novelty.' Thus, defendant was given 'fair notice of what the claim is and the grounds upon which it rests.'") (internal citations omitted) (first quoting *Vervain, LLC v. Micron Tech., Inc.*, Civ. No. 21-00487, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022); then quoting *Bot M8*, 4 F.4th at 1353); *Staton Techiya, LLC v. Harman Int'l Indus., Inc.*, 734 F. Supp. 3d 354, 373 (D. Del. 2024) ("The allegations meet the *Iqbal/Twombly* standard by identifying the infringing accused product [] and the specific functionality that is infringing . . . . The lack of the words [specified in the patent claim limitation] is not detrimental to the sufficiency of the pleading of the allegations, as [the plaintiff] does not need to plead every single element for its claim."); *Olink Proteomics AB v. Alamar Biosciences, Inc.*, Civ. No. 23-1303, 2025 WL 275604, at *9 (D. Del. Jan. 23, 2025) (granting motion to dismiss where complaint did not plead that the accused product practiced a limitation outlined in the patent but noting "[p]erhaps if [plaintiff's] [c]omplaint had clearly asserted infringement as to all of the *remaining limitations* in [the claim], then drawing all reasonable inferences in [plaintiff's] favor, it would be plausible to come to a different conclusion."), *report and recommendation adopted,* Civ. No. 23-1303, 2025 WL 459697 (D. Del. Feb. 11, 2025) (emphasis in original).

_____

original) (citation omitted). Although the *Biotech* court did not explicitly note that the "missing limitation" there was material, all elements of a patent claim are material to defining the invention's scope. Further, even though the plaintiff did not allege facts regarding that limitation, the *Biotech* court denied the defendant's motion to dismiss on that count because "[the plaintiff] is not required to establish every element of [the claim] to survive dismissal" and even without pleading facts regarding the aforementioned limitation, "the [c]omplaint connects elements from the [p]atent to elements of [the defendant's] accused product. The [c]ourt finds that, by doing so, the [c]omplaint puts [the defendant] on notice as to what activity is being accused and how that activity infringes the [p]atent." *Biotech*, 2024 WL 1299930, at *4.

17

Here, WinView has put DraftKings on notice of how its Accused Products are alleged to infringe upon the method in claim 118.  It has done more than "nakedly allege" infringement.  *See Woodstream Corp.* 2025 WL 2432506, at *4.  The TAC runs through the method enumerated in claim 118, alleging that for the Accused Products: (1) DraftKings sends service-related information, determined by the users' location, to users' devices, (2) users select service, (3) DraftKings sends back service-specific information including a first list of assets, compares that list with a second set of assets, and sends a second set of assets not previously received by the user.  (ECF No. 84 ¶¶ 135, 139, 141-148.)  Although WinView does not allege that DraftKings groups this second set of assets as outlined in claim 118, this omission is not fatal.  *Staton Techiya, LLC*, 734 F. Supp. 3d at 373 ("The lack of the words [specified in the patent claim limitation] is not detrimental to the sufficiency of the pleading of the allegations, as [the plaintiff] does not need to plead every single element for its claim."); *see also Nasdaq, Inc. v. IEX Grp., Inc.*, Civ. No. 18-3014, 2019 WL 102408, at *12 (D.N.J. Jan. 4, 2019) (finding complaint sufficiently provided defendant with notice of alleged infringement and holding that "[t]o the extent [defendant] argues the [c]omplaint does not specify the precise methods [defendant] use[s] in its infringing device, at this stage of the litigation, all [plaintiff] has access to is [defendant]'s public statements, which it used to fashion the [c]omplaint. The specifics of how [defendant]'s purportedly infringing device works is something to be establish[ed] through discovery.").  Therefore, WinView's direct infringement claim as to the '543 patent shall proceed.[9]

---

[9]   DraftKings does not move to dismiss WinView's direct infringement claim as to the '988 patent, which the Court previously held shall proceed.  (ECF No. 79 at 16 n.11.)

18

### B.      Willful Patent Infringement

DraftKings argues that the Court should dismiss WinView's claim for willful infringement for both the '543 and '988 patents because neither the pre-suit nor post-suit knowledge alleged in the TAC is sufficient to state a claim.  (ECF No. 109-1 at 25-33.)  The Court agrees.

To sustain an allegation of willful infringement, WinView "must allege facts plausibly showing that as of the time of the claim's filing, [DraftKings]: (1) knew of the [patents]; (2) after acquiring that knowledge, it infringed the [patents]; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the [patents]."  *NovaPlast Corp.*, 2021 WL 5770264, at *9 (quoting *Batinkoff*, 2020 WL 1527957, at *19).  The third element, that the defendant knew or should have known its conduct amounted to infringement, speaks to "a finding of 'deliberate or intentional' infringement," which is necessary for a claim of willful infringement. *Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*, 801 F. Supp. 3d 495, 522 (D. Del. 2025) (quoting *Purewick Corp. v. Sage Prods., LLC*, 666 F. Supp. 3d 419, 440 (D. Del. 2023)); *see also Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021) ("[W]illfulness requires deliberate or intentional infringement.").  "'[W]here a complaint permits an inference that the defendant was on notice of the potential infringement and still continued its infringement, the plaintiff has pled a plausible claim of willful infringement.'"  *Nasdaq, Inc.*, 2019 WL 102408, at *14 (quoting *Kyowa Hakka Bio, Co. v. Ajinomoto Co.*, Civ. No. 17-313, 2018 WL 834583, at *13 (D. Del. Feb. 12, 2018)).

The TAC alleges that the '543 patent was issued on July 21, 2020, and that "DraftKings became aware of the '543 patent and aware that its activities concerning the '543 Accused Products infringed the '543 patent no later than upon its issuance on July 21, 2020."  (ECF No. 84 ¶ 152.) The TAC alleges that the '988 patent was issued on October 20, 2020, and that "DraftKings became aware of the '988 patent and aware that its activities concerning the '988 Accused Products

19

infringed the '988 patent no later than upon its issuance on October 20, 2020." (*Id.* ¶ 197.)  The TAC further asserts that from January to March 2019, WinView and DraftKings engaged in discussions about WinView's intellectual property and signed a nondisclosure agreement (NDA) "for purposes of 'pursuing a potential transaction between [the] parties[.]'" (*Id.* ¶¶ 105-114.)  The TAC alleges that DraftKings "investigated WinView and its business . . . including its patents," and WinView shared confidential information with DraftKings, including "confidential PowerPoint presentations, operating information, and relevant patent information" and "specifically identified the respective parent patent applications for the asserted '543 and '988 Patents." (*Id.* ¶¶ 111-112.)  But as noted in this Court's prior Opinion, these allegations are insufficient to assert a claim for willful infringement because they predate the issuance of both patents.  (ECF No. 79 at 17-18.)

As the Federal Circuit has articulated, "[i]t is obvious that a party cannot be held liable for 'infringement', and thus not for 'willful' infringement, of a nonexistent patent[.]" *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990).  "To willfully infringe *a patent,* the patent must exist and one must have knowledge of it. A 'patent pending' notice gives one no knowledge whatsoever. . . . What the scope of claims in patents that do issue will be is something totally unforeseeable." *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) (emphasis in original).  "Filing an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents." *NexStep, Inc. v. Comcast Cable Commc'ns, LLC*, Civ. No. 19-1031, 2019 WL 5626647, at *3 (D. Del. Oct. 31, 2019), *report and recommendation adopted sub nom. Nexstep, Inc. v. Comcast Cable Commc'n, LLC*, Civ. No. 19-1031, 2019 WL 11663798 (D. Del. Nov. 15, 2019) (quoting *Robocast, Inc. v. Microsoft Corp.*, 21 F. Supp. 3d 320, 334 (D. Del. 2014)).

The allegations that DraftKings had knowledge of the family members of the '543 and '988 patents, standing alone, are also insufficient to plead knowledge of the patents-at-issue. (ECF No. 84 ¶ 112.) "Although 'alleged knowledge of patent family members and related patents, along with other allegations, can be sufficient to overcome a motion to dismiss,'" the complaint must also include "other allegations." *Cleveland Med. Devices Inc. v. ResMed Inc.*, 696 F. Supp. 3d 4, 11 (D. Del. 2023) (quoting *Elm 3DS Innovations, LLC v. Samsung Elecs. Co.*, Civ. No. 14-1430, 2015 WL 5725768, at *3 (D. Del. Sept. 29, 2015), *report and recommendation adopted* 2016 WL 1274812 (D. Del. Mar. 31, 2016)). For example, in *Novozymes North America, Inc. v. Danisco US Inc.*, the court found defendant's knowledge of the patent at issue was sufficiently pleaded because not only did plaintiff allege that defendant had knowledge of patent family members and related patents, plaintiff also alleged that defendant was informed of plaintiff's published patent application on three separate occasions during the prosecution of defendant's own patents and defendants attended a workshop were plaintiff presented on the patent after it had issued. Civ. No. 19-01902, 2020 WL 12895027, at *2-3 (D. Del. Feb. 12, 2020). The TAC does not include "other allegations" that, when coupled with the plausible allegation that DraftKings had knowledge of patent family members, lead to the inference that DraftKings had the requisite knowledge of the '543 and '988 patents.

The TAC's allegation that WinView "widely disclosed" the asserted patents to the "online gaming industry" and issued press releases also do not lead to a plausible inference that DraftKings knew of the asserted patents and knew or should have known its conduct infringed the patents. (*See* ECF No. 84 ¶¶ 103-104.) Plaintiffs "may not depend on conclusory allegations to state a willfulness claim." *Cleveland Med. Devices Inc.*, 696 F. Supp. 3d at 11. "[T]he simple fact that [defendant] and [plaintiff] are competitors," without more, is "insufficient to state a plausible claim

21

based on pre-suit knowledge of the [patent]." *Novozymes North America, Inc.*, 2020 WL 12895027, at *3. WinView makes these cursory allegations only twice in the TAC, citing exhibits that predate the patent applications and the patents issuing by several years. (ECF No. 84 ¶¶ 103-104 (citing to ECF No. 84-5 at 64-66 (website dated 2015) and 73-78 (press release dated 2017)).) An allegation of "media publicity surrounding an invention does not support an allegation of pre-suit knowledge absent allegations 'bridging' knowledge of the publicity with knowledge of the patent." *Robocast, Inc. v. YouTube, LLC*, Civ. No. 22-304, 2022 WL 16922035, at *3 (D. Del. Nov. 14, 2022) (quoting *PPG Indus. Ohio, Inc. v. Axalta Coating Sys., LLC*, Civ. No. 21-346, 2022 WL 610740, at *4 (D. Del. Jan. 26, 2022)). WinView's general allegation that it "regularly updated [its] website, disclosing the [a]sserted [p]atents as they issued" (ECF No. 84 ¶ 103), is insufficient. *See Lippert Components Mfg., Inc. v. MOR/ryde, Inc.*, Civ. No. 16-263, 2018 WL 345767, at *2 (N.D. Ind. Jan. 10, 2018) (finding knowledge insufficiently pled when plaintiff alleged it "maintained a list of its patents on a website and the parties are competitors who monitor each other's intellectual property").

Contrary to WinView's arguments in its opposition brief (ECF No. 119 at 21-23), the TAC does not allege that DraftKings monitored or investigated WinView and its patent portfolio post-2019, that it was informed patents had issued in 2020, or that it monitored WinView's patent portfolio post-issuance in 2020. The lack of such allegations distinguishes the present matter from those cases cited by WinView, (*id.* at 22-23), where courts found knowledge of the asserted patents sufficiently pled due to allegations that defendants monitored the plaintiff's patent portfolios. *See VoIP-Pal.com, Inc. v. Facebook, Inc.*, Civ. No. 21-00665, 2022 WL 1394550, at *3 (W.D. Tex. May 3, 2022) (finding defendant's knowledge of the asserted patents could be inferred where "the [a]mended [c]omplaint relie[d] on the [pre-suit] notice letters that identify the [first p]atent and a

22

patent application that ultimately led to the [second p]atent in further combination with monitoring of that patent application, resulting in knowledge of the [second p]atent on or after the issuance date"); *Technoprobe S.p.A. v. Formfactor, Inc.*, Civ. No. 23-00842, 2024 WL 2271885, at *7 (D. Del. May 20, 2024) (concluding "that the [a]mended [c]omplaint alleges facts plausibly showing that [the d]efendant, through actively attending [the p]laintiff's [ . . . c]onference presentation and continuing to promote and sell the [a]ccused [p]roducts thereafter, was aware of the [asserted p]atent and its potential infringement sufficient to support a pre-suit willful infringement claim.").

Even assuming that DraftKings did have notice of the patents-in-suit, the TAC lacks sufficient allegations for this Court to infer that DraftKings knew or should have known that its conduct amounted to infringement. *See NovaPlast Corp.*, 2021 WL 5770264, at *9. WinView again alleges that "[i]n late 2020, after both the Asserted Patents had issued, WinView again proposed that DraftKings enter into a relationship with WinView. DraftKings declined to participate in such discussions." (ECF No. 84 ¶ 115.) Although the TAC now clarifies that this communication took place after the patents had issued, WinView only alleges that there was a vague "proposal" to DraftKings but does not allege any facts that WinView, as part of that proposal, disclosed the patents at issue, the technology, or the allegedly infringing activity by DraftKings. WinView's allegations are insufficient.[10] *See Sprint Commc'ns Co. L.P. v. Cequel Commc'ns, LLC*,

---

[10] The fact that the parties signed an NDA where WinView explicitly did not "waive[] any of its ownership or enforcement rights to any of its patents," and WinView was "[f]inalizing patent litigation financing," (ECF No. 84 ¶¶ 109-110 (quotations omitted) (second alteration in original)), is not sufficient for this Court to infer that DraftKings knew or should have known that its conduct amounted to infringement. First, this agreement was made in 2019, before either the '543 and '988 patents issued. Further, a patent holder's general assertion that it will enforce its patents does not put a defendant on notice of alleged infringement. *See, e.g., Hills Point Indus. LLC v. Just Fur Love LLC*, Civ. No. 22-1256, 2023 WL 8804046, at *2 (D. Del. Dec. 20, 2023) (finding plaintiff met its burden to plead that defendant had knowledge of the patent and knew or should have known that its actions infringed by "plead[ing] facts indicating that (1) the patentee sent one or more notice letters identifying the 'relevant patents,' 'the accused products,' and 'why it was that the

Civ. No. 18-1752, 2022 WL 421336, at *1 (D. Del. Jan. 13, 2022) (finding no willfulness when facts offered in support of claim included a letter "sent to [defendant's] general counsel to 'request a meeting between our companies regarding [plaintiff's] patent portfolio and how it may apply to the operations of your company'" but "[t]he letter d[id] not mention infringement, list any patents, or describe any particular technology") (citations omitted); *Cleveland Med. Devices Inc.*, 696 F. Supp. 3d at 14 (holding plaintiff did not plead facts plausibly showing defendant knew or should have known of its alleged infringement where it made conclusory allegations and "plainly d[id] not assert any nonconclusory facts supporting an inference of 'deliberate or intentional infringement'").

Contrary to WinView's argument (ECF No. 119 at 21), the allegations in the TAC are unlike those in *University of Massachusetts Medical School v. L'Oréal S.A.*, Civ. No. 17-868, 2018 WL 5919745, at *9 (D. Del. Nov. 13, 2018), *report and recommendation adopted*, 2019 WL 2151701 (D. Del. May 17, 2019), *rev'd and remanded on other grounds*, 36 F.4th 1374 (Fed. Cir. 2022). There, as detailed in this Court's prior Opinion, the L'Oréal court found the complaint adequately pled knowledge because it alleged that the defendant cited the patents-in-suit (one still at the application stage) in its *own* patent application, *and* the defendant later contacted the plaintiff after both patents-in-suit had issued to obtain a license. (ECF No. 79 at 18-19.)  Without plausible allegations that DraftKings had knowledge of the patents post-issuance and its allegedly infringing conduct, WinView cannot plead a claim for willful infringement.  *See NexStep, Inc.*, 2019 WL 5626647, at *3  ("[The plaintiff] has failed to plausibly plead pre-suit knowledge of the patents-

product infringes the patents,' and (2) the 'alleged infringer continued to engage in infringing activities [thereafter]'") (alterations in original) (quoting *Tonal Sys., Inc. v. ICON Health & Fitness, Inc.*, Civ. No. 20-1197, 2021 WL 1785072, at *6 (D. Del. May 5, 2021), *report and recommendation adopted,* Civ. No. 20-1197, 2021 WL 5860783 (D. Del. Aug. 12, 2021)).

in-suit because, when [the plaintiff] met with [the defendant], none of the patents-in-suit had issued."); *see also iFIT Inc. v. Peloton Interactive, Inc.*, Civ. No. 21-507, 2022 WL 609605, at *2 (D. Del. Jan. 28, 2022) ("Knowledge of a patent application alone, however, is not enough to establish knowledge of the patent(s) that issued from that application and therefore not enough to establish willfulness.").

While "acts occurring before a patent's issuance may remain relevant to an [] infringement claim where the acts . . . continue after the patent's issuance," *Gamon Plus, Inc. v. Campbell's Co.*, 764 F. Supp. 3d 690, 704-05 (N.D. Ill. 2025),[11] the Court cannot infer DraftKings had the requisite post-issuance knowledge of the patents or that its conduct was infringing based on the TAC's vague allegations of a proposed collaboration in "late 2020" and the existence of this lawsuit. (*See* ECF No. 84 ¶¶ 115-116.) Allegations of pre-issuance knowledge, without a tie to facts showing infringement post-issuance, are insufficient. *Cf. Barkan Wireless IP Holdings, L.P. v. T-Mobile US, Inc.*, Civ. No. 21-00034, 2021 WL 12310942, at *3 (E.D. Tex. Nov. 18, 2021) (finding allegations of knowledge sufficient, despite focusing on patent pre-issuance, when complaint asserted (1) defendants cited the patent application during the prosecution of its own patent and (2) defendants made public announcements pre-lawsuit regarding their development of the allegedly infringing technology).

Lastly, WinView argues that because the Federal Circuit has held a patentee may "rely, for the knowledge element of [willful infringement or] inducement, on the knowledge the defendant

---

[11]    While the *Gamon Plus* court considered induced infringement rather than willful infringement, the Federal Circuit has "acknowledged that '[i]n some respects, the intent standard for inducement is akin to the one for willfulness, as both rest on the subjective intent of the accused infringer.'" *SynQor, Inc. v. Vicor Corp.*, No. 2024-1879, 2026 WL 410931, at *7 (Fed. Cir. Feb. 13, 2026) (alteration in original). As such, the *Gamon Plus* court's analysis of whether infringing acts were intentional in the induced infringement context is instructive in the willful infringement context. *Id.* ("[E]vidence of indirect infringement may be probative of willfulness[.]").

gained from the original complaint," *GoTV Streaming, LLC v. Netflix, Inc.*, Civ. No. 24-1669, 2026 WL 346200, at *11 (Fed. Cir. Feb. 9, 2026) (citing *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1345 (Fed. Cir. 2012)), its allegations of knowledge are sufficient here. (ECF No. 123; *see also* ECF No. 119 at 24-28; *see id.* at 17 (citing *Bill of Lading*).) But the underlying *Bill of Lading* case does not hold that knowledge gained from the filing of the complaint, standing alone, is sufficient to satisfy the requirement that an alleged infringer knew of the asserted patent(s) and that its conduct infringed upon them. The Federal Circuit in *Bill of Lading* noted that "[d]etermining whether a complaint states a plausible claim for relief is a very 'context-specific task.'" 681 F.3d at 1337 (quoting *Iqbal,* 556 U.S. at 679). The context in this case differs from that in *Bill of Lading*. There, the Federal Circuit found that the complaint adequately stated a claim of induced infringement because reasonable inferences could be drawn that defendants knew the induced acts constituted infringement. *Id.* at 1328, 1330, 1339-40.

The facts here differ from those in *Bill of Lading*. In *Bill of Lading*, the plaintiff sent cease-and-desist letters to several defendants it suspected of direct infringement *before* the lawsuit was initiated. *Id.* at 1329. Additionally, the *Bill of Lading* court concluded that reasonable inferences of knowledge and intended infringement could be drawn based on "the context of the technology disclosed in the [] patent and the industry to which [defendants] sell and tout their products[.]" *Id.* at 1340. The industry at issue was the shipping/trucking industry, and the asserted patent was for a method of transferring shipping documentation data by scanning documents in the truck cab and transmitting them while the truck was en route, which is meant to improve asset utilization and efficiency. *Id.* at 1329, 1341. The court found it significant that defendants advertised they too could "improve asset utilization and provide operational efficiency" but there was no method by which to accomplish that outcome except for the plaintiff's patented method. *Id.* at 1341. As such,

the *Bill of Lading* court concluded that "[c]ommon sense indicates that advertising that your product can be used [to accomplish the relevant benefits] gives rise to a reasonable inference that you intend to induce your customers to accomplish these benefits through utilization of the patented method." *Id.* at 1341-42. As such, that court found the complaint gave defendants fair notice of the alleged infringement and reversed dismissal. *Id.* at 1342.

The TAC alleges that DraftKings advertises its products and tells customers how to use them, (*see id.* ¶¶ 85-92), but these allegations do not support a reasonable inference that DraftKings knew of the '543 and '988 patents or that it knew or should have known its conduct amounted to infringement pre-suit. Further, unlike in *Bill of Lading*, although the TAC asserts that WinView's patents make "transformative advancements" (*id.* ¶¶ 28-42), the allegations do not lead the Court to infer that the methods claimed in the '543 and '988 patents are the *only* methods by which one could "enable a distributed entertainment system over a computing device . . . wherein the entertainment system is directly correlated to live events or televised programs," (ECF No. 84-1 at 2 (abstract of '543 patent)), or "conduct[] multiple competitions of skill for a single performance" (*id.* at 25 (abstract of '988 patent)).

The TAC's post-suit allegations of knowledge are also insufficient to plead a claim. As the Court previously articulated when dismissing the SAC, "this Court joins other district courts throughout the country that have determined that 'the complaint itself cannot be the source of the knowledge required to sustain claims of induced infringement and willfulness-based enhanced damages.'" (ECF No. 79 at 20 (quoting *ZapFraud Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 250 (D. Del. 2021)); *see also id.* (collecting cases).) WinView's notice letter sent on July 25, 2025 (ECF No. 84 ¶¶ 116-120) does not change the Court's previous determination that the requisite knowledge cannot be inferred by or subsequent to the filing of a complaint. (*See* ECF

No. 79 at 19-21.)  The Court agrees, like other courts have held, that "sending letters after the initial filing of the present action does not provide evidence of the requisite pre-suit knowledge for indirect infringement[.]"  *Secured Mail Sols., LLC v. Advanced Image Direct, LLC*, Civ. No. 12-01090, 2013 WL 8596579, at *9 (C.D. Cal. Jan. 30, 2013) (emphasis in original) (quoting *Proxyconn Inc. v. Microsoft Corp.*, Civ. No. 11-1681, 2012 WL 1835680, at *5 (C.D. Cal. May 16, 2012)).  Even considering the allegations in the TAC "as a whole," WinView fails to adequately allege DraftKings' knowledge of the patents or alleged infringement for the reasons stated. *Novozymes N. Am., Inc.*, 2020 WL 12895027, at *2 ("[T]he Court need not evaluate whether each allegation, standing alone, gives rise to a reasonable inference that [defendant] had pre-suit knowledge of the patent.  Instead, the [c]ourt may consider the allegations as a whole."). Therefore, WinView's claims for willful infringement of the '543 and '988 patents are dismissed.

### C.  Indirect Patent Infringement

There are two types of indirect patent infringement: induced and contributory.  *InvenTel Products, LLC v. Li*, 406 F. Supp. 3d 396, 404 (D.N.J. 2019).  DraftKings argues that WinView's claims for induced and contributory infringement for both the '543 and '988 patents should be dismissed as WinView has not pled the requisite knowledge of the patents or alleged infringement. (ECF No. 109-1 at 25-35.)  The Court agrees.

As stated in the Court's prior Opinion, pursuant to 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  "Inducement requires a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent."  *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) (citing *DSU Med. Corp. v. JMS Co.*, 471 F.3d

1293, 1304 (Fed. Cir. 2006)).  Inducement also requires a showing of direct infringement.[12]  *Aventis Pharm., Inc. v. Barr Lab'y, Inc.*, 411 F. Supp. 2d 490, 515 (D.N.J. 2006).  Regarding intent, the Federal Circuit has recognized, "[i]ntent can be shown by circumstantial evidence, but the mere knowledge of possible infringement will not suffice."  *Vita-Mix Corp.*, 581 F.3d at 1328.

Contributory infringement is governed by 35 U.S.C. § 271(c).  "Stated simply, '[a] party is liable for contributory infringement if that party sells, or offers to sell, a material or apparatus for use in practicing a patented process.'"  *BTG Int'l Ltd. v. Amneal Pharm. LLC*, 352 F. Supp. 3d 352, 399 (D.N.J. 2018) (quoting *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 850-51 (Fed. Cir. 2010)).  In order to establish contributory infringement, "a patent owner must prove the following: '1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention.'"  *Id.* (quoting *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010)).

Both induced and contributory infringement require knowledge of the patent and knowledge of infringement, just like willful infringement.  *See Dynamic Data Techs. v. Google LLC*, Civ. No. 19-1529, 2020 WL 1285852, at *1 n.1 (D. Del. Mar. 18, 2020), *report and recommendation adopted sub nom.*, *Dynamic Data Techs., LLC v. Google LLC*, Civ. No. 19-1529, 2020 WL 3103786 (D. Del. June 11, 2020) ("Claims for induced and willful patent infringement each require that the infringer had knowledge of the patent and knowledge of its infringement.");  *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) ("[C]ontributory infringement requires knowledge of the patent in suit and knowledge of patent infringement.");  *ZapFraud*, 528

---

[12]     Because the Court finds that WinView has sufficiently pled its claim of direct infringement for the '543 patent, *see supra* Section III.A, and previously held that WinView sufficiently pled direct infringement for the '988 patent, (ECF No. 79 at 16 n.11), this element is satisfied.

F. Supp. 3d at 249 ("Claims of indirect infringement . . . require proof that the defendant's conduct occurred after the defendant (1) knew of the existence of the asserted patent and (2) knew that a third party's acts constituted infringement of the patent. Claims for . . . willful infringement similarly require proof that the defendant knew about the asserted patents and knew or should have known that its conduct amounted to infringement of those patents.") (citations omitted).  Again, the Court finds that the TAC fails to allege sufficient facts for the Court to infer DraftKings' knowledge of the '543 or '988 patents or of its alleged infringement prior to the filing of the Complaint.  DraftKings' knowledge cannot be established by or subsequent to the filing of a complaint.[13]  (*See* ECF No. 79 at 23.)  Because WinView has not alleged knowledge as is required for these claims, it is not necessary for the Court to proceed to analyze the parties' arguments regarding whether the TAC successfully alleges that DraftKings specifically intended to infringe (as is required for induced infringement) or whether WinView supplied a component that has no substantial non-infringing uses and is a material part of the invention (as is required for contributory infringement).  WinView's claims for induced and contributory infringement of the '543 or '988 patents are dismissed.

---

[13]    WinView argues that because "'there is no legal impediment to having an indirect infringement cause of action limited to post-litigation conduct,'" DraftKings' alleged infringement after its receipt of the Notice Letter is sufficient to progress this claim past the pleading stage. (ECF No. 119 at 29 (quoting *Telecomm Innovations, LLC v. Ricoh Co., Ltd.*, 966 F. Supp. 2d 390, 393 (D. Del. 2013).)  While other courts may be split on this issue, this Court has now repeatedly "reject[ed] WinView's argument that knowledge can be established based on the filing of the complaint and subsequent amendments," and held that "[b]ecause WinView has not alleged sufficient facts to show pre-suit knowledge of infringement, its claim for willful infringement based solely on post-suit knowledge cannot stand."  (ECF No. 79 at 19, 21.)  The Court again applies its finding to the indirect infringement context as well. *See also Secured Mail Sols., LLC*, 2013 WL 8596579, at *9.

### D.      Dismissal With Prejudice

DraftKings argues that it is entitled to dismissal with prejudice because "[h]aving already had its claims for . . . willful, induced, and contributory infringement dismissed once, WinView's failure to plead facts that plausibly state a claim again confirms that any further amendment would be futile."  (ECF No. 109-1 at 35-36.)  WinView counters that it "will provide these detailed allegations in its infringement contentions once discovery begins" or should be given leave to amend the TAC.  (ECF No. 119 at 33.)

In its prior Opinion, the Court put WinView on notice that while "it is required to provide detailed information regarding alleged claims being infringed upon after the initial scheduling conference, the Local Patent Rules do not relinquish WinView from its obligation to allege facts in accordance with [] Rule 12(b)(6)."  (ECF No. 79 at 15-16 n.10.)  The Court extensively described the deficiencies to be remedied in dismissing the SAC, many of which remain present in the TAC.  (*See generally id.*)  "Courts have discretion to dismiss complaints with prejudice after 'repeated failures to cure the deficienc[ies] by amendments previously allowed.'"  *Pryce v. PrimeCare Med.*, Civ. No. 21-753, 2024 WL 3761733, at *5 (E.D. Pa. Aug. 12, 2024) (quoting *Stovall v. Grazioli*, Civ. No. 20-2041, 2023 WL 3116439, at *3 (3d Cir. Apr. 27, 2023)), *aff'd as modified,* Civ. No. 24-2685, 2025 WL 1293077 (3d Cir. May 5, 2025).  Because WinView has had three opportunities to amend its Complaint with detailed guidance from this Court, extending leave to amend again would be futile.  *See Kennedy v. Envoy Airlines Inc.*, Civ. No. 15-8058, 2018 WL 895871, at *6 (D.N.J. Feb. 14, 2018), *aff'd sub nom. Kennedy v. Am. Airlines Inc.*, 760 F. App'x 136 (3d Cir. 2019) ("'Allowing leave to amend where there is a stark absence of any suggestion by the plaintiffs that they have developed any facts since the action was commenced . . . would frustrate Congress's objective' to filter out lawsuits that have no factual basis.") (internal quotations omitted) (quoting *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 164 (3d Cir.

2004). Therefore, the Court's dismissal of WinView's willful infringement and indirect infringement claims is with prejudice.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, and other good cause shown, DraftKings' Motion to Dismiss the Third Amended Complaint (ECF No. 109) is **GRANTED in part** and **DENIED in part**. An appropriate Order follows.

Dated: March 17, 2026

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE